# United States Court of Appeals
# for the District of Columbia Circuit

## No. 24-3041

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES CLARK,

*Defendant-Appellant.*

*On Appeal from the United States District Court for the District of Columbia in No. 1:22-cr-00160-CJN-1, Carl J. Nichols, U.S. District Judge*

# BRIEF FOR DEFENDANT-APPELLANT

MICHAEL E. LAWLOR
BRENNAN MCKENNA & LAWLOR, CHTD.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(240) 219-8980
mlawlor@brennanmckenna.com

*Counsel for Defendant-Appellant*

COUNSEL PRESS
A ▷ Proceed Service
The Appellate Experts®    (800) 4-APPEAL • (393723)

**Certificate as to Parties, Rulings, and Related Cases**

(A)  **Parties and Amici**. The parties to the criminal proceedings before the District Court were the United States of America and Defendant Charles Clark. No intervenors or amici appeared in the proceedings before the District Court. The parties to the appeal pending before this Court are Appellant Charles Clark and Appellee the United States of America. No intervenors or amici have appeared before this Court in this matter.

(B)  **Rulings Under Review**. Appellant Charles Clark asks this Court to review the sentence imposed on April 3, 2024 by United States District Judge Carl J. Nichols of the United States District Court for the District of Columbia in the case of *United States v. Clark*, No. 1:22-cr-00160-CJN (D.D.C.).

(C)  **Related Cases.** To my knowledge, there were no related cases before the District Court and there are none before this Court. Appellant Charles Clark pled guilty to and was sentenced for conduct related to the conduct at issue in the District Court proceedings in the Circuit Court for Charles County, Maryland. *See State of Maryland v. Charles Derrick Clark*, No. C-08-CR-21-000179 (Circuit Court for Charles County).

/s/ Michael E. Lawlor

Michael E. Lawlor

**TABLE OF CONTENTS**

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF JURISDICTION.................................................................1

STATUTES AND REGULATIONS................................................................1

ISSUE PRESENTED FOR REVIEW ............................................................1

STATEMENT OF THE CASE.......................................................................1

STATEMENT OF FACTS .............................................................................3

SUMMARY OF ARGUMENT ....................................................................17

ARGUMENT ..............................................................................................19

I.     The Life Sentence is Procedurally Unreasonable...........................19

     A.     Standard of Review .............................................................19

     B.     The District Court Committed Serious Procedural Errors Rendering the Life Sentence Procedurally Unreasonable...................21

II.     The Life Sentence is Substantively Unreasonable ........................33

     A.     Standard of Review .............................................................33

     B.     Under the Totality of the Circumstances, the Life Sentence is Substantively Unreasonable ................................................33

III.     If this Court Vacates the Life Sentence, the Court Should Remand for Resentencing before a Different District Judge .....................35

     A.     Standard of Decision .........................................................35

     B.     Under the Circumstances of this Case, Reassignment to a Different District Judge for Resentencing is Appropriate ..................36

CONCLUSION............................................................................................38

**Page(s)**

**Cases:**

*Burns v. United States*,
501 U.S. 129 (1991)..........................................................................24

*Gall v. United States*,
552 U.S. 38 (2007)...............................................................19, 24, 30

*United States v. Abney*,
957 F.3d 241 (D.C. Cir. 2020) ......................................................36

*United States v. Brown*,
808 F.3d 865 (D.C. Cir. 2015) ......................................................32

*United States v. Brown*,
892 F.3d 385 (D.C. Cir. 2018) ...............................................20, 24, 31

*United States v. Flores*,
912 F.3d 613 (D.C. Cir. 2019) ......................................................20

*United States v. Gardellini*,
545 F.3d 1089 (D.C. Cir. 2008) ................................................33, 34

*United States v. Hillie*,
39 F.4th 674 (D.C. Cir. 2021) ...............................................11, 12, 22

*United States v. Iracks*,
106 F.4th 61 (D.C. Cir. 2024) ......................................................19

*United States v. Keleta*,
552 F.3d 861 (D.C. Cir. 2009) ......................................................24

*United States v. Law*,
806 F.3d 1103 (D.C. Cir. 2015).....................................................33

*United States v. Lemon*,
723 F.2d 922 (D.C. Cir. 1983) ......................................................24

*United States v. Mattea*,
895 F.3d 762 (D.C. Cir. 2018) ...............................................19, 20, 33

*United States v. Murray*,
897 F.3d 298 (D.C. Cir. 2018) ......................................................20

*United States v. Parks*,
   995 F.3d 241 (2021) ...............................................................................20

*United States v. Pyles*,
   862 F.3d 82 (D.C. Cir. 2017) ..................................................................28

*United States v. Tucker*,
   78 F.3d 1313 (8th Cir. 1996) ...................................................................36

*United States v. Wolff*,
   127 F.3d 84 (D.C. Cir. 1997) ..................................................................36


**Statutes & Other Authorities:**

18 U.S.C. § 2251 .......................................................................................27

18 U.S.C. § 2252(a)(2) ................................................................................2

18 U.S.C. § 2256(2) ..................................................................................22

18 U.S.C. § 2256(2)(A) .............................................................................11

18 U.S.C. § 2256(2)(A)(v) ....................................................................11, 22

18 U.S.C. § 2422(b) ............................................................................2, 3, 4

18 U.S.C. § 2423(a) ....................................................................................2

18 U.S.C. § 3231 .........................................................................................1

18 U.S.C. § 3553(a) .........................................................................6, 19, 37

18 U.S.C. § 3553(a)(6) ..............................................................................27

18 U.S.C. § 3742(a) ....................................................................................1

28 U.S.C. § 1291 ........................................................................................1

28 U.S.C. § 2106 ..................................................................................35, 36

22 D.C. Code § 3008(a) ..............................................................................2

22 D.C. Code § 3020(a)(2) ..........................................................................2

Circuit Rule 28(a)(5) ..................................................................................1

Md. Code Ann., Crim. Law § 3-315 .........................................................26

USSG § 2G1.3 ..........................................................................................22

USSG § 2G1.3(a)(3) ...............................................................................4, 21

USSG § 2G1.3(b)(1) ...................................................................................4

USSG § 2G1.3(b)(1)(B) .............................................................................31

USSG § 2G1.3(b)(2)(B) ..........................................................................4, 31

USSG § 2G1.3(b)(3)(A).............................................................................5

USSG § 2G1.3(b)(4)(A).........................................................................5, 31

USSG § 2G1.3(c) ........................................................................................9

USSG § 2G1.3(c)(1) ................................................10, 11, 12, 17, 21, 22

USSG § 2G2.1................................................................................22, 27

USSG § 3E1.1 ..........................................................................................5

USSG § 4B1.5.......................................................................................5, 18

USSG § 4B1.5(b)(1) .............................................................................26, 31

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over this criminal matter under 18 U.S.C. § 3231. On April 3, 2024, the District Court imposed its sentence. The next day, the District Court issued its Judgment and Statement of Reasons. On April 10, 2024, Appellant Charles Clark filed a timely Notice of Appeal to this Court. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATUTES AND REGULATIONS

Pursuant to Circuit Rule 28(a)(5), pertinent statutes and guidelines are reproduced in the addendum to this brief.

## ISSUE PRESENTED FOR REVIEW

Whether the District Court erred in sentencing Appellant to life imprisonment when the advisory guidelines recommended a sentence of 235-293 months of imprisonment; no party requested an upward variance; the Appellant, who was 67 years of age, had already received an executed sentence of 45 years of imprisonment in a state case arising from the same conduct at issue in the federal matter; there was no sufficient reason for imposing a substantial upward variance to the maximum sentence allowable by law; and the District Court failed to adequately address all mitigating factors.

## STATEMENT OF THE CASE

On March 30, 2021, the Government obtained a Criminal Complaint charging Defendant-Appellant Charles Clark in the United States District Court for the

1

District of Columbia with the following offenses: travel with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a); coercion and enticement, in violation of 18 U.S.C. § 2422(b); first-degree child sexual abuse with aggravating circumstances, in violation of 22 D.C. Code §§ 3008(a) and 3020(a)(2); and distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2). On April 2, 2021, Mr. Clark made his initial appearance before the District Court.

On May 9, 2022, the Government filed a one-count Information charging Mr. Clark with enticement of a minor, in violation of 18 U.S.C. § 2422(b). On October 11, 2022, Mr. Clark pled guilty pursuant to a written Plea Agreement to the one-count Information. As set forth in the Plea Agreement, Mr. Clark also agreed that he would plead guilty in the Circuit Court for Charles County, Maryland to related charges of sexual abuse of a minor and engaging in a continuing course of conduct involving sexual abuse of a minor. Mr. Clark agreed to enter his guilty plea in the Charles County matter after the entry of his guilty plea before the District Court but prior to sentencing before the District Court. On December 7, 2023, Mr. Clark was sentenced in the Charles County, Maryland case.

On April 3, 2024, Mr. Clark appeared before the District Court for sentencing. At sentencing, the parties agreed that the advisory guidelines recommended a sentence of 235-293 months of imprisonment. Mr. Clark argued for a variant sentence of 120 months of imprisonment. The United States Probation Office

recommended a variant sentence of 204 months of imprisonment. The Government requested a sentence of 260 months of imprisonment, a sentence within the advisory guidelines range. The District Court sentenced Mr. Clark to life imprisonment to run concurrently with the Maryland state sentence, a lifetime term of supervised release, a $100 special assessment, and $39,000 in restitution. The Judgment was entered on April 4, 2024, and Mr. Clark filed a timely Notice of Appeal on April 10, 2024.

## STATEMENT OF FACTS

On October 11, 2022, Mr. Clark appeared before the District Court and accepted responsibility for his conduct. Specifically, Mr. Clark waived his rights to indictment and trial by jury and pled guilty pursuant to a written Plea Agreement to the one-count Information in which he was charged with coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). Mr. Clark also agreed that he would plead guilty to related charges of sexual abuse of a minor and continuing course of conduct of sexual abuse of a minor in the Circuit Court for Charles County, Maryland. In support of the guilty plea, Mr. Clark agreed to a Statement of Offense, which was filed under seal. At the change of plea hearing, the Government summarized Mr. Clark's conduct as follows:

> So just to summarize the Statement of Offense, the defendant was in a relationship with Minor Victim 1's mother between June of 2017 and December of 2019. During that time – or at the beginning of that time frame, Minor Victim 1 was 13 and the defendant was 61 years old.

During that timeframe, there were multiple incidents where the defendant vaginally penetrated Minor Victim 1 and had her place her mouth on his penis. He used – the defendant used his cell phone to text Minor Victim 1 to meet in Minor Victim 1's mother's bedroom, in order to have these sexual encounters with her. There was similar conduct that also occurred at the defendant's residence in Maryland.

The defendant also, during this timeframe, sent Minor Victim 1 Instagram direct messages asking for sexually explicit images of Minor Victim 1. And Minor Victim 1 responded on one occasion with a sexually explicit image.

Immediately before the defendant's arrest in this case, Detective Walsh, who is the case agent in this case, took over Minor Victim 1's Instagram account and exchanged direct messages with the defendant, pretending to be Minor Victim 1.

During the course of those direct messages, the defendant stated that he was glad that he and Minor Victim 1 were still together after five years, indicating that they had a relationship; and that he was glad that Minor Victim 1 gave him the most precious thing a woman could give a man, which was her virginity.

(Joint Appendix (JA) 48-49).

Under the terms of the Plea Agreement, the parties reached a stipulation concerning the estimated guidelines offense level. The parties agreed that a base offense level of 28 applied under USSG § 2G1.3(a)(3) because Mr. Clark was to be convicted under 18 U.S.C. § 2422(b). The parties further agreed to a two-level increase under USSG § 2G1.3(b)(1) because the victim had been in Mr. Clark's custody, care, or supervisory control. Next, the parties agreed to a two-level enhancement under § 2G1.3(b)(2)(B) because Mr. Clark unduly influenced the minor victim to engage in prohibited sexual conduct. The parties also agreed that a

further two-level enhancement applied under § 2G1.3(b)(3)(A) because the offense involved the use of a computer. Additionally, another two-level enhancement applied under § 2G1.3(b)(4)(A) because the offense involved the commission of a sex act or sexual contact. Finally, the parties agreed to a five-level enhancement under USSG § 4B1.5 because Mr. Clark engaged in a pattern of activity involving prohibited sexual contact but was nor a career offender and did not have a prior conviction for a sex offense. Thus, the parties agreed that the estimated offense level under the guidelines before any adjustment for acceptance of responsibility was 41.

The parties further agreed that Mr. Clark would be eligible for up to a three-level downward adjustment under USSG § 3E1.1 if he continued to demonstrate acceptance of responsibility. With a three-level downward adjustment for acceptance of responsibility, the final estimated offense level in the case was 38. The parties further estimated that Mr. Clark had no criminal history and would therefore properly be placed into Criminal History Category I. The parties agreed not to seek any departures from the estimated guidelines range and further agreed that neither party would seek an offense level different from that estimated in the Plea Agreement.

The Government agreed to recommend that any sentence in the federal case run concurrently with the sentence to be imposed in the related case pending in the Circuit Court for Charles County. Otherwise, both parties were free to allocate as to

the appropriate sentence, and Mr. Clark retained the right to advocate for a below-guidelines sentence on the basis of the factors found at 18 U.S.C. § 3553(a). Notably, Mr. Clark retained the right to appeal his sentence to the extent the District Court imposed a sentence above the guidelines range as determined at sentencing. At the conclusion of the guilty plea proceeding, sentencing was deferred to permit Mr. Clark to enter his plea in the Charles County case.

On March 30, 2023, Mr. Clark entered a guilty plea in the Charles County case. On July 11, 2023, the United States Probation Office submitted a petition seeking a psychosexual evaluation of Mr. Clark. On July 24, 2023, the District Court granted the petition and ordered the evaluation. On September 30, 2023, Dr. Irene Guya-Allen submitted a Psychosexual Evaluation and Risk Assessment report. On December 7, 2023, Mr. Clark was sentenced in the Circuit Court for Charles County to an aggregate executed term of imprisonment of 45 years. On December 11, 2023, the parties requested that the District Court schedule a sentencing hearing in the federal matter.

On March 20, 2024, the United States Probation Office filed the final Presentence Investigation Report. The PSR contained a verbatim recitation of the Statement of Offense to which Mr. Clark agreed in support of his guilty plea. (Sealed Joint Appendix (SJA) 169-70, ¶¶ 16-21.) Additionally, the PSR contained a section labeled "Additional Offense Behavior Not Included in Statement of Offense." (SJA

170.) This section consisted of certain information contained in the Affidavit in support of the Criminal Complaint that initiated the federal case. Mr. Clark did not specifically admit to this additional conduct in the Statement of Offense or at the Rule 11 hearing.[1] The PSR also contained a calculation of the advisory guidelines range. The calculation of the offense level was consistent with the parties' estimated calculation in the Plea Agreement. (SJA 171-72, ¶¶ 30-43.) The PSR author concluded that a total offense level, after an adjustment for acceptance of responsibility, was 38. Moreover, the PSR author determined that Mr. Clark scored zero criminal history points.[2] (SJA 173, ¶ 46.) With a total offense level of 38 and a Criminal History Category of I, the PSR author noted that the guidelines range applicable in the case was 235 to 293 months of imprisonment. (SJA 180, ¶ 87.)

Simultaneously with the filing of the final PSR, the United States Probation Office filed its Sentencing Recommendation. The Probation Officer noted that the guidelines range was 235 to 293 months of imprisonment but recommended a downward variance to 204 months of imprisonment. In support of the recommendation for a downward variance, the Probation Officer noted Mr. Clark's

---

[1] It does not appear that sentencing counsel filed any specific objection to the inclusion of information regarding the offense beyond that which was contained in the agreed-upon Statement of Offense.

[2] Mr. Clark's sole prior conviction arose from the related Charles County matter and did not score criminal history points under the advisory guidelines. (SJA 173, ¶ 45.)

"lack of criminal history, age, and his current health problems." (SJA 190). The Probation Officer further noted that "[t]he recommended sentence also aligns with sentences imposed in similarly situated cases in the District of Columbia." *Id*.

On March 27, 2024, the Government filed its Sentencing Memorandum. (JA 67.) The Government requested a sentence of 260 months of incarceration to run concurrently with the sentence imposed in the related case in Charles County, Maryland. The Government's requested sentence fell in the middle of the range recommended by the sentencing guidelines. The Government opposed any downward departure or variance based on Mr. Clark's age and serious health condition and argued that a guidelines sentence was appropriate. As an exhibit to its Sentencing Memorandum, the Government attached data from the United States Sentencing Commission's Judiciary Sentencing Information platform. (JA 81.) According to that data, for similarly situated federal defendants across the country over fiscal years 2018-2022, the average length of imprisonment imposed was 200 months, and the median length of imprisonment imposed was 205 months.

Shortly after the Government's filing, Mr. Clark filed his Sentencing Memorandum. (JA 83.) Mr. Clark requested a sentence of 10 years of imprisonment, the applicable mandatory minimum sentence, to run concurrently with the 45-year sentence imposed in Charles County. In the Sentencing Memorandum, Mr. Clark offered no excuse or justification for his conduct. Mr. Clark agreed that the

guidelines recommended a sentence of 235-293 months of imprisonment but argued that a significant downward variance was warranted based on: (1) his age at 67 years old; (2) his significant physical health ailments; (3) his family and community support; (4) the trauma he experienced as a young person; (5) the strong likelihood that he will not even survive the 45-year sentence imposed in Maryland; (6) his low risk of recidivism; and (7) data showing that the average sentence in similar cases falls below the guidelines range. Mr. Clark's Sentencing Memorandum was accompanied by nine letters of support from family members and friends.

On April 2, 2024, the day before the sentencing hearing, which at the time had been scheduled for several months, the District Court issued the following Minute Order: "At tomorrow's sentencing hearing, the parties should be prepared to state their views on whether USSG 2G1.3(c)'s cross-reference provision applies in this case." On the following afternoon, Mr. Clark appeared for sentencing. At the outset of the sentencing hearing, the District Court announced that it would be deviating from its typical sentencing procedure. The District Court raised two questions concerning the guidelines. First, the District Court referred to its Minute Order inquiring about the cross-reference provision at § 2G1.3(c). Second, the District Court noted that it wanted "to hear, really, from defense counsel and perhaps Mr. Clark on why the reduction for acceptance of responsibility applies here, in light of his statements to the psychosexual evaluator, which in my view, at least, place or

purport to place some blame on the victim and the victim's mother." (JA 116).[3] The District Court stated that it would hear from Mr. Clark directly on acceptance of responsibility without prejudice to his right to allocate later in the sentencing hearing. After those preliminary remarks, in which the District Court raised two guidelines issues that had not been presented by either party or by the Probation Office, the District Court confirmed that it had reviewed the written materials in the case, including the full psychosexual evaluation. (JA 117). Mr. Clark and the Government indicated that there were no outstanding factual objections to the PSR. The District Court then "accept[ed] the factual findings contained in the Presentence Investigation Report regarding the circumstance of the offense" and "adopt[ed] those facts for the purpose of imposing a sentence." (JA 119).

Next, the District Court turned to the Government to address the 2G1.3(c) cross-reference issue that the Court raised *sua sponte* its Minute Order the day prior. Government counsel explained that she understood the District Court to be referring to the cross-reference at § 2G1.3(c)(1). The Government explained that while there was no dispute that Mr. Clark encouraged the minor victim to send images of herself, neither Mr. Clark's requests nor the images ultimately sent by the minor victim fell within the definition of "sexually explicit conduct" as set forth in the commentary

---

[3] Before sentencing, neither party nor the Probation Office raised any concern about Mr. Clark's acceptance of responsibility. The District Court's April 2, 2024 Minute Order did not address that adjustment.

to § 2G1.3(c)(1), which incorporates the definition of that term found at 18 U.S.C. § 2256(2)(A). As the Government explained, this Court's binding decision in *United States v. Hillie*, 39 F.4th 674, 686 (D.C. Cir. 2021) held that to fall within the definition of "lascivious exhibition of the anus, genitals, or pubic area of any person" under 18 U.S.C. § 2256(2)(A)(v), images must consist of the display of those portions of the body "in a lustful manner that connotes the commission of a sexual act." The Government noted that in light of the fact that the images sent in this case "are just focused on the genitalia," they do not meet the definition of § 2256(2)(A). Moreover, the Government explained that Mr. Clark's messages to the minor victim "are asking for just images of genitalia and body parts. And the fact that he is not asking for her to masturbate on camera or anything along those lines, I think cuts in the direction of not applying this cross reference." (JA 122).

With respect to acceptance of responsibility, the Government noted that it was not "contesting acceptance of responsibility or him getting the three-point discount for that. So we have no quarrel with that." (JA 123). Ultimately, the Government asked the Court to consider the statements to the psychosexual evaluator as they relate to deterrence.

The District Court then turned to defense counsel. Defense counsel agreed with the Government's analysis of the cross-reference issue. Notwithstanding the fact that the Government had just confirmed that it believed Mr. Clark had earned a

three-level downward adjustment for acceptance of responsibility, the District Court asked defense counsel to explain why Mr. Clark has demonstrated acceptance of responsibility. Defense Counsel argued that Mr. Clark had consistently accepted responsibility throughout the case. The District Court then heard directly from Mr. Clark,[4] who confirmed that he accepted responsibility, as he had done at the federal plea hearing, the Charles County plea hearing, and at an interview with the Probation Officer.[5]

The District Court then made its rulings as to calculation of the guidelines range. The District Court commented that it believed there was a "very close question" as to whether the § 2G1.3(c)(1) cross-reference applied. The District Court also expressed a believe that "there's a strong argument or at least a reasonable argument" that Mr. Clark's conduct fell within § 2G1.3(c)(1). In the District Court's view, even though "under *Hillie* some of the images might not qualify as sexually explicit conduct," there was a "decent argument" that Mr. Clark was offering or seeking images that would otherwise qualify. Notably, the District Court did not cite to any specific images or statements in its analysis. Though the District Court declined to apply the cross-reference, which no party sought and which would have resulted in an increased offense level, the District Court remarked that "the

---

[4] In his allocution on acceptance of responsibility, Mr. Clark noted that his health was failing and that he had "almost died a month ago." (JA 129)
[5] *See* SJA 171, ¶ 29.

possibility that [the cross-reference] *might* apply is something I will think about when it comes to the relevant sentence here." (JA 130-31) (emphasis added). With respect to the pre-acceptance of responsibility offense level, the District Court applied a calculation consisted with the parties' Plea Agreement and the PSR author's determination. The District Court applied a three-level downward adjustment for acceptance of responsibility after considering Mr. Clark's comments earlier at the hearing. With a total offense level of 38 and a Criminal History Category of I, the District Court calculated the guidelines range to be 235 to 293 months of imprisonment. (JA 132). Neither party objected to the guidelines calculation.

As in its Sentencing Memorandum, the Government argued for a guidelines sentence of 260 months of imprisonment. The Government noted that its mid-range recommendation was based on Mr. Clark's acceptance of responsibility: "And we've targeted the mid-range, one, because Mr. Clark did accept responsibility. We don't think it would be fair to ask for a high-end sentence where he has accepted." (JA 134). The Government also highlighted the seriousness of the offense conduct. In response to a question from the District Court as to why a sentence of 260 months was appropriate in light of the 45-year sentence imposed in Maryland, the Government noted that the Maryland case involved different statutes and that it was unclear as to how much of the 45 years Mr. Clark would actually serve. In the federal

system, however, the Government noted that Mr. Clark "will serve almost all of [the] sentence." (JA 136). The Government opposed any downward variance based on Mr. Clark's age and medical condition. With respect to sentencing disparities, the Government directed the District Court to the sentencing statistics included as in the exhibit to its Sentencing Memorandum and recognized that "our ask is a little bit higher than the national average." (JA 138). In light of the duration and nature of the conduct, the Government submitted that a 260-month sentence was appropriate for Mr. Clark. After the Government requested restitution and confirmed that neither the victim nor her mother wished to speak, the District Court turned to defense counsel.

Defense counsel noted the seriousness of the case and stated that he was offering no justification for Mr. Clark's conduct. Defense counsel argued for a variant sentence at the mandatory minimum given that Mr. Clark at 67 years of age was unlikely to survive the Maryland sentence and that even if Mr. Clark made parole after serving 22.5 years of that sentence, he would approximately 85 years old when released. S. at 28. Counsel also noted that the psychosexual evaluation indicated that Mr. Clark presented a low risk to reoffend. Counsel further highlighted Mr. Clark's deteriorating medical condition: "But during the time that I've known him, I have watched Mr. Clark deteriorate. Several times I've tried to reach him at the jail to find out only that he's in the hospital." (JA 142) Counsel also noted Mr. Clark's lack of criminal history, including a lack of prior sex offenses, and pointed

to troubling aspects of Mr. Clark's upbringing. After counsel's presentation, Mr. Clark spoke to the District Court in allocution. Mr. Clark apologized to the Court, his family, and the family of the victim. (JA 145-46).

After taking a recess, the District Court proceeded to announce its sentence. The District Court first summarized the positions of the parties and the Probation Office: The Government requested a guidelines sentence of 260 months, Mr. Clark argued for a variant sentence at the 10-year mandatory minimum, and the Probation Office recommended a downward variance to a sentence of 204 months of imprisonment. The District Court then turned to the sentencing factors. First, the District Court addressed the cross-reference provision that it found not to apply to the case. The District Court remarked that the question of whether the cross-reference applied "was a very close one." (JA155). The District Court also stated that it thought "there was a pretty good argument that the cross-reference should have been applicable or should apply here. And to some extent and to the extent it does not, its' because Mr. Clark, in a sense, got lucky." (JA 147). On that basis, the District Court concluded that "the guidelines range could understate the seriousness of the offense here." (JA 148). The District Court next addressed the nature and seriousness of the offense, including victim impact statements.

In addressing Mr. Clark's history and characteristics, the District Court concluded that Mr. Clark's age, health concerns, lack of criminal history, and status

as a victim of childhood abuse, could weigh in his favor "in the abstract" but that they did not have mitigating force in this case. The District Court noted that Mr. Clark's risk of recidivism was mitigated by his age but that it was not zero. The District Court also generally referred to the need to deter "other people" from engaging in similar conduct. (JA 151). With respect to the need to avoid unwarranted sentencing disparities, the District Court noted that a within-guidelines sentence would promote that goal but also noted that "the sentencing guidelines range here could easily have been 360 months to life. Of course, the cross-reference in my view, is a close question." (JA 151). The District Court also remarked that the five-level increase under § 4B1.5(b)(1) understated the seriousness of the offense, a point the District Court did not raise with either party earlier in the hearing.

The District Court decided to impose an upward variance – despite no request from any party to do so – because, in its view, "the guidelines are only so much help. The factors are only so much help." (JA 152). The District Court noted that it was grappling with whether to impose a sentence of a term of months above the guidelines range or to impose a life sentence. Ultimately, the Court sentenced Mr. Clark to imprisonment for a term of life. (JA 153). Mr. Clark called out: "Please, sir." *Id*. The District Court did not address Mr. Clark's objection or call upon defense counsel. Instead, the Court proceeded to address other aspects of the sentence. After confirming that the Government would be permitted to submit a proposed restitution

order, the District Court turned to counsel: "Defense counsel, anything you would like to state? Obviously, your positions on the appropriate sentence are, of course, stated for the record." (JA 155). Defense counsel asked whether the federal sentence would run concurrently with the Maryland sentence, and the District Court confirmed that it would. The District Court then apologized to the victim and the victim's family and stated that it had done what it could to "remedy" what happened. (JA 156). After reviewing the special conditions of supervised release, the sentencing hearing concluded.

On April 4, 2024, the District Court issued its Judgment and Statement of Reasons. This timely appeal of the sentence follows.

## SUMMARY OF ARGUMENT

The District Court's sentence of life imprisonment, a substantial upward variance from the guidelines range of 235-293 months of imprisonment, is both procedurally and substantively unreasonable.

The District Court abused its discretion by committing a host of procedural errors in sentencing Mr. Clark, a 67-year-old man with no prior criminal history who had already received a 45-year sentence in a related state case. First, the District Court assumed the role of an advocate in arguing for the applicability of the § 2G1.3(c)(1) cross-reference where neither party nor the Probation Office requested that it be applied. When presented with binding authority foreclosing the

applicability of the cross-reference and without having viewed for itself any of the images at issue, the District Court repeatedly stated that the applicability of the cross-reference was a close call. Despite declining to apply the cross-reference, the District Court sentenced Mr. Clark as if the cross-reference had applied. Second, the District Court concluded that the five-level enhancement for repeated conduct under § 4B1.5(b) understated the seriousness of the offense despite not affording either party the opportunity to address that view and in spite of the fact that Mr. Clark's 45-year state sentence explicitly took into account the repeated nature of the conduct. Third, the District Court did not adequately consider the need to avoid unwarranted sentencing disparities with similar defendants in similar cases and instead penalized Mr. Clark on the basis of a guidelines cross-reference that did not apply to this case as a matter of law and fact. Fourth, the District Court did not adequately consider the substantial mitigation information and arguments. Ultimately, the District Court imposed a significant upward variance to the maximum penalty allowable under the law, absent any request from either party or the Probation Office, without providing sufficient justification.

Moreover, the District Court abused its discretion in imposing a substantively unreasonable sentence of life imprisonment. The sentence imposed not only represented an upward variance to the maximum degree possible, but it was also significantly higher than the sentence recommended by the parties and the Probation

Office. Notably, the Government, the party most closely aligned with the victim, requested a sentence at the mid-range of the guidelines. As noted above, the sentence also resulted from an insufficient weighing of the § 3553(a) factors in this case. Under the totality of the circumstances, the life sentence is substantively unreasonable.

As a result of these errors, this Court should vacate the sentence and remand for resentencing before a different district court.

## ARGUMENT

### I. The Life Sentence is Procedurally Unreasonable

#### A. Standard of Review

This Court reviews sentencing decisions to determine whether they are reasonable. *United States v. Mattea*, 895 F.3d 762, 765 (D.C. Cir. 2018) (citing *Gall v. United States*, 552 U.S. 38, 46 (2007)). At the first step of its analysis, this Court asks whether the district court "committed any significant procedural error[.]" *United States v. Iracks*, 106 F.4th 61, 66 (D.C. Cir. 2024) (internal quotation omitted). Such errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence--including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.

In cases where a district court imposes a variant sentence above the properly calculated sentencing guidelines range, this Court enforces the

> well-established requirement that a district court justify, on the record, its decision to impose an upward variance from the Sentencing Guidelines. *See United States v. Brown*, 892 F.3d 385, 404, (D.C. Cir. 2018) ("Thrice before, this court has held that an inadequately explained and insufficiently particularized upward variance constitutes plain error."). We have cautioned that "an upward variance is not supposed to reduplicate punishment already meted out by the Guidelines' range itself," so district courts "choosing an above-Guidelines sentence . . . [must] explain why the otherwise applicable Guidelines calculation does not fully account for the described criminal conduct." *Id.* at 405 (internal quotation marks omitted). "To sustain an upward variance, the district court . . . must state *the specific reason* why the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308-09 (D.C. Cir. 2018) (emphasis added) (internal quotation marks and brackets omitted).

 *United States v. Parks*, 995 F.3d 241, 248 (2021) (footnote omitted) (emphasis in original).

In evaluating claims of procedural error at sentencing, this Court "review[s] purely legal questions *de novo*, review[s] factual findings for clear error, and give[s] due deference to the District Court's application of the Guidelines to the facts." *United States v. Flores*, 912 F.3d 613, 618 (D.C. Cir. 2019). Claims of procedural error are reviewed for abuse of discretion. *Mattea*, 895 F.3d at 766.

**B.** **The District Court Committed Serious Procedural Errors Rendering the Life Sentence Procedurally Unreasonable**

At Mr. Clark's sentencing, the District Court committed a number of serious procedural errors that individually and considered together render the above-guidelines sentence of life imprisonment unreasonable. The first procedural error relates to the cross-reference provision at USSG § 2G1.3(c)(1). By way of background, both the Government and Mr. Clark took the position that the appropriate base offense level in this case was 28 pursuant to § 2G1.3(a)(3). The United States Probation Office took the same position. Neither party nor the Probation Office asserted that the cross-reference at § 2G1.3(c)(1) applied in this case. Nonetheless, the day before the sentencing hearing – a hearing that had been scheduled for several months – the District Court issued a Minute Order directing the parties to come prepared to discuss whether the cross-reference applied. At the beginning of the sentencing hearing, the District Court made clear that it intended to deviate from its normal procedure of "consider[ing] whether there are any objections to the PSR and mak[ing] [its] findings with respect to it" and then proceeding to a calculation of the guidelines range. (JA116). The District Court then noted that it wished for the parties to address the cross-reference issue as well as concerns regarding Mr. Clark's acceptance of responsibility, an issue that had not been raised prior to sentencing. After adopting the factual findings concerning the offense

21

conduct as presented in the PSR, the District Court turned to the Government to address the cross-reference.

As noted above, the Government explained that it believed that the cross-reference did not apply to this case. The Government set forth a detailed explanation as to why that was so. The cross-reference at § 2G1.3(c)(1) directs a district court to apply the higher base offense level of §2G2.1 "[i]f the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." Application Note 5(A) to § 2G1.3 states that the term "'sexually explicit conduct' has the meaning given that term in 18 U.S.C. § 2256(2)." As relevant here, 18 U.S.C. § 2256(2)(A)(v) defines "sexually explicit conduct" as "lascivious exhibition of the anus, genitals, or public area of any person." Moreover, as the Government explained, in *Hillie*, 39 F.4th at 686, this Court held that in order to qualify as depicting "sexually explicit conduct," images "must consist of [a victim] displaying her anus, genitalia or pubic area in a lustful manner that connotes the commission of a sexual act." Given the content of the images at issue in this case, the Government asserted that conduct did not meet the definition required by *Hillie*.

The District Court then pressed the Government on Mr. Clark's *request* that the victim send him images and asked for an explanation as to why that would not satisfy the requirements of the cross-reference. The Government responded: "I see

the Court's point in why it could apply. But the messages themselves are asking for just images of genitalia and body parts. And the fact that he is not asking for her to masturbate on camera or anything along those lines, I think cuts in the direction of not applying this cross-reference." (JA 122). The Government argued that in light of the images that were actually sent and the specific messages directed towards the victim, there was "not enough" evidence to support the cross-reference. *Id*. The Government noted that different images or different messages – which is to say images and messages *not at issue in this case* – may have been sufficient to apply the cross-reference. (JA 123). Defense counsel noted his agreement with the Government's position on the cross-reference. (JA 125).

In its ruling with respect to the cross-reference – again, a ruling no party asked the District Court to make – the District Court characterized the issue as a "close question" and stated that there was a "strong argument or at least a reasonable argument" that Mr. Clark's conduct satisfied the cross-reference.[6] (JA 130). Ultimately, the District Court did not include the cross-reference in its calculation of the guidelines. However, in imposing a life sentence, a sentence significantly higher than the guidelines range and far higher than that requested by any party, the District Court remarked that there "was a pretty good argument that the cross-reference

---

[6] The District Court also expressed the view that there was a "decent argument" that Mr. Clark's conduct fell within scope of the cross-reference. (JA 130).

23

should have been applicable or should apply here." (JA 147). Indeed, the District Court stated that Mr. Clark "got lucky" that the images and messages did not meet the test of the cross-reference. On the basis of its view that the cross-reference should have applied, the District Court stated that the guidelines could understate the seriousness of the offense.

The nature of the District Court's error with respect to the cross-reference is multifaceted. First, the District Court contravened the adversarial nature of sentencing and assumed the role of an advocate in arguing for a match between the cross-reference and Mr. Clark's conduct. "The requirements of due process are not suspended with the pronouncement of guilt, but continue to operate in the sentencing process." *United States v. Lemon*, 723 F.2d 922, 933 (D.C. Cir. 1983). To that end, the Federal Rules of Criminal Procedure require "focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guidelines sentence." *Burns v. United States*, 501 U.S. 129, 134 (1991). "[T]he government bears the burden of proof in seeking sentencing enhancements under the Guidelines[.]" *United States v. Keleta*, 552 F.3d 861, 866 (D.C. Cir. 2009). Here, the Government did not seek the cross-reference enhancement. Moreover, while district courts must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018) (citing *Gall*, 552 U.S. at 49), a district court's factual findings and legal conclusions at

sentencing must comport with the constitutional requirements of due process and fundamental fairness, and they are circumscribed by the adversarial nature of the proceeding. The District Court repeatedly referenced *arguments* in favor of applying the cross-reference. Yet no party to the proceedings made any such argument. In fact, the Government explained, with citation to binding authority, that the cross-reference did not apply on the facts of this case. Moreover, there is no indication that the District Court itself ever viewed the images at issue. No evidence or information before the District Court established that Mr. Clark's conduct met the requirements of the cross-reference. To the contrary, the evidence before the District Court from the Statement of Offense and PSR conclusively demonstrated that the cross-reference did not apply as a matter of law and fact. The District Court's conclusion that this question was a close call is therefore erroneous.

The District Court's decision to base its substantial upward variance on a cross-reference that did not apply to the case was also in error. To be clear, the District Court calculated the total offense level without regard for the enhancement. But while announcing its sentence, the District Court relied on that very enhancement to conclude that an upward variance was appropriate. The District Court's statement that Mr. Clark got "lucky" by virtue of the fact that his conduct did not merit the enhancement was also erroneous. It was the facts of this case and the binding precedent of this Court that compelled the legal result, not luck. It would

frustrate this Court's role in reviewing sentences to conclude that where a District Court properly concludes that a guidelines enhancement does not apply, the District Court's sentencing decision is insulated from review where the District Court relies on that same inapplicable enhancement to justify a significant upward variance.

Second, the District Court committed procedural error when it concluded that the five-level upward adjustment under § 4B1.5(b)(1) for engaging in a pattern of prohibited sexual conduct was insufficient to account for the nature and duration of the conduct at issue in this case and then relied on that conclusion in imposing a substantial upward variance. Notably, the District Court did not raise this concern with either party before announcing its sentence. The District Court therefore erred in depriving Mr. Clark of the opportunity to address this consideration. Additionally, *five-level* enhancement represents the single largest guidelines enhancement of those to which the parties agreed and which ultimately applied in this case. It was error to conclude that the guidelines range, which spanned 58 months, did not adequately take into account the duration of the pattern of conduct. Moreover, the District Court ignored that a substantial portion of the 45-year sentence Mr. Clark received in Maryland was based on the fact that he accepted responsibility for engaging in a pattern of sexually abusive behavior towards the victim. In the Circuit Court for Charles Count, Mr. Clark pled guilty to engaging in a continuing course of child sexual abuse, in violation of Md. Code Ann., Crim. Law § 3-315. That offense carries

a maximum penalty of 30 years of imprisonment. Mr. Clark was sentenced to 25 years of active incarceration for that offense, with a consecutive 20 years imposed the for substantive offense of sexual abuse of a minor. It was therefore error for the District Court to conclude that absent a significant upward variance, Mr. Clark would not be adequately punished for engaging in repeated unlawful conduct.

Third, the District Court failed to give adequate consideration to "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," as required by 18 U.S.C. § 3553(a)(6). The District Court noted that this factor "weigh[ed] in favor of an in-guidelines-range sentence." (JA 151). The District Court then disregarded the properly calculated guidelines range by stating that "the sentencing guidelines range here could easily have been 360 months to life. Of course, the cross-reference in my view, is a close question." *Id*. That conclusion was erroneous. As explained at the sentencing hearing and above, the cross-reference did not apply as a matter of law or fact. The guidelines range in *this* case was *not* 360 months to life imprisonment. Additionally, the District Court failed to consider that production of child pornography under 18 U.S.C. § 2251, the offense to which § 2G2.1 actually applies, is punishable by a maximum of 30 years of imprisonment, *not* life. Moreover, the District Court disregarded sentencing data that showed that the average sentence of imprisonment for defendants with the same primary guideline, same offense level,

and same criminal history as Mr. Clark was significantly below the low-end of the guidelines range. The objective data showed that in similar cases, downward variances were more often the rule than the exception. In light of the data, even if the District Court was not inclined to grant Mr. Clark a downward variance, the District Court failed to explain, with reference to any legitimate sentencing factor, why a sentence within the guidelines would not be sufficient to avoid unwarranted sentencing disparities. Additionally, in its Sentencing Recommendation, the Probation Office noted that a downward variance to 204 months of imprisonment "aligns with sentences imposed in similarly situated cases in the District of Columbia." (SJA 191). Against this backdrop, the District Court did not identify a single comparator case to support a sentence of life imprisonment.

Fourth, the District Court did not adequately consider the substantial mitigation in this case. "The holdings of the Supreme Court and this Court state that when presented with non-frivolous arguments for mitigation, the District Court must consider those arguments before imposing the sentence." *United States v. Pyles*, 862 F.3d 82, 88 (D.C. Cir. 2017). Here, the District Court named some of the mitigating factors including lack of criminal history, age, health, and circumstances of childhood, but dismissed them as abstractions that did not provide mitigation in this case. In other words, the District Court did not seriously engage with Mr. Clark's substantial mitigation arguments. With respect to Mr. Clark's health, the PSR

contained information that Mr. Clark had been diagnosed at age 60 with transverse myelitis, a rare neurological condition caused by inflammation of the spinal cord. The District Court determined that Mr. Clark's health provided no mitigation because his condition did not stop him from engaging in the conduct at issue in this case. While the District Court determined that Mr. Clark's health may serve to prevent him from reoffending, the District Court did not afford consideration to the significant decline in Mr. Clark's health that had taken place over the years since his incarceration, a factor that cuts against an upward variance.

As to age, the District Court gave little consideration to Mr. Clark's mitigation argument. The District Court stated: "I also note some irony in the argument that Mr. Clark should receive credit for his age, when he is being sentenced for sexually abusing someone who is a minor." (JA 150). This statement reflects a lack of consideration for Mr. Clark's non-frivolous mitigation argument. There is nothing inconsistent or ironic in recognizing that the victim's age is an element of criminal offenses – for which Mr. Clark accepted responsibility in two jurisdictions and had already received a sentence of 45 years – while also noting that as an elderly defendant, Mr. Clark faces certain hardships and presents with certain characteristics that merit a less severe sentence.

Additionally, not once in stating its sentencing decision did the District Court make mention of the letters of support attached to Mr. Clark's Sentencing

Memorandum. Those letters served to humanize Mr. Clark and provide a perspective of who is he is as a person outside of the context of the offense, a person who for *decades* lived a law-abiding life, maintained employment, and was a beloved member of his community. That there were individuals who wrote in support of Mr. Clark notwithstanding the nature of this case speaks volumes about Mr. Clark's character. At sentencing, a district court must consider a defendant on the whole, not merely the conduct giving rise to the criminal case. As the Supreme Court has recognized: "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 U.S. at 52. Nor did the District Court consider in imposing its sentence the fact that Mr. Clark accepted responsibility early in this case. After agreeing to continue the deadline within which to hold a preliminary hearing or file an indictment, Mr. Clark agreed to proceed under an Information. He never sought to put the Government to its burden of proof. Mr. Clark filed no substantive pretrial motions. There were no pretrial evidentiary proceedings in the District Court. The District Court failed to consider Mr. Clark's mitigation arguments on their merits and therefore committed procedural error.

Finally, the District Court committed procedural error when it failed to state reasons sufficient to justify the dramatic upward variance to a sentence of life

imprisonment. "In analyzing the sufficiency of the district court's decision [to impose an upward variance], [this Court] must first take account of what considerations were already built into [Mr. Clark's] recommended Guidelines range. That is because an upward variance is not supposed to reduplicate punishment already meted out by the Guidelines' range itself." *Brown*, 892 F.3d at 405. First, the fact that Mr. Clark used communications over the internet to persuade the minor victim to engage in unlawful sexual activity– circumstances that comprise the very elements of the offense of conviction – is accounted for in the base offense level of this case. Additionally, Mr. Clark received an enhancement for the use of a computer in the form of a cellphone. The nature of Mr. Clark's relationship to the victim and her family is accounted for in a further two-level enhancement under § 2G1.3(b)(1)(B). The fact that Mr. Clark engaged in sexual contact with the victim is accounted for both in the enhancement under § 2G1.3(b)(2)(B) for undue influence to engage in sexual conduct and in the enhancement under § 2G1.3(b)(4)(A) for the commission of a sex act. Finally, the five-level enhancement of § 4B1.5(b)(1) accounts for the repeated nature of the conduct. Moreover, both the sexual abuse of the minor victim and the repeated course of conduct were taken into account under the statutes of conviction in the related Charles County case. At sentencing, the District Court penalized Mr. Clark on the basis of a cross-reference that did not apply. The District Court further cited the duration of the conduct but did not explain

why a sentence within the guidelines or even at the very top of the range, which included a five-level enhancement for that very factor, would not be a sufficient sentence.

All cases involving coercion and enticement of a minor are serious. For that reason, a 10-year mandatory minimum applies under the statute, and the guidelines provide for a number of enhancements, several of which applied in this case. The aggravating circumstances of this case are accounted for in the guidelines. They are also accounted for in the substantial sentence imposed in Maryland. In other words, it is not the case that Mr. Clark avoided accountability for state offenses by entering into a federal plea agreement. With respect to the harm to the victim, the Government considered victim impact statements in recommending a guidelines-compliant sentence of 260 months of imprisonment. The District Court offered no explanation as to why, even if it believed that the Government's recommendation was too low, a sentence towards the high end of the range would not have been appropriate. This case involves an upward variance of the greatest magnitude. "When the District Court imposes a term of incarceration that is outside the Guidelines range, as is the case here, it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Brown*, 808 F.3d 865, 866 (D.C. Cir. 2015) (citation omitted). Here, the District Court did not provide adequate justification for the variance from a high-end

32

guidelines sentence of 293 months all the way to life imprisonment without the possibility of parole. For these reasons, this Court should vacate Mr. Clark's sentence and remand for resentencing.

## II. The Life Sentence is Substantively Unreasonable

### A. Standard of Review

If this Court determines that a sentencing court's decision is procedurally sound, then it considers the substantive reasonableness of the sentence. *Mattea*, 895 F.3d at 765. The substantive reasonableness inquiry on appeal "boils down to the following question: In light of the facts and circumstances of the offense and offender, is the sentence so unreasonably high or unreasonably low as to constitute an abuse of discretion by the district court?" *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). While a "sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness," a sentence outside of that range is not. *United States v. Law*, 806 F.3d 1103, 1106 (D.C. Cir. 2015). Claims of substantive unreasonableness are reviewed for abuse of discretion. *Mattea*, 895 F.3d at 766.

### B. Under the Totality of the Circumstances, the Life Sentence is Substantively Unreasonable

To the extent this Court concludes that the procedural errors identified above do not warrant reversal, the Court should conclude that under the totality of the circumstance of this case, a life sentence is substantively unreasonable. To be clear,

Mr. Clark recognizes that this Court has held that "[i]t will be the unusual case when an appeals court can plausibly say that a sentence is so unreasonably high or low as to constitute an abuse of discretion by the district court." *Gardellini*, 545 F.3d at 1093. This is the unusual case. Here, Mr. Clark entered into a global plea agreement and accepted responsibility for his conduct in two jurisdictions. Mr. Clark, who was 67 years old at the time of sentencing, had no prior criminal history of any kind. He had maintained employment at the State Department since 1989. Mr. Clark suffered from serious physical ailments that progressed throughout his incarceration. He had abundant family and community support. Additionally, by the time he appeared before the District Court for sentencing, he had already been sentenced in Maryland to 45 years of imprisonment.

The offense at issue in this case is undoubtedly serious. A 10-year mandatory minimum applied, and the guidelines recommended a sentence just of under 20 years at the low end and just under 25 years at the high end. The Government recommended a sentence of 260 months. Both Mr. Clark and the Probation Office recommended a sentence below the guidelines range. Sentencing data presented to the District Court revealed that the average sentence in similar cases was well below the guidelines range. No party requested a sentence towards the high-end of the guidelines range, let alone an upward variance. Nonetheless, largely on the basis of an enhancement that did not apply in this case, a conclusion that a five-level

guidelines enhancement and related state sentence for engaging in a pattern of conduct were insufficient to address the seriousness of the conduct, and in light of offense characteristics that were already accounted for in the guidelines, the District Court imposed the maximum degree of upward variance permitted under the law. The District Court did not explain why the Government's recommended sentence or a sentence at the high-end guidelines or even a sentence of 540 months – the equivalent of the 45 years imposed in Maryland – would not be sufficient. Instead, the District Court sentenced a 67-year-old man who committed a non-homicide offense to life imprisonment without the possibility of parole. On the facts of this case, where Mr. Clark promptly accepted responsibility before two courts and engaged in no additional criminal conduct between the entry of his pleas and sentencing, a life sentence is substantively unreasonable. This Court should therefore vacate the sentence and remand for resentencing.

III. **If this Court Vacates the Life Sentence, the Court Should Remand for Resentencing before a Different District Judge**

A. **Standard of Decision**

Under 28 U.S.C. § 2106, "[t]he Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." "Federal

appellate courts' ability to assign a case to a different judge on remand rests not on the recusal statutes alone, but on the appellate courts' statutory power to 'require such further proceedings to be had as may be just under the circumstances.'" *United States v. Tucker*, 78 F.3d 1313, 1323-24 (8th Cir. 1996) (citing 28 U.S.C. § 2106). "Reassignment is a remedy reserved for the unusual case." *United States v. Abney*, 957 F.3d 241, 254 (D.C. Cir. 2020) (citation omitted). This Court has identified the following as the "principal factors to be considered by a court of appeals in determining whether to direct reassignment to a different judge:"

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind the previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected,
>
> (2) whether reassignment is advisable to preserve the appearance of justice, and
>
> (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*United States v. Wolff*, 127 F.3d 84, 88 (D.C. Cir. 1997).

**B.     Under the Circumstances of this Case, Reassignment to a Different District Judge for Resentencing is Appropriate**

If this Court determines that the life sentence was imposed in error, the Court should remand for resentencing before a different district judge. At the outset, the undersigned counsel must state that he has the utmost respect for the District Judge who was assigned to Mr. Clark's case. Mr. Clark in no way alleges that the District

Judge harbored bias towards him. The request for reassignment is made solely to ensure the appearance of fairness at any resentencing. In light of the seriousness of the case and the severity of the sentence imposed, reassignment on remand is warranted. First, given that the District Court imposed such a significant upward variance, far beyond the sentence recommended by any party, there is a reasonable likelihood that the District Court may have substantial difficulty putting aside its views of the facts of the case and initial analysis of the 18 U.S.C. § 3553(a) factors as expressed at the sentencing hearing. Second, reassignment would preserve the appearance of justice. If the case is remanded for resentencing before the same district judge who erroneously sentenced Mr. Clark to life imprisonment without the possibility of parole in the absence of a recommendation from any party for a sentence so severe, there is a serious risk that an observer of or participant in the resentencing proceeding may entertain doubt as to whether the ultimate sentence would be unduly increased in light of the findings made at the prior proceeding. Reassignment would ensure the appearance of neutral forum for presenting sentencing arguments in this serious case. Third, reassignment would not result in a waste or unreasonable duplication of judicial resources. The sentencing hearing in this matter followed a guilty plea, not a trial. Accordingly, the District Court was not tasked with assessing a trial record to make factual determinations at sentencing. Moreover, the sentencing hearing itself was not an evidentiary proceeding. Apart

from counsel and the District Court, only Mr. Clark spoke at sentencing. The need to ensure the appearance of fairness far outweighs the marginal duplication of judicial resources that would result from another district judge reviewing any forthcoming or prior sentencing submissions and conducting a sentencing hearing.

For these reasons, reassignment to a different district judge for resentencing is appropriate.

## CONCLUSION

For the foregoing reasons, Appellant Charles Clark respectfully requests that this Court vacate the life sentence and remand for resentencing before a different district judge.

Respectfully submitted,

/s/ Michael E. Lawlor

Michael E. Lawlor
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, MD 20770
(301) 474-0044 phone
(301) 474-5730 fax
mlawlor@brennanmckenna.com

**REQUEST FOR ORAL ARGUMENT**

Appellant respectfully requests that this Court schedule oral argument in this matter.

/s/ Michael E. Lawlor

Michael E. Lawlor

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Fed. R. App. P. 32 because this opening brief contains 9,500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32 because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman font.

/s/ Michael E. Lawlor

Michael E. Lawlor

# ADDENDUM

# TABLE OF CONTENTS

**Page**

18 U.S.C. § 2422(b) .................................................................. ADD1

U.S.S.G. § 2G1.3(c)(1) .............................................................. ADD1

Application Note 5(A) to U.S.S.G. § 2G1.3 ................................. ADD1

18 U.S.C. § 2256(2)(A) ............................................................. ADD1

Md. Code Ann., Crim. Law § 3-602 .......................................... ADD2

Md. Code Ann., Crim. Law § 3-315 .......................................... ADD3

28 U.S.C. § 2106 ...................................................................... ADD3

# ADDENDUM

**18 U.S.C. § 2422(b)**

Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

**U.S.S.G. § 2G1.3(c)(1)**

If the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, apply § 2G2.1 (Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production), if the resulting offense level is greater than that determined above.

**Application Note 5(A) to U.S.S.G. § 2G1.3**

Application of Subsection (c)(1). The cross reference in subsection (c)(1) is to be construed broadly and includes all instances in which the offense involved employing, using, persuading, inducing, enticing, coercing, transporting, permitting, or offering or seeking by notice, advertisement or other method, a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct. For purposes of subsection (c)(1), "sexually explicit conduct" has the meaning given that term in 18 U.S.C. § 2256(2).

**18 U.S.C. § 2256(2)(A)**

Except as provided in subparagraph (B), "sexually explicit conduct" means actual or simulated—

> (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

> (ii) bestiality;

> (iii) masturbation;

(iv) sadistic or masochistic abuse; or

(v) lascivious exhibition of the anus, genitals, or pubic area of any person[.]

## Md. Code Ann., Crim. Law § 3-602

(a)

(1) In this section the following words have the meanings indicated.

(2) "Family member" has the meaning stated in § 3-601 of this subtitle.

(3) "Household member" has the meaning stated in § 3-601 of this subtitle.

(4)

(i) "Sexual abuse" means an act that involves sexual molestation or exploitation of a minor, whether physical injuries are sustained or not.

(ii) "Sexual abuse" includes:

1. incest;

2. rape;

3. sexual offense in any degree; and

4. any other sexual conduct that is a crime.

(b)

(1) A parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor may not cause sexual abuse to the minor.

(2) A household member or family member may not cause sexual abuse to a minor.

(c) A person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 25 years.

(d) A sentence imposed under this section may be separate from and consecutive to or concurrent with a sentence for:

(1) any crime based on the act establishing the violation of this section; or

(2) a violation of § 3-601 of this subtitle involving an act of abuse separate from sexual abuse under this section.

## Md. Code Ann., Crim. Law § 3-315

(a) A person may not engage in a continuing course of conduct which includes three or more acts that would constitute violations of § 3-303, § 3-304, or § 3-307 of this subtitle, or violations of § 3-305 or § 3-306 of this subtitle as the sections existed before October 1, 2017, over a period of 90 days or more, with a victim who is under the age of 14 years at any time during the course of conduct.

(b)

(1) A person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 30 years.

(2) A sentence imposed under this section may be separate from and consecutive to or concurrent with a sentence under § 3-602 of this title.

(c) In determining whether the required number of acts occurred in violation of this section, the trier of fact:

(1) must determine only that the required number of acts occurred; and

(2) need not determine which acts constitute the required number of acts.

(d)

(1) A person may not be charged with a violation of § 3-303, § 3-304, or § 3-307 of this subtitle involving the same victim in the same proceeding as a violation of this section unless the other violation charged occurred outside the time period charged under this section.

(2) A person may not be charged with a violation of § 3-303, § 3-304, or § 3-307 of this subtitle involving the same victim unless the violation charged occurred outside the time period charged under this section.

(e) For purposes of prosecution under this section, violations of subsection (a) of this section that occur in separate periods of 90 days or more shall be considered separate violations.

## 28 U.S.C. § 2106

The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such

appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.