# United States Court of Appeals
# for the District of Columbia Circuit

### No. 24-3041

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES CLARK,

*Defendant-Appellant.*

*On Appeal from the United States District Court for the District of Columbia in No. 1:22-cr-00160-CJN-1, Carl J. Nichols, U.S. District Judge*

# PUBLIC JOINT APPENDIX
# SEALED MATERIAL IN SEPARATE SUPPLEMENT
# VOLUME 1 OF 2, PAGES A1 – A160

CHRISELLEN REBECCA KOLB
*Assistant U.S. Attorney*
U.S. ATTORNEY'S OFFICE
APPELLATE DIVISION
601 D Street, NW, Room 8104
Washington, DC 20530
(202) 252-6833
chrisellen.r.kolb@usdoj.gov

*Counsel for Plaintiff-Appellee*

MICHAEL E. LAWLOR
BRENNAN MCKENNA & LAWLOR,
  CHTD.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(240) 219-8980
mlawlor@brennanmckenna.com

*Counsel for Defendant-Appellant*

COUNSEL PRESS
A ▷ Proceed Service
The Appellate Experts®    (800) 4-APPEAL • (393723)

# TABLE OF CONTENTS

**Page**

Docket Entries................................................................................. A1

Criminal Complaint, filed March 30, 2021...................................... A13

Information, filed May 9, 2022...................................................... A18

Waiver of Trial by Jury, filed October 11, 2022 ............................. A20

Waiver of Indictment, filed October 11, 2022................................ A21

Plea Agreement, filed October 11, 2022........................................ A22

Transcript of Arraignment and Pleas, dated October 11, 2022 ........ A36

Joint Motion to Schedule Sentencing Date, filed December 11, 2023 ............ A65

United States Sentencing Memorandum, filed March 27, 2024........ A67

Defendant's Position on Sentencing, filed March 27, 2024 ............. A83

Judgment, filed April 4, 2024 ....................................................... A107

Transcript of Sentencing, dated April 3, 2024................................ A114

Notice of Appeal, filed April 10, 2024 .......................................... A160


SEALED VOLUME:

Statement of Offense, dated May 9, 2022 ...................................... A161

Presentencing Investigation Report, filed May 20, 2022 ................ A165

Sentencing Recommendation, filed March 20, 2024........................ A190

Statement of Reasons, filed April 4, 2024 ...................................... A195

# U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: 1:22-cr-00160-CJN-1

Case title: USA v. CLARK                                      Date Filed: 05/09/2022

Magistrate judge case number:  1:21-mj-00344-RMM

Assigned to: Judge Carl J. Nichols

Appeals court case number: 24-3041

**Defendant (1)**

**CHARLES CLARK**                    represented by   **Cara Kurtz Halverson**
                                                      FEDERAL PUBLIC DEFENDER
                                                      625 Indiana Ave NW
                                                      Suite 550
                                                      Washington, DC 20004
                                                      (202) 208-7500
                                                      Email: cara_halverson@fd.org
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*
                                                      *Designation: Public Defender or*
                                                      *Community Defender Appointment*

                                                      **Jay P. Mykytiuk**
                                                      MONUMENT LEGAL
                                                      1100 H Street NW
                                                      Suite 1010
                                                      20005
                                                      Washington, DC 20005
                                                      202-657-1522
                                                      Email: jpm@monumentlegal.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*
                                                      *Designation: Retained*

                                                      **Michael E. Lawlor**
                                                      BRENNAN MCKENNA & LAWLOR
                                                      Maryland
                                                      6305 Ivy Lane
                                                      Suite 700
                                                      Greenbelt, MD 20770
                                                      301-474-0044
                                                      Fax: 301-474-5730
                                                      Email: mlawlor@brennanmckenna.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*
                                                      *Designation: Retained*

A1

## Pending Counts

18:2422(b); COERCION OR
ENTICEMENT OF FEMALE; Enticement
of a Minor
(1)

## Disposition

Defendant sentenced to LIFE to run
concurrent with Defendant's Maryland case,
followed by LIFE term of Supervised
Release (with conditions). Defendant further
Ordered to pay $39,000 Restitution and
$100 Special Assessment. No fine imposed.

## Highest Offense Level (Opening)

Felony

## Terminated Counts

None

## Disposition

## Highest Offense Level (Terminated)

None

## Complaints

COMPLAINT in Violation of 18:2423(a),
18:2422(b), 18:2252(a)(2) and 22 D.C Code
3008(a) & 3020(a)(2)

## Disposition

---

## Plaintiff

**USA** represented by **Angela Nichole Buckner**
U.S. ATTORNEY'S OFFICE DOJ/USAO
Sex Offense/ Domestic Violence
555 4th Street, NW
Washington, DC 20530
(202) 445-8340
Email: angela.buckner.2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Janani Iyengar**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
Criminal Division
555 4th Street NW
Washington, DC 20530
(202) 252-7760
Email: janani.iyengar@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Jocelyn Patricia Bond**

A2

U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20001
(202) 252-2571
Email: jocelyn.bond@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/30/2021 | 1 | SEALED COMPLAINT as to CHARLES CLARK (1). (Attachments: # 1 Statement of Facts) (zstd) [1:21-mj-00344-RMM] (Entered: 03/30/2021) |
| 03/30/2021 | 3 | MOTION to Seal Case by USA as to CHARLES CLARK. (Attachments: # 1 Text of Proposed Order)(zstd) [1:21-mj-00344-RMM] (Entered: 03/30/2021) |
| 03/30/2021 | 4 | ORDER granting 3 Motion to Seal Case as to CHARLES CLARK (1). Signed by Magistrate Judge Robin M. Meriweather on 03/30/2021. (zstd) [1:21-mj-00344-RMM] (Entered: 03/30/2021) |
| 04/02/2021 | | Arrest of CHARLES CLARK (1) (zpt) [1:21-mj-00344-RMM] (Entered: 04/05/2021) |
| 04/02/2021 | 5 | Arrest Warrant Returned Executed on 4/2/2021 as to CHARLES CLARK (1). (zpt) [1:21-mj-00344-RMM] (Entered: 04/05/2021) |
| 04/02/2021 | | ORAL MOTION to Appoint Counsel by CHARLES CLARK (1). (zpt) [1:21-mj-00344-RMM] (Entered: 04/05/2021) |
| 04/02/2021 | | ORAL MOTION for Temporary Detention by USA as to CHARLES CLARK (1). (zpt) [1:21-mj-00344-RMM] (Entered: 04/05/2021) |
| 04/02/2021 | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: VTC Initial Appearance as to CHARLES CLARK (1) held on 4/2/2021. Oral Motion to Appoint Counsel by CHARLES CLARK (1) Heard and Granted. Court may revisit Defendant's eligibility for court appoint counsel. Oral Motion by the Government for Temporary Detention (3 Day Hold) as to CHARLES CLARK (1) Heard and Granted. Detention Hearing set for 4/6/2021 at 04:00 PM in Telephonic/VTC before Magistrate Judge G. Michael Harvey. Bond Status of Defendant: Defendant Committed/Committment Issued; Court Reporter: FTR-Gold FTR Time Frame: CTRM 6 [3:30:16-4:00:45]; Defense Attorney: Cara Halverson; US Attorney: Janani Iyengar; Pretrial Officer: Christine Schuck; (zpt) [1:21-mj-00344-RMM] (Entered: 04/05/2021) |
| 04/02/2021 | | MINUTE ORDER as to CHARLES CLARK (1). As required by Rule 5(f), the United States is ordered to produce all exculpatory evidence to the defendant pursuant to Brady v. Maryland and its progeny. Not doing so in a timely manner may result in sanctions, including exclusion of evidence, adverse jury instructions, dismissal of charges and contempt proceedings. Signed by Magistrate Judge G. Michael Harvey on 4/2/2021. (zpt) [1:21-mj-00344-RMM] (Entered: 04/08/2021) |
| 04/06/2021 | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: VTC Status Hearing as to CHARLES CLARK (1) held on 4/6/2021. Matter was set for a Detention Hearing but was unable to be held due to the Defendant's inability to appear virtually from DC Jail. Control Status Hearing set for 4/9/2021 03:30 PM in Telephonic/VTC before Magistrate Judge G. Michael Harvey. Bond Status of Defendant: Defendant Not Present/Defendant Remains Committed; Court Reporter: FTR-Gold; FTR |

A3

| | | |
|---|---|---|
| | | Time Frame: CTRM 6 [4:24:38-4:31:07]; Defense Attorney: Cara Halverson; US Attorney: Janani Iyengar; Pretrial Officer: Dashanta ValentineLewis; (zpt) [1:21-mj-00344-RMM] (Entered: 04/07/2021) |
| 04/09/2021 | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: VTC Control Status Hearing as to CHARLES CLARK (1) held on 4/9/2021. Detention Hearing set for 4/16/2021 at 04:00 PM in Telephonic/VTC before Magistrate Judge G. Michael Harvey. Bond Status of Defendant: Defendant Remains Committed; Court Reporter: FTR-Gold; FTR Time Frame: CTRM 6 [3:40:40-3:47:19]; Defense Attorney: Cara Halverson; US Attorney: Janani Iyengar; Pretrial Officer: Christine Schuck; (zpt) [1:21-mj-00344-RMM] (Entered: 04/09/2021) |
| 04/12/2021 | 6 | PRETRIAL SERVICES REPORT as to CHARLES CLARK This document is for informational purposes only. No action is requested.(Robinson, Takeysha) [1:21-mj-00344-RMM] (Entered: 04/12/2021) |
| 04/16/2021 | | ORAL MOTION to Commit Defendant to Custody of Attorney General by USA as to CHARLES CLARK (1). (zpt) [1:21-mj-00344-RMM] (Entered: 04/16/2021) |
| 04/16/2021 | | ORAL MOTION for Release from Custody by CHARLES CLARK (1). (zpt) [1:21-mj-00344-RMM] (Entered: 04/16/2021) |
| 04/16/2021 | | ORAL MOTION for Speedy Trial Waiver by USA as to CHARLES CLARK (1). (zpt) [1:21-mj-00344-RMM] (Entered: 04/16/2021) |
| 04/16/2021 | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: VTC Detention Hearing as to CHARLES CLARK (1) held on 4/16/2021. Oral Motion by the Government to Commit Defendant to Custody of Attorney General as to CHARLES CLARK (1) Heard and Granted. Oral Motion for Release from Custody by CHARLES CLARK (1) Heard and Denied. Oral Motion by the Government for Speedy Trial Waiver as to CHARLES CLARK (1) Heard and Granted. Time between 4/16/2021 and 4/30/2021 (14 Days) shall be excluded from calculation under the Speedy Trial Act in the interest of justice X-T. Preliminary Hearing set for 4/30/2021 at 04:00 PM in Telephonic/VTC before Magistrate Judge G. Michael Harvey. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: FTR-Gold FTR Time Frame: CTRM 6 [4:10:54-4:44:18]; Defense Attorney: Cara Halverson; US Attorney: Janani Iyengar; Pretrial Officer: Christine Schuck; (zpt) [1:21-mj-00344-RMM] (Entered: 04/16/2021) |
| 04/27/2021 | 7 | MOTION to Unseal Case by USA as to CHARLES CLARK. (Attachments: # 1 Text of Proposed Order)(zstd) [1:21-mj-00344-RMM] (Entered: 04/27/2021) |
| 04/28/2021 | 8 | ORDER Granting 7 MOTION to Unseal Case by USA as to CHARLES CLARK (1). Signed by Magistrate Judge G. Michael Harvey on 4/28/2021. (zpt) [1:21-mj-00344-RMM] (Entered: 04/28/2021) |
| 04/28/2021 | | Case unsealed as to CHARLES CLARK (zstd) [1:21-mj-00344-RMM] (Entered: 04/28/2021) |
| 04/30/2021 | 9 | NOTICE OF ATTORNEY APPEARANCE: Jay P. Mykytiuk appearing for CHARLES CLARK (Mykytiuk, Jay) [1:21-mj-00344-RMM] (Entered: 04/30/2021) |
| 04/30/2021 | 10 | Consent MOTION to Continue *Preliminary hearing* by CHARLES CLARK. (Attachments: # 1 Text of Proposed Order)(Mykytiuk, Jay) [1:21-mj-00344-RMM] (Entered: 04/30/2021) |
| 04/30/2021 | 11 | MOTION to Exclude Time Under the Speedy Trial Act by CHARLES CLARK. (See docket entry 10 to view document). (zstd) [1:21-mj-00344-RMM] (Entered: 04/30/2021) |

A4

| 05/03/2021 | 12 | NOTICE OF ATTORNEY APPEARANCE Angela Nichole Buckner appearing for USA. (Buckner, Angela) [1:21-mj-00344-RMM] (Entered: 05/03/2021) |
|---|---|---|
| 05/13/2021 | 13 | ORDER Granting 10 Consent MOTION to Continue Preliminary hearing by CHARLES CLARK (1) and Granting MOTION to Exclude Time Under the Speedy Trial Act by CHARLES CLARK (1). Time between 4/30/2021 and 6/30/2021 (61 Days) shall be excluded from calculation under the Speedy Trial Act in the interest of justice X-T. Preliminary Hearing continued to 6/30/2021 at 10:00 AM in Telephonic/VTC before Magistrate Judge Zia M. Faruqui. Signed by Magistrate Judge G. Michael Harvey on 5/13/2021. (zpt) [1:21-mj-00344-RMM] (Entered: 05/14/2021) |
| 05/17/2021 | 14 | ORDER OF DETENTION PENDING TRIAL - Defendant Held Without Bond as to CHARLES CLARK (1). Signed by Magistrate Judge G. Michael Harvey on 5/17/2021. (zpt) [1:21-mj-00344-RMM] (Entered: 05/17/2021) |
| 06/28/2021 | 15 | ENTERED IN ERROR.....Consent MOTION to Continue by CHARLES CLARK. (Attachments: # 1 Text of Proposed Order)(Mykytiuk, Jay) Modified on 6/29/2021 (zstd). [1:21-mj-00344-RMM] (Entered: 06/28/2021) |
| 06/28/2021 |  | NOTICE OF CORRECTED DOCKET ENTRY: as to CHARLES CLARK re 15 Consent MOTION to Continue was entered in error and counsel refiled said pleading. The correct document is filed at DE # 16. (zstd) [1:21-mj-00344-RMM] (Entered: 06/29/2021) |
| 06/29/2021 | 16 | Amended MOTION to Continue *Preliminary hearing* by CHARLES CLARK. (Attachments: # 1 Text of Proposed Order)(Mykytiuk, Jay) [1:21-mj-00344-RMM] (Entered: 06/29/2021) |
| 06/29/2021 | 17 | MOTION to Exclude Time Under Speedy Trial Act by CHARLES CLARK. (See docket entry 16 to view document). (zstd) [1:21-mj-00344-RMM] (Entered: 06/29/2021) |
| 06/29/2021 | 18 | ORDER granting 16 / 17 Consent Motion by Defendant CHARLES CLARK to Continue Preliminary Hearing and to Exclude Time Under Speedy Trial Act; continuing the Preliminary Hearing scheduled for 6/30/2021 to 9/8/2021 at 1:00 PM before Magistrate Judge Zia M. Faruqui by telephonic/VTC; excluding the time from 6/30/2021 through 9/8/2021 for purposes of any computation under the Speedy Trial Act, in the interest of justice; signed by Magistrate Judge Zia M. Faruqui on 6/29/2021. (kk) [1:21-mj-00344-RMM] (Entered: 06/30/2021) |
| 09/07/2021 | 19 | Consent MOTION to Continue *Preliminary hearing* by CHARLES CLARK. (Attachments: # 1 Text of Proposed Order)(Mykytiuk, Jay) [1:21-mj-00344-RMM] (Entered: 09/07/2021) |
| 09/07/2021 | 20 | MOTION to Exclude Time Under Speedy Trial Act by CHARLES CLARK. (See docket entry 19 to view document.) (zstd) [1:21-mj-00344-RMM] (Entered: 09/07/2021) |
| 09/07/2021 | 21 | ORDER granting 19 / 20 Consent Motion by Defendant CHARLES CLARK to Continue Preliminary Hearing and to Exclude Time Under Speedy Trial Act : continuing the Preliminary Hearing scheduled for 9/8/2021 to 3:00 PM on 11/4/2021 before Magistrate Judge Robin M. Meriweather in Courtroom 7 - in person; excluding the time from 9/8/2021 through 11/4/2021 for purposes of any computation under the Speedy Trial Act in the interest of justice; signed by Magistrate Judge Zia M. Faruqui on 9/7/2021. (kk) [1:21-mj-00344-RMM] (Entered: 09/07/2021) |
| 10/28/2021 | 22 | Consent MOTION to Continue *Preliminary hearing* by CHARLES CLARK. (Attachments: # 1 Text of Proposed Order)(Mykytiuk, Jay) [1:21-mj-00344-RMM] (Entered: 10/28/2021) |

A5

| | | |
|---|---|---|
| 10/28/2021 | 23 | MOTION to Exclude Time Under The Speedy Trial Act by CHARLES CLARK. (See docket entry 22 to view document). (zstd) [1:21-mj-00344-RMM] (Entered: 10/28/2021) |
| 10/28/2021 | 24 | ORDER granting 22 Motion to Continue Preliminary Hearing as to CHARLES CLARK (1). Preliminary Hearing continued to 12/9/2021 at 1:00 PM by Telephonic/VTC before Magistrate Judge Zia M. Faruqui. Signed by Magistrate Judge G. Michael Harvey on 10/28/2021. (ztl) [1:21-mj-00344-RMM] (Entered: 10/29/2021) |
| 12/07/2021 | 25 | Consent MOTION to Continue *Preliminary hearing* by CHARLES CLARK. (Attachments: # 1 Text of Proposed Order)(Mykytiuk, Jay) [1:21-mj-00344-RMM] (Entered: 12/07/2021) |
| 12/07/2021 | 26 | MOTION to Exclude Time Under The Speedy Trial Act by CHARLES CLARK. (See docket entry 25 to view document.) (zstd) [1:21-mj-00344-RMM] (Entered: 12/07/2021) |
| 12/07/2021 | 27 | ORDER granting 25 / 26 Consent Motion by Defendant CHARLES CLARK to Continue Preliminary Hearing and to Exclude Time Under Speedy Trial Act; continuing the currently scheduled Preliminary Hearing on 12/9/2021 to 1/20/2022 at 1:00 PM by telephonic/VTC before Magistrate Judge G. Michael Harvey; excluding the time from 12/9/2021 through 1/20/2022 from calculation under the Speedy Trial Act in the interest of justice; signed by Magistrate Judge Zia M. Faruqui on 12/7/2021. (kk) [1:21-mj-00344-RMM] (Entered: 12/07/2021) |
| 01/13/2022 | 28 | ENTERED IN ERROR.....Consent MOTION to Continue *Preliminary hearing* by CHARLES CLARK. (Attachments: # 1 Text of Proposed Order)(Mykytiuk, Jay) Modified on 1/13/2022 (bb). [1:21-mj-00344-RMM] (Entered: 01/13/2022) |
| 01/13/2022 | 29 | ENTERED IN ERROR..... MOTION to Exclude Time Under Speedy Trial Act by CHARLES CLARK. (See docket entry 28 to view document.) (zstd) Modified on 1/13/2022 (bb). [1:21-mj-00344-RMM] (Entered: 01/13/2022) |
| 01/13/2022 | | NOTICE OF CORRECTED DOCKET ENTRY: as to CHARLES CLARK re 28 Consent MOTION to Continue *Preliminary hearing*, 29 MOTION to Exclude was entered in error and counsel was instructed to refile said pleading. The attorney advised that a corrected version will be filed. (bb) [1:21-mj-00344-RMM] (Entered: 01/13/2022) |
| 01/13/2022 | 30 | Consent MOTION to Continue *Preliminary hearing*, Consent MOTION to Exclude *Time Under the Speedy Trial Act* by CHARLES CLARK. (Attachments: # 1 Text of Proposed Order)(Mykytiuk, Jay) [1:21-mj-00344-RMM] (Entered: 01/13/2022) |
| 01/18/2022 | 31 | ORDER Granting 30 Consent MOTION to Continue Preliminary hearing, Consent MOTION to Exclude Time Under the Speedy Trial Act by CHARLES CLARK (1). Time between 1/20/2022 and 3/15/2022 (54 Days) shall be excluded from calculation under the Speedy Trial Act in the interest of justice X-T. Preliminary Hearing continued to 3/15/2022 at 03:00 PM in Telephonic/VTC before Magistrate Judge Zia M. Faruqui. Signed by Magistrate Judge G. Michael Harvey on 1/18/2022. (zpt) [1:21-mj-00344-RMM] (Entered: 01/18/2022) |
| 03/11/2022 | 32 | Consent MOTION to Continue *Preliminary hearing*, Consent MOTION to Exclude *Time Under the Speedy Trial Act* by CHARLES CLARK. (Attachments: # 1 Text of Proposed Order)(Mykytiuk, Jay) [1:21-mj-00344-RMM] (Entered: 03/11/2022) |
| 03/11/2022 | 33 | ORDER Granting 32 Consent MOTION to Continue Preliminary hearing, Consent MOTION to Exclude Time Under the Speedy Trial Act by CHARLES CLARK (1). Preliminary Hearing continued to 5/11/2022 at 02:00 PM in Telephonic/VTC before Magistrate Judge Robin M. Meriweather. Signed by Magistrate Judge G. Michael Harvey on 3/11/2022. (zpt) [1:21-mj-00344-RMM] (Entered: 03/14/2022) |

A6

| 05/09/2022 | 34 | INFORMATION as to CHARLES CLARK (1) count(s) 1. (zstd) (Entered: 05/10/2022) |
|---|---|---|
| 05/10/2022 | | MINUTE ORDER as to CHARLES CLARK(1): The hearing currently scheduled for 5/11/2022 at 2:00 PM before Magistrate Judge Robin M. Meriweather is hereby VACATED, as the Defendant: has had an initial appearance in this jurisdiction; has had counsel appointed; has been ruled to be detained pretrial; and has been charged by Information. As such, there are no pending matters necessitating action by a Magistrate Judge. The parties are directed to contact the assigned District Judge to schedule a status hearing and arraignment, if one has not yet been set. The parties are instructed to address any requests to toll the Speedy Trial Act to the assigned District Judge. Signed by Magistrate Judge Robin M. Meriweather on 5/10/2022. (bb) (Entered: 05/10/2022) |
| 05/10/2022 | | Terminate Deadlines and Hearings as to CHARLES CLARK: Preliminary Hearing set for 5/11/2022 at 02:00 PM by Telephonic/VTC before Magistrate Judge Robin M. Meriweather is VACATED. (bb) (Entered: 05/10/2022) |
| 05/17/2022 | | NOTICE OF HEARING as to CHARLES CLARK: Status Conference set for 5/23/2022 at 11:00 AM in Telephonic/VTC before Judge Carl J. Nichols. (zcal) (Entered: 05/17/2022) |
| 05/23/2022 | | MINUTE ORDER as to CHARLES CLARK: Status Conference RESET for 5/25/2022 at 10:00 AM in Telephonic/VTC before Judge Carl J. Nichols. So Ordered by Judge Carl J. Nichols on 5/23/2022. (zcal) (Entered: 05/23/2022) |
| 05/25/2022 | | Minute Entry for proceedings held before Judge Carl J. Nichols: Telephone Status Conference as to CHARLES CLARK held on 5/25/2022. Speedy Trial as to CHARLES CLARK is Excluded from 5/25/2022 to 7/29/2022, in the Interest of Justice, XT. Status Conference set for 7/29/2022 at 02:00 PM in Telephonic/VTC before Judge Carl J. Nichols. Bond Status of Defendant: Defendant remains Committed; Court Reporter: Lorraine Herman; Defense Attorney: Jay Mykytiuk; US Attorney: Angela Buckner. (zcal) (Entered: 05/25/2022) |
| 06/06/2022 | | Set/Reset Hearings as to CHARLES CLARK: Status Conference RESET for 7/29/2022 at 12:30 PM in Telephonic/VTC before Judge Carl J. Nichols. Note time change. (zcal) (Entered: 06/06/2022) |
| 07/29/2022 | | Minute Entry for proceedings held before Judge Carl J. Nichols: Telephone Status Conference as to CHARLES CLARK held on 7/29/2022. Speedy Trial as to CHARLES CLARK is Excluded from 7/29/2022 to 10/6/2022, in the Interest of Justice, XT. Status Conference set for 10/6/2022 at 12:30 PM in Telephonic/VTC before Judge Carl J. Nichols. Bond Status of Defendant: Defendant remains Committed; Court Reporter: Lorraine Herman; Defense Attorney: Jay Mykytiuk; US Attorney: Janani Iyengar. (zcal) (Entered: 07/29/2022) |
| 09/14/2022 | 36 | NOTICE OF ATTORNEY APPEARANCE Jocelyn Patricia Bond appearing for USA. (Bond, Jocelyn) (Entered: 09/14/2022) |
| 10/04/2022 | 37 | Consent MOTION to Continue *Status hearing*, Consent MOTION to Exclude *Time Under the Speedy Trial Act* by CHARLES CLARK. (Attachments: # 1 Text of Proposed Order) (Mykytiuk, Jay) (Entered: 10/04/2022) |
| 10/04/2022 | | MINUTE ORDER as to CHARLES CLARK. Upon review of Defendant's 37 Consent Motion to Continue Status Hearing and Exclude Time Under the Speedy Trial Act, it is ORDERED that the Motion is GRANTED. The status hearing scheduled for October 6, 2022 is VACATED. It is further ORDERED that the Parties shall appear for an in-person plea hearing on October 11, 2022 at 10:00 AM in Courtroom 19. On or before October 6, 2022, the Parties shall email the completed (1) Plea Agreement, (2) Waiver of Indictment, (3) Statement of Offense, and (4) Waiver of Trial by Jury forms to the Courtroom Deputy, courtney_lesley@dcd.uscourts.gov. It is further ORDERED that the time from October 6, |

A7

| | | |
|---|---|---|
| | | 2022 to October 11, 2022 shall be excluded from the time within which the trial must begin under the Speedy Trial Act, as the exclusion would serve the ends of justice and outweighs the interest of the public and Defendant CHARLES CLARK in a speedy trial. Signed by Judge Carl J. Nichols on October 4, 2022. (lccjn2) (Entered: 10/04/2022) |
| 10/11/2022 | | Minute Entry for proceedings held before Judge Carl J. Nichols: Arraignment / Plea Agreement Hearing as to CHARLES CLARK held on 10/11/2022. GUILTY Plea entered by CHARLES CLARK (1): Count 1. Status Report due by 11/14/2022. Oral Motion to Seal Statement of Offense; Granted by the Court. Presentence Referral and Sentencing deferred pending status of Defendant's Maryland Case. Bond Status of Defendant: Defendant Committed/ Commitment Issued; Court Reporter: Lorraine Herman; Defense Attorney: Jay Mykytiuk; US Attorney: Janani Iyengar and Jocelyn Bond. (zcal) (Entered: 10/11/2022) |
| 10/11/2022 | 38 | WAIVER of Trial by Jury as to CHARLES CLARK. Approved by Judge Carl J. Nichols on 10/11/2022. (zcal) (Entered: 10/11/2022) |
| 10/11/2022 | 39 | WAIVER OF INDICTMENT by CHARLES CLARK. Signed by Judge Carl J. Nichols on 10/11/2022. (zcal) (Entered: 10/11/2022) |
| 10/11/2022 | 41 | PLEA AGREEMENT as to CHARLES CLARK. (zcal) (Entered: 10/11/2022) |
| 11/14/2022 | 42 | Joint STATUS REPORT by USA as to CHARLES CLARK (Iyengar, Janani) (Entered: 11/14/2022) |
| 11/30/2022 | | MINUTE ORDER as to CHARLES CLARK. Upon review of the 42 Joint Status Report, it is ORDERED that the Parties shall file another joint status report on or before January 3, 2023. Signed by Judge Carl J. Nichols on November 30, 2022. (lccjn2) (Entered: 11/30/2022) |
| 12/01/2022 | | Set/Reset Deadlines as to CHARLES CLARK: Joint Status Report due by 1/3/2023. (zkh) (Entered: 12/01/2022) |
| 01/03/2023 | 43 | Joint STATUS REPORT by USA as to CHARLES CLARK (Iyengar, Janani) (Entered: 01/03/2023) |
| 01/11/2023 | 44 | NOTICE *of Discovery* by USA as to CHARLES CLARK (Iyengar, Janani) (Entered: 01/11/2023) |
| 01/12/2023 | | MINUTE ORDER as to CHARLES CLARK. Upon review of the 43 Joint Status Report, it is ORDERED that the Parties shall file another joint status report on or before February 20, 2023. Signed by Judge Carl J. Nichols on January 12, 2023. (lccjn2) (Entered: 01/12/2023) |
| 02/16/2023 | 45 | Joint STATUS REPORT *No. 3* by USA as to CHARLES CLARK (Bond, Jocelyn) (Entered: 02/16/2023) |
| 02/21/2023 | | MINUTE ORDER as to CHARLES CLARK. Upon review of the 45 Joint Status Report, it is ORDERED that the Parties shall file another joint status report on or before April 21, 2023. Signed by Judge Carl J. Nichols on February 21, 2023. (lccjn2) (Entered: 02/21/2023) |
| 04/11/2023 | 46 | Joint STATUS REPORT by USA as to CHARLES CLARK (Bond, Jocelyn) Modified text on 4/12/2023 (zstd). (Entered: 04/11/2023) |
| 04/24/2023 | | MINUTE ORDER as to CHARLES CLARK. Upon review of the Parties' 46 Joint Status Report, it is ORDERED that the Parties shall appear for a sentencing hearing on August 15, 2023 at 12:30 PM in Courtroom 17. The Parties shall coordinate with the Probation Office to prepare a presentence investigation report. It is further ORDERED that the |

A8

| | | |
|---|---|---|
| | | Parties' sentencing memoranda shall be filed on or before August 8, 2023. Signed by Judge Carl J. Nichols on April 24, 2023. (lccjn2) (Entered: 04/24/2023) |
| 07/11/2023 | 47 | DRAFT PRESENTENCE INVESTIGATION REPORT [prepared by USPO Jessica Reichler] as to CHARLES CLARK(Willett, Kelli) (Entered: 07/11/2023) |
| 07/11/2023 | 48 | PROBATION PETITION [prepared by USPO Jessica Reichler] as to CHARLES CLARK (Willett, Kelli) (Entered: 07/11/2023) |
| 07/14/2023 | 49 | Joint MOTION to Vacate *Sentencing Date* by USA as to CHARLES CLARK. (Attachments: # 1 Text of Proposed Order)(Bond, Jocelyn) (Entered: 07/14/2023) |
| 07/24/2023 | 51 | ORDER granting 48 Probation Petition as to CHARLES CLARK. Signed by Judge Carl J. Nichols on July 24, 2023. (lccjn2) (Entered: 07/24/2023) |
| 07/24/2023 | | MINUTE ORDER as to CHARLES CLARK. Upon review of the 49 Joint Motion to Vacate Sentencing Date, it is ORDERED that the Motion is GRANTED. The August 15, 2023 sentencing hearing and associated deadlines are VACATED. It is further ORDERED that the parties shall contact the Court to schedule a new sentencing date upon Probation's completion of the evaluation. Signed by Judge Carl J. Nichols on July 24, 2023. (lccjn2) (Entered: 07/24/2023) |
| 12/11/2023 | 53 | Joint MOTION to Schedule Sentencing Date by CHARLES CLARK. (Mykytiuk, Jay) Modified text on 12/11/2023 (zstd). (Entered: 12/11/2023) |
| 12/27/2023 | | MINUTE ORDER as to Charles Clark. The Joint Motion to Schedule Sentencing is GRANTED. The parties shall appear for sentencing in Courtroom 17 at 12:30 PM on April 3, 2024. So ORDERED by Judge Carl J. Nichols on December 27, 2023. (lccjn2) (Entered: 12/27/2023) |
| 03/20/2024 | 55 | FINAL PRESENTENCE INVESTIGATION REPORT [prepared by USPO Jessica Reichler] as to CHARLES CLARK(Willett, Kelli) (Entered: 03/20/2024) |
| 03/20/2024 | 56 | RECOMMENDATION of FINAL PRESENTENCE INVESTIGATION REPORT [prepared by USPO Jessica Reichler] as to CHARLES CLARK(Willett, Kelli) (Entered: 03/20/2024) |
| 03/27/2024 | 57 | SENTENCING MEMORANDUM by USA as to CHARLES CLARK (Attachments: # 1 Exhibit JSIN Information)(Bond, Jocelyn) (Entered: 03/27/2024) |
| 03/27/2024 | 59 | SENTENCING MEMORANDUM by CHARLES CLARK (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Mykytiuk, Jay) (Entered: 03/27/2024) |
| 04/02/2024 | | MINUTE ORDER as to CHARLES CLARK. At tomorrow's sentencing hearing, the parties should be prepared to state their views on whether USSG 2G1.3(c)'s cross-reference provision applies in this case. So ORDERED by Judge Carl J. Nichols on April 2, 2024. (lccjn2) (Entered: 04/02/2024) |
| 04/03/2024 | | Minute Entry for proceedings held before Judge Carl J. Nichols: Sentencing held on 4/3/2024 as to CHARLES CLARK (1): Count 1. Defendant sentenced to LIFE to run concurrent with Defendant's Maryland case, followed by LIFE term of Supervised Release (with conditions). Defendant further Ordered to pay $39,000 Restitution and $100 Special Assessment. No fine imposed. Bond Status of Defendant: Defendant Committed/ Commitment Issued; Court Reporter: Lorraine Herman; Defense Attorney: Jay Mykytiuk; US Attorney: Jocelyn Bond; Probation Officer: Jessica Reichler. (zcam) (Entered: 04/04/2024) |
| 04/04/2024 | 60 | JUDGMENT as to CHARLES CLARK. Statement of Reasons Not Included. Signed by Judge Carl J. Nichols on 4/4/2024. (zstd) (Entered: 04/08/2024) |

A9

| | | |
|---|---|---|
| 04/04/2024 | 61 | STATEMENT OF REASONS as to CHARLES CLARK re 60 Judgment Access to the PDF Document is restricted per Judicial Conference Policy. Access is limited to Counsel of Record and the Court. Signed by Judge Carl J. Nichols on 4/4/2024. (zstd) (Entered: 04/08/2024) |
| 04/10/2024 | 62 | NOTICE OF APPEAL - Final Judgment by CHARLES CLARK re 60 Judgment, 61 Statement of Reasons. Fee Status: No Fee Paid. Parties have been notified. (Mykytiuk, Jay) (Main Document 62 replaced on 4/10/2024) (zstd). (Entered: 04/10/2024) |
| 04/10/2024 | 63 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The fee remains to be paid and another notice will be transmitted when the fee has been paid in the District Court or motion to proceed In Forma Pauperis has been decided as to CHARLES CLARK re 62 Notice of Appeal - Final Judgment. (zstd) (Entered: 04/10/2024) |
| 04/11/2024 | | USCA Case Number as to CHARLES CLARK 24-3041 for 62 Notice of Appeal - Final Judgment filed by CHARLES CLARK. (zstd) (Entered: 04/11/2024) |
| 05/07/2024 | | Payment for 62 Notice of Appeal - Final Judgment by CHARLES CLARK. ($605; Receipt number ADCDC-10880255) (Lawlor, Michael) (Entered: 05/07/2024) |
| 05/07/2024 | 65 | Transmitted Supplemental Record on Appeal as to CHARLES CLARK re 62 Notice of Appeal - Final Judgment.USCA Case Number 24-3041. (zstd) (Entered: 05/07/2024) |
| 06/08/2024 | 66 | TRANSCRIPT OF PROCEEDINGS in case as to CHARLES CLARK before Magistrate Judge G. Michael Harvey held on 4/2/2021; Page Numbers: 1-17. Date of Issuance:6/8/2024. Court Reporter/Transcriber Kathleen Silva, RPR, CRR, Email kathysilva@verizon.net, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 6/29/2024. Redacted Transcript Deadline set for 7/9/2024. Release of Transcript Restriction set for 9/6/2024.(ztnr) (Entered: 06/10/2024) |
| 06/08/2024 | 67 | TRANSCRIPT OF PROCEEDINGS in case as to CHARLES CLARK before Magistrate Judge G. Michael Harvey held on 4/6/2021; Page Numbers: 1-6. Date of Issuance:6/8/2024. Court Reporter/Transcriber Kathleen Silva, RPR, CRR, Email kathysilva@verizon.net, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this |

A10

transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 6/29/2024. Redacted Transcript Deadline set for 7/9/2024. Release of Transcript Restriction set for 9/6/2024.(ztnr) (Entered: 06/10/2024)

| 06/08/2024 | 68 | TRANSCRIPT OF PROCEEDINGS in case as to CHARLES CLARK before Magistrate Judge G. Michael Harvey held on 4/9/2021; Page Numbers: 1-8. Date of Issuance:6/8/2024. Court Reporter/Transcriber Kathleen Silva, RPR, CRR, Email kathysilva@verizon.net, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 6/29/2024. Redacted Transcript Deadline set for 7/9/2024. Release of Transcript Restriction set for 9/6/2024.(ztnr) (Entered: 06/10/2024) |
| 06/08/2024 | 69 | TRANSCRIPT OF PROCEEDINGS in case as to CHARLES CLARK before Magistrate Judge G. Michael Harvey held on 4/16/2021; Page Numbers: 1-22. Date of Issuance:6/8/2024. Court Reporter/Transcriber Kathleen Silva, RPR, CRR, Email kathysilva@verizon.net, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 6/29/2024. Redacted Transcript Deadline set for 7/9/2024. Release of Transcript Restriction set for 9/6/2024.(ztnr) (Entered: 06/10/2024) |
| 05/28/2025 | 70 | NOTICE OF ATTORNEY APPEARANCE: Michael E. Lawlor appearing for CHARLES CLARK *(* (Lawlor, Michael) (Entered: 05/28/2025) |

**PACER Service Center**

**Transaction Receipt**

06/19/2025 10:04:13

A11

| PACER Login: | Mlawlor9 | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 1:22-cr-00160-CJN |
| Billable Pages: | 11 | Cost: | 1.10 |
| Exempt flag: | Not Exempt | Exempt reason: | Not Exempt |

A12

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| United States of America | ) | |
|---|---|---|
| v. | ) | Case: 1:21-mj-00344 |
| | ) | Assigned to: Judge Meriweather, Robin M. |
| Charles Clark | ) | Assign Date: 3/30/2021 |
| DOB: XXXXXX | ) | Description: COMPLAINT W/ARREST WARRANT |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___June 1, 2017-December 31, 2019___ in the county of _____ in the

_____ in the District of ___Columbia___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|

18 U.S.C. §2423(a) (Travel with Intent to Engage in Criminal Sexual Activity) ,
18 U.S.C. §2422(b) (Coercion and Enticement) ,
22 D.C. Code §§3008(a) & 3020(a)(2) (First Degree Child Sexual Abuse with Aggravating Circumstances) .

On or about the date of March 23, 2021, in the county of _____, in the District of Columbia, the defendant violated:

18 U.S.C. §2252(a)(2) (Distribution of Child Pornography) ,

This criminal complaint is based on these facts:

See attached statement of facts.

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Eric Walsh , Detective
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1
by telephone.

2021.03.30
14:52:01 -04'00'

Date: ___03/30/2021___

_____
*Judge's signature*

City and state: ___Washington, D.C.___

Robin M. Meriweather, U.S. Magistrate Judge
*Printed name and title*

A13

**<u>STATEMENT OF FACTS</u>**

On March 15, 2021, W-1 reported to officers of the Metropolitan Police Department Seventh Police District, that CHARLES CLARK, her former boyfriend, sexually assaulted her sixteen-year-old daughter, hereinafter referred to as MV1. W-1 and CLARK were in a romantic relationship and lived together, along with MV1, for approximately eight years. The relationship ended in December of 2019. According to W-1, MV1 stated that the abuse began when she was 13-years-old and occurred at W-1's residence in Washington, D.C., and at CLARK's residence located in Waldorf, Maryland. W-1 also reported that MV1 provided her with screenshots of messages between CLARK and MV1 that detail the sexual relationship.

On March 17, 2021, your affiant, Youth and Family Services Division Detective Eric Walsh, interviewed W-1. W-1 stated that, on March 11, 2021, MV1 told W-1 that CLARK began sexually abusing MV1 when MV1 was 13-years-old. On March 11, 2021, MV1 provided W-1 with Instagram direct messages between MV1's Instagram account and CLARK's Instagram account. The messages date back to August, 2020. W-1 indicated that the messages show CLARK asking MV1 for nude photographs, sending MV1 nude photographs of himself, and talking about performing sexual acts with MV1.

MV1 told W-1 that the last time she was abused by CLARK was just before W-1 ended her relationship with CLARK in December of 2019.

W-1 provided your affiant with CLARK's Instagram vanity name and MV1's Instagram vanity name. A vanity name on Instagram is the URL address, or web address, which is associated with each unique Instagram username. MV1 and W-1 also provided your affiant with the username and password to access MV1's Instagram account. MV1 and W-1 later gave your affiant permission to assume MV1's Instagram identity and continued messaging CLARK while pretending to be MV1.

On March 23, 2021, your affiant, along with a Charles County Sheriff's Office (CCSO) detective, conducted a recorded interview with MV1, who was born in 2004. MV1 said that CLARK began living with her family in Washington, D.C., approximately eight years ago. CLARK would stay at her house Monday through Friday because it was closer to his workplace. CLARK would go to his home in Waldorf, Maryland on the weekends to check on his house. MV1 recalled the first time that CLARK began to touch her was when they were in the basement of her residence in Washington, D.C. He was touching her inappropriately and attempted to take her pants off but was unsuccessful. MV1 said that approximately one week later, CLARK offered to give her an iPhone, which she had been trying to obtain from W-1, if she had sexual relations with him. MV1 said that this occurred when she was 13-years-old and after she returned home from a summer camp she had attended at Fort Stanton Recreation Center.

MV1 said that the first time CLARK forced her to have sexual intercourse was later that summer. MV1 and CLARK were upstairs in her mother's bedroom and CLARK "kinda forced himself on" her. MV1 stated that CLARK placed his penis in her vagina. MV1 said that it was hurting so she told CLARK that it was enough. Nonetheless, CLARK "kept going until he finished." MV1 stated

A14

that this became a "daily thing" and it continued from that summer until W-1 ended the relationship with CLARK in December of 2019.

MV1 reported that CLARK's sexual abuse of her always occurred in W-1's bedroom. W-1 was never home when CLARK abused her, and CLARK would either text or Instagram direct message her to come to W-1's room. MV1 disclosed that, in addition to vaginal intercourse, MV1 performed oral sex on CLARK, and CLARK performed oral sex on MV1. MV1 also stated that CLARK would ejaculate both on her body and inside of her vagina. When MV1 was approximately 15-years-old, she began using birth control. Once MV1 was using birth control, CLARK predominately ejaculated in her vagina.

MV1 disclosed that CLARK had an accident that left him with limited use of one of his hands/arms. After this occurred, CLARK would more often ask W-1 if MV1 could come with him to his house in Waldorf, Maryland to assist him with cleaning. MV1 knew that the only reason CLARK was asking MV1 to come to his house was to engage in sexual intercourse with MV1. MV1 explained that she would go because CLARK would give her the freedom to do things like talking to, or hanging out with, her friends. However, if MV1 tried to actually go out and do things, CLARK would make comments about how MV1 had not "satisfied him" yet. MV1 also recalled times when CLARK would pick her up from work in Washington, D.C. and take her to his house in Waldorf, Maryland, for the sole purpose of engaging in sexual intercourse with her. MV1 estimated that she engaged in sexual intercourse with CLARK approximately 100 times in Washington, DC, and approximately 70-100 times in Waldorf, Maryland, between the summer of 2017 and December 2019.

MV1 reported that in late 2018 or early 2019, CLARK began making requests for her to send nude photographs of herself. CLARK would make comments such as "show me your butt", "show me your boobs", or "show me your pussy." MV1 stated that she fulfilled these requests and sent nude photographs of her body to CLARK from her residence in Washington, D.C. CLARK would also send unsolicited pictures of his bare penis to MV1.

MV1 was shown a single confirmation photograph depicting CLARK and positively identified him as the individual who had been sexually abusing her.

On March 23, 2021, your affiant conducted a follow-up interview with W-1. W-1 provided your affiant with the text messages sent to her by MV1 when she disclosed. MV1 told W-1 via text that CLARK began having sex with MV1 at the age of 13 and that she only went with him to his house because he would give her the freedom to do what she wanted with her friends. MV1 also told W-1 that CLARK would buy her "phones, clothes and other stuff as long as she kept her mouth shut."

Your affiant, assumed the identity of MV1 and began messaging with CLARK on Thursday, March 18, 2021 at 12:50 PM using Instagram direct messaging. During the course of messaging with CLARK, he stated that he and MV1 had been together for 5 years and that she "gave [him] the most precious thing a woman can give a man." When asked what that is, CLARK responded that MV1 gave him her "virginity." When asked if he recalled when the date was that they first had sex, he stated he did not recall the first time but that they were "still together after 5 years." When asked if he thinks it was 2016 or 2017, CLARK responded that he just knew it was in the

2

A15

summer. Your affiant responded that it is not 5 years yet, and that it would not be until the summertime. CLARK responded, "13-17 is five years its warm in April." The 13-17 range indicates the ages of MV1 during the time CLARK was having sex with her. Your affiant asked CLARK if he was happy that he was her first at 13, and CLARK responded, "Hell yeah I cherish that shit to my heart." Later in the conversation, CLARK sent a selfie picture of himself, which showed his face, and said that he posted it on his Facebook page and "women tripping."

On March 23, 2021, CLARK indicated, through messaging, that he still has "all three" of the pieces of lingerie that he bought MV1 and he said that he was "still trying to find a picture of [her] with the blue one." MV1 had previously indicated to your affiant that CLARK took a picture of her in the blue piece of lingerie. CLARK also stated that he still has all of the photographs that MV1 had sent him in the past but some are on a different phone.

When asked which pictures he liked the best that MV1 had sent him, CLARK sent back a picture that only showed MV1's face. CLARK sent a photograph of his penis and said, "If this don't help you masturbate nothing will." CLARK then sent another photograph that he said was one he liked that MV1 had previously sent him. This photograph depicted an unclothed vagina. MV1's face is not visible in the picture, however the skin tone of the individual in the photograph is consistent with MV1's skin tone.

On March 26, 2021, CLARK was arrested in Washington, DC, pursuant to a Charles County, Maryland arrest warrant.

CLARK's sexual abuse of MVI began when MV1 was 13 years old and CLARK was 61-years-old, and continued through the time MV1 was 15 years old.

A16

## CONCLUSION

Based on the above information, there is probable cause to believe that CHARLES CLARK committed the following offenses: Travel with Intent to Engage in Criminal Sexual Activity, in violation of title 18 U.S.C. 2423(a), on or about and between June 1, 2017 and December 31, 2019; Coercion and Enticement, in violation of 18 U.S.C. 2422(b), on or about and between June 1, 2017 and December 31, 2019; Distribution of Child Pornography, in violation of 18 U.S.C. 2522(a)(2), on or about March 23, 2021; and First Degree Child Sexual Abuse with Aggravating Circumstances, in violation of D.C. Code Section 22-3008(a), 3020(a)(2), on or about and between June 1, 2017 and December 31, 2019.

_____
ERIC WALSH
Detective, Metropolitan Police Department

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 30th day of March 2021.

2021.03.30
15:06:25 -04'00'

_____
ROBIN M. MERIWEATHER
U.S. Magistrate Judge

4

A17

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.:** |
| | : | |
| **v.** | : | **MAGISTRATE NO.: 21-MJ-344** |
| | : | |
| **CHARLES CLARK,** | : | |
| | : | **VIOLATION:** |
| | : | **18 U.S.C. § 2422(b)** |
| **Defendant.** | : | **(Enticement of a Minor)** |

**I N F O R M A T I O N**

The United States Attorney charges that:

**COUNT ONE**

Between on or about June 1, 2017 and on or about December 31, 2019, within the District of Columbia and elsewhere, **CHARLES CLARK** did knowingly use any facility of interstate and foreign commerce (to wit: the Internet and cellular telephone) to persuade, induce, entice, and coerce a person who had not attained the age of 18 years (to wit: Minor Victim 1) to engage in any sexual activity for which any person can be charged with a criminal offense, including, but not limited to, Attempted Production of Child Pornography, in violation of Title 18 United States Code Section 2251(a), and First Degree Child Sexual Abuse, in violation of Title 22 District of Columbia Code Section 3008, and attempted to do so.

(**Enticement of a Minor**, in violation of Title 18, United States Code, Section 2422(b))

A18

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    _____

Angela N. Buckner
D.C. Bar No. 1022880
Janani Iyengar
N.Y. Bar No. 5225990
Assistant United States Attorneys
601 D Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-2656 (Buckner)
Phone: (202) 252-7760 (Iyengar)
Angela.Buckner@usdoj.gov
Janani.Iyengar@usdoj.gov

2

A19

CO 526 Rev. 5/2018

# UNITED STATES DISTRICT AND BANKRUPTCY COURTS
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )
)
vs. ) Criminal Case No.: 22-CR-160
)
CHARLES CLARK )
)
)
)

## WAIVER OF TRIAL BY JURY

With the consent of the United States Attorney and the approval of the Court, the defendant

waives his right to trial by jury.

_____
Defendant

_____
Counsel for Defendant

I consent:

_____
Assistant United States attorney

Approved:

_____
Carl J. Nichols

United States District Judge

Date: 10/11/22

A20

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
## for the
### District of Columbia

United States of America    )
          v.             )    Case No.   CR 22-160 (CJN)
Charles Clark        )
                        )
_____
         *Defendant*       )

## WAIVER OF AN INDICTMENT

       I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

       After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _S. 9-22_

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Jay P. Mykytiuk
*Printed name of defendant's attorney*

_____
*Judge's signature*

Carl J. Nichols   U.S. District Judge
*Judge's printed name and title*

A21



U.S. Department of Justice

Matthew M. Graves
United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

April 5, 2022

Jay Mykytiuk, Esq.

Re:   United States v. Charles Clark
      Criminal Case No.  CR 22-160  (CJN)

Dear Mr. Mykytiuk:

This letter sets forth the full and complete plea offer to your client, Charles Clark (hereinafter referred to as "your client" or "defendant"), from the Office of the United States Attorney for the District of Columbia and the Office of the State's Attorney in Charles County, Maryland (hereinafter referred to as "the Government" or "these Offices"). This plea offer expires on May 30, 2022 If your client accepts the terms and conditions of this offer, please have your client execute this document in the space provided below. Upon receipt of the executed document, this letter will become the Plea Agreement (hereinafter "this Agreement"). The terms of the offer are as follows:

1.     **Charges and Statutory Penalties**

Your client agrees to plead guilty to the charges detailed below and your client understands that, by doing so, he will resolve all of the charges pending in the U.S. District Court for the District of Columbia and the Circuit Court for Charles County, Maryland.

Your client will plead guilty to a criminal Information in the U.S. District Court for the District of Columbia, a copy of which has been filed, charging your client with Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b).

Finally, your client also agrees to plead guilty to a criminal Indictment, a copy of which will be filed in the Circuit Court for Charles County, Maryland, charging your client with Sexual Abuse of a Minor, in violation of CR §3-602 and Continuing Course of Conduct with a Child, in violation of §3-315 of the Annotated Code of Maryland.

Your client will enter a guilty plea to the Charles County Sexual Abuse of a Minor and Continuing Course of Conduct with a Child charges via a remote hearing in the Charles County Circuit Court following the entry of your client's guilty plea in the U.S. District Court for the

Page 1 of 14

A22

District of Columbia and prior to the sentencing in the District of Columbia. The proposed plea agreement, with the Charles County State's Attorney Office, is attached hereto as Attachment A and incorporated herein by reference.

Your client understands that a violation of 18 U.S.C. § 2422(b) carries a mandatory minimum sentence of 10 years of imprisonment and a maximum sentence of life imprisonment; a fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. § 3571; a term of supervised release of at least 5 years but not more than life, pursuant to 18 U.S.C. § 3583; mandatory restitution under 18 U.S.C. § 3663A; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

Your client understands that a violation of CR §3-315 of the Annotated Code of Maryland carries a maximum sentence of 30 years of imprisonment. Your client further understands that a violation of CR §3-602 of the Annotated Code of Maryland carries a maximum sentence of 25 years of imprisonment.

In addition, your client agrees to pay a special assessment of $100 per felony conviction to the Clerk of the U.S. District Court for the District of Columbia. Your client also understands that, pursuant to 18 U.S.C. § 3572 and § 5E1.2 of the United States Sentencing Commission, *Guidelines Manual* (2018) (hereinafter "Sentencing Guidelines," "Guidelines," or "U.S.S.G."), the Court may also impose a fine that is sufficient to pay the federal government the costs of any imprisonment, term of supervised release, and period of probation. Further, your client understands that, if your client has two or more convictions for a crime of violence or felony drug offense, your client may be subject to the substantially higher penalties provided for in the career-offender statutes and provisions of the Sentencing Guidelines.

Your client understands that, pursuant to 18 U.S.C. § 3014(a), your client must pay an additional special assessment in the amount of $5,000, unless your client is found by the Court to be indigent at the time of sentencing.

This agreement encompasses the promises made by these Offices and incorporates by reference the promises made to you by the State's Attorney for Charles County, Maryland, as outlined in Attachment A.

## 2.   **Factual Stipulations**

Your client agrees that the attached "Statement of Offense" fairly and accurately describes your client's actions and involvement in the offense(s) to which your client is pleading guilty. Please have your client sign and return the Statement of Offense as a written proffer of evidence, along with this Agreement.

A23

3.   **Additional Charges**

In consideration of your client's guilty plea to the above offense(s), your client will not be further prosecuted criminally by these Offices for the conduct set forth in the attached Statement of Offense.

After the entry of your client's plea of guilty to the offense(s) identified in Paragraph 1 above, your client will not be charged with any non-violent criminal offense in violation of Federal or District of Columbia law which was committed within the District of Columbia or Maryland by your client prior to the execution of this Agreement and about which these Offices were made aware by your client prior to the execution of this Agreement. However, the United States Attorney's Offices for the District of Columbia expressly reserves their rights to prosecute your client for any crime of violence, as defined in 18 U.S.C. § 16 and/or 22 D.C. Code § 4501, if in fact your client committed or commits such a crime of violence prior to or after the execution of this Agreement.

4.   **Sentencing Guidelines Analysis**

Your client understands that the sentence in this case would be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a), including a consideration of the Sentencing Guidelines and policies promulgated by the Sentencing Commission. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and to assist the Court in determining the appropriate sentence, the parties agree to the following:

### A.   Estimated Offense Level Under the Guidelines (Count One of the District of Columbia Information)

Sexual Exploitation of a Minor:

| U.S.S.G. § 2G1.3(a)(3) | Base Offense Level | 28 |
|---|---|---|

Specific Offense Characteristics

| U.S.S.G. § 2G1.3(b)(1) | Parent or legal guardian | +2 |
|---|---|---|
| U.S.S.G. § 2G1.3(b)(2)(B) | Unduly influenced minor to engage in sexual conduct | +2 |
| U.S.S.G. § 2G1.3(b)(3)(A) | Use of a computer | +2 |
| U.S.S.G. § 2G1.3(b)(4)(A) | Commission of a sex act | +2 |

Adjustments:

| U.S.S.G. § 4B1.5 | Repeat and Dangerous Offender | +5 |
|---|---|---|

A24

Total          38

Acceptance of Responsibility

The Government agrees that a 2-level reduction will be appropriate, pursuant to U.S.S.G. § 3E1.1, provided that your client clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through your client's allocution, adherence to every provision of this Agreement, and conduct between entry of the plea and imposition of sentence. Furthermore, assuming your client has accepted responsibility as described in the previous sentence, the Government agrees that an additional 1-level reduction will be appropriate, pursuant to U.S.S.G. § 3E1.1(b), because your client has assisted authorities by providing timely notice of your client's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, and/or imposition of an adjustment for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, regardless of any agreement set forth above, should your client move to withdraw your client's guilty plea after it is entered, or should it be determined by the Government that your client has either (a) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice, or (b) engaged in additional criminal conduct after signing this Agreement.

In accordance with the above, the Estimated Offense Level will be at least 38.

## B.     Estimated Criminal History Category

Based upon the information now available to these Offices, your client has no criminal convictions.

Accordingly, your client is estimated to have 0 criminal history points and your client's Criminal History Category is estimated to be I (the "Estimated Criminal History Category"). Your client acknowledges that after the pre-sentence investigation by the United States Probation Office, a different conclusion regarding your client's criminal convictions and/or criminal history points may be reached and your client's criminal history points may increase or decrease.

## C.     Estimated Guidelines Range

Based upon the Estimated Offense Level and the Estimated Criminal History Category set forth above, your client's estimated Sentencing Guidelines range is 235-293 months (the "Estimated Guidelines Range"). In addition, the parties agree that, pursuant to U.S.S.G. § 5E1.2, should the Court impose a fine, at Guidelines level 38 the estimated applicable fine range is $50,000 to $500,000. Your client reserves the right to ask the Court not to impose any applicable fine.

A25

The parties agree that, solely for the purposes of calculating the applicable range under the Sentencing Guidelines, neither a downward nor upward departure from the Estimated Guidelines Range set forth above is warranted.  Except as provided for in the "Reservation of Allocution" section below, the parties also agree that neither party will seek any offense-level calculation different from the Estimated Offense Level calculated above in subsection A. However, the parties are free to argue for a Criminal History Category different from that estimated above in subsection B.

Your client understands and acknowledges that the Estimated Guidelines Range calculated above is not binding on the Probation Office or the Court.  Should the Court or Probation Office determine that a guidelines range different from the Estimated Guidelines Range is applicable, that will not be a basis for withdrawal or recission of this Agreement by either party.

Your client understands and acknowledges that the terms of this section apply only to conduct that occurred before the execution of this Agreement.  Should your client commit any conduct after the execution of this Agreement that would form the basis for an increase in your client's base offense level or justify an upward departure (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the probation officer, or the Court), the Government is free under this Agreement to seek an increase in the base offense level based on that post-agreement conduct.

### 5.    Agreement as to Sentencing Allocution

The parties further agree that a sentence within the Estimated Guidelines Range would constitute a reasonable sentence in light of all the factors set forth in 18 U.S.C. § 3553(a), should such a sentence be subject to appellate review notwithstanding the appeal waiver provided below. Nevertheless, your client reserves the right to seek a sentence below the Estimated Guidelines Range based upon factors to be considered in imposing a sentence pursuant to 18 U.S.C. § 3553(a). The government agrees to recommend that any sentence imposed by the court in Charles County, Maryland, following the defendant's guilty plea in this matter should run concurrent to any sentence imposed by the United States District Court for the District of Columbia in connection with this matter.

### 6.    Court Not Bound by this Agreement or the Sentencing Guidelines

Your client understands that the sentence in this case will be imposed in accordance with 18 U.S.C. § 3553(a), upon consideration of the Sentencing Guidelines.  Your client further understands that the sentence to be imposed is a matter solely within the discretion of the Court. Your client acknowledges that the Court is not obligated to follow any recommendation of the Government at the time of sentencing.  Your client understands that neither the Government's recommendation nor the Sentencing Guidelines are binding on the Court.

A26

Your client acknowledges that your client's entry of a guilty plea to the charged offense(s) authorizes the Court to impose any sentence, up to and including the statutory maximum sentence, which may be greater than the applicable Guidelines range. The Government cannot, and does not, make any promise or representation as to what sentence your client will receive. Moreover, it is understood that your client will have no right to withdraw your client's plea of guilty should the Court impose a sentence that is outside the Guidelines range or if the Court does not follow the Government's sentencing recommendation. The Government and your client will be bound by this Agreement, regardless of the sentence imposed by the Court. Any effort by your client to withdraw the guilty plea because of the length of the sentence shall constitute a breach of this Agreement.

## 7.    **Reservation of Allocution**

The Government and your client reserve the right to describe fully, both orally and in writing, to the sentencing judge, the nature and seriousness of your client's misconduct, including any misconduct not described in the charges to which your client is pleading guilty, to inform the presentence report writer and the Court of any relevant facts, to dispute any factual inaccuracies in the presentence report, and to contest any matters not provided for in this Agreement. The parties also reserve the right to address the correctness of any Sentencing Guidelines calculations determined by the presentence report writer or the court, even if those calculations differ from the Estimated Guidelines Range calculated herein. In the event that the Court or the presentence report writer considers any Sentencing Guidelines adjustments, departures, or calculations different from those agreed to and/or estimated in this Agreement, or contemplates a sentence outside the Guidelines range based upon the general sentencing factors listed in 18 U.S.C. § 3553(a), the parties reserve the right to answer any related inquiries from the Court or the presentence report writer and to allocute for a sentence within the Guidelines range, as ultimately determined by the Court, even if the Guidelines range ultimately determined by the Court is different from the Estimated Guidelines Range calculated herein.

In addition, if in this Agreement the parties have agreed to recommend or refrain from recommending to the Court a particular resolution of any sentencing issue, the parties reserve the right to full allocution in any post-sentence litigation. The parties retain the full right of allocution in connection with any post-sentence motion which may be filed in this matter and/or any proceeding(s) before the Bureau of Prisons. In addition, your client acknowledges that the Government is not obligated and does not intend to file any post-sentence downward departure motion in this case pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure.

## 8.    **Conditions of Release**

Your client agrees not to object to the Government's recommendation to the Court at the time of the plea of guilty in this case that your client be detained without bond pending your client's sentencing in this case, pursuant to 18 U.S.C. § 3143.

A27

### 9.   Waivers

#### A.   Venue

Your client waives any challenge to venue in the District of Columbia.

#### B.   Statute of Limitations

Your client agrees that, should the conviction following your client's plea of guilty pursuant to this Agreement be vacated for any reason, any prosecution, based on the conduct set forth in the attached Statement of Offense, that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement (including any counts that the Government has agreed not to prosecute or to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against your client, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution of conduct set forth in the attached Statement of Offense that is not time-barred on the date that this Agreement is signed.

#### C.   Trial Rights

Your client understands that by pleading guilty in this case your client agrees to waive certain rights afforded by the Constitution of the United States and/or by statute or rule. Your client agrees to forego the right to any further discovery or disclosures of information not already provided at the time of the entry of your client's guilty plea. Your client also agrees to waive, among other rights, the right to be indicted by a Grand Jury, the right to plead not guilty, and the right to a jury trial. If there were a jury trial, your client would have the right to be represented by counsel, to confront and cross-examine witnesses against your client, to challenge the admissibility of evidence offered against your client, to compel witnesses to appear for the purpose of testifying and presenting other evidence on your client's behalf, and to choose whether to testify. If there were a jury trial and your client chose not to testify at that trial, your client would have the right to have the jury instructed that your client's failure to testify could not be held against your client. Your client would further have the right to have the jury instructed that your client is presumed innocent until proven guilty, and that the burden would be on the United States to prove your client's guilt beyond a reasonable doubt. If your client were found guilty after a trial, your client would have the right to appeal your client's conviction. Your client understands that the Fifth Amendment to the Constitution of the United States protects your client from the use of self-incriminating statements in a criminal prosecution. By entering a plea of guilty, your client knowingly and voluntarily waives or gives up your client's right against self-incrimination.

Your client acknowledges discussing with you Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. Your client knowingly and voluntarily waives the rights that arise under these rules in the event your client withdraws your client's guilty plea or

Page 7 of 14

A28

withdraws from this Agreement after signing it, except where the Court rejects this Agreement under Rule 11(c)(5).

Your client also agrees to waive all constitutional and statutory rights to a speedy sentence and agrees that the plea of guilty pursuant to this Agreement will be entered at a time decided upon by the parties with the concurrence of the Court. Your client understands that the date for sentencing will be set by the Court.

### D.   Appeal Rights

Your client agrees to waive, insofar as such waiver is permitted by law, the right to appeal the conviction in this case on any basis, including but not limited to claim(s) that (1) the statute(s) to which your client is pleading guilty is unconstitutional, and (2) the admitted conduct does not fall within the scope of the statute(s). Your client understands that federal law, specifically 18 U.S.C. § 3742, affords defendants the right to appeal their sentences in certain circumstances. Your client also agrees to waive the right to appeal the sentence in this case, including but not limited to any term of imprisonment, fine, forfeiture, award of restitution, term or condition of supervised release, authority of the Court to set conditions of release, and the manner in which the sentence was determined, except to the extent the Court sentences your client above the statutory maximum or guidelines range determined by the Court. In agreeing to this waiver, your client is aware that your client's sentence has yet to be determined by the Court. Realizing the uncertainty in estimating what sentence the Court ultimately will impose, your client knowingly and willingly waives your client's right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the Government in this Agreement. Notwithstanding the above agreement to waive the right to appeal the conviction and sentence, your client retains the right to appeal on the basis of ineffective assistance of counsel, but not to raise on appeal other issues regarding the conviction or sentence.

### E.   Collateral Attack

Your client also waives any right to challenge the conviction entered or sentence imposed under this Agreement or otherwise attempt to modify or change the sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 or Federal Rule of Civil Procedure 60(b), except to the extent such a motion is based on newly discovered evidence or on a claim that your client received ineffective assistance of counsel. Your client reserves the right to file a motion brought under 18 U.S.C. § 3582(c)(2).

### 10.   Use of Self-Incriminating Information

The Government and your client agree, in accordance with U.S.S.G. § 1B1.8, that the Government will be free to use against your client for any purpose at the sentencing in this case or in any related criminal or civil proceedings, any self-incriminating information provided by your client pursuant to this Agreement or during the course of debriefings conducted in anticipation of this Agreement, regardless of whether those debriefings were previously covered by an "off the record" agreement by the parties.

Page 8 of 14

A29

## 11.   **Hearings by Video Teleconference and/or Teleconference**

Your client agrees to consent, under the CARES Act, Section 15002(b)(4) and otherwise, to hold any proceedings in this matter – specifically including but not limited to presentment, initial appearance, plea hearing, and sentencing – by video teleconference and/or by teleconference and to waive any rights to demand an in-person/in-Court hearing. Your client further agrees to not challenge or contest any findings by the Court that it may properly proceed by video teleconferencing and/or telephone conferencing in this case because, due to the COVID-19 pandemic, an in-person/in-Court hearing cannot be conducted in person without seriously jeopardizing public health and safety and that further there are specific reasons in this case that any such hearing, including a plea or sentencing hearing, cannot be further delayed without serious harm to the interests of justice.

## 12.   **Restitution**

Your client understands that the Court has an obligation to determine whether, and in what amount, mandatory restitution applies in this case under 18 U.S.C. § 3663A and 18 U.S.C. § 2429.

Your client agrees to pay restitution to all victims associated with your client's conduct charged in all counts of the filed Information. Your client agrees to pay restitution to all victims associated with your client's Coercion and Enticement of a Minor, that occurred between June 1, 2017 and March 30, 2021. This includes all minors engaging in sexually explicit conduct depicted in any images or videos produced, distributed, transported, received or possessed by your client on his digital devices or any online accounts. Your client understands that these victims still maintain a right to request a larger amount of restitution from the Court, and that the agreed upon payment to each victim is the minimum amount due.

Payments of restitution shall be made to the Clerk of the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, your client agrees to disclose fully all assets in which your client has any interest or over which your client exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. Your client agrees to submit a completed financial statement on a standard financial disclosure form which has been provided to you with this Agreement to the Financial Litigation Unit of the United States Attorney's Office, as it directs. If you do not receive the disclosure form, your client agrees to request one from usadc.ccfflu@usa.doj.gov. Your client will complete and electronically provide the standard financial disclosure form to usadc.ecfflu@usa.doj.gov 30 days prior to your client's sentencing. Your client agrees to be contacted by the Financial Litigation Unit of the United States Attorney's Office, through defense counsel, to complete a financial statement. Upon review, if there are any follow-up questions, your client agrees to cooperate with the Financial Litigation Unit. Your client promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement could be prosecuted as a separate crime punishable under 18 U.S.C. § 1001, which carries an additional five years' incarceration and a fine.

Page 9 of 14

A30

Your client expressly authorizes the United States Attorney's Office to obtain a credit report on your client in order to evaluate your client's ability to satisfy any financial obligations imposed by the Court or agreed to herein.

Your client understands and agrees that the restitution or fines imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, your client understands that the schedule of payments is merely a minimum schedule of payments and will not be the only method, nor a limitation on the methods, available to the United States to enforce the criminal judgment. If your client is sentenced to a term of imprisonment by the Court, your client agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically imposes a schedule of payments.

Your client certifies that your client has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by this Agreement and/or that may be imposed by the Court. In addition, your client promises to make no such transfers in the future until your client has fulfilled the financial obligations under this Agreement.

## 13.   Forfeiture

The United States and your client hereby agree that the electronic devices seized from your client and your client's residence on March 26, 2021 and currently in the custody and/or control of the FBI, was properly seized and was involved in or used in violation of Federal law by your client.

Your client agrees that this property is subject to seizure and forfeiture by the United States, and that no defense exists to the seizure and forfeiture of his interest in this property by the United States. See 18 U.S.C. § 2428. As such, your client hereby relinquishes all claim, title, and interest he has in the above-listed property to the United States and consents to the civil, administrative, or judicial forfeiture of the property. Your client agrees that he will not file a claim to this property and withdraws any claim for the property that he may have filed. Your client knowingly and voluntarily waives any right to notice provided for in 18 U.S.C. § 983 and Rule 32.2 of the Federal Rules of Criminal Procedure. Your client also hereby consents to the property's destruction by, and/or abandonment to, the law enforcement agency. Your client certifies that he is the sole owner of the property and that no one else has an ownership interest in this property.

Your client agrees to waive all constitutional and statutory challenges in any manner (including, but not limited to, direct appeal) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

A31

### 14.    **Sex Offender Registration**

Your client acknowledges and agrees that, pursuant to the Sex Offender Registration and Notification Act, 18 U.S.C § 2250, 34 U.S.C. §§ 20911(3), and 20915(a)(2), your client is required to register as a sex offender for a minimum period of 25 years, and to keep the registration current in jurisdictions where your client resides, where your client is employed, and where your client is a student. Your client understands that the requirements for registration include providing your client's name, residence address, and the names and addresses of any places where your client will be employed or a student, among other information. Your client understands that should your client knowingly fail to comply with your client's obligations under the Sex Offender Registration and Notification Act, pursuant to 18 U.S.C. § 2250, your client could be prosecuted for the offense of failure to register as a sex offender and subject to a term of up to ten years' imprisonment, a fine, or both. Your client further understands that compliance with the requirements of the Sex Offender Registration and Notification Act is a specific condition of supervised release pursuant to 18 U.S.C. § 3583 and that failure to comply with your client's obligations under the Sex Offender Registration and Notification Act could subject your client to revocation of supervised release in addition to prosecution for the felony offense of failure to register.

Your client also acknowledges and agrees that, pursuant to Maryland Criminal Procedure Title 11, Subtitle 7, your client is required to register as a Tier III Sexual Offender for the remainder of his life. Your client understands that he must comply with all requirements listed in Maryland Criminal Procedure Title 11, Subtitle 7 for Tier III Sexual Offenders. Your client also acknowledges that if he knowingly fails to register as a sex offender, he can be criminally prosecuted pursuant to Maryland Criminal Procedure §11-721.

### 15.    **DNA Testing**

Your client acknowledges and has been made aware that there may be physical evidence which was seized from the victim, crime scene or from your client or from some other source that can be tied to your client and that could contain probative biological material. Your client understands and agrees that in order to plead guilty in this case, he must waive and give up DNA testing in this case. Your client further understands that should your client waive and give up DNA testing now, it is not expected that your client will have another opportunity to have the DNA tested in this case.

### 16.    **Breach of Agreement**

Your client understands and agrees that, if after entering this Agreement, your client fails specifically to perform or to fulfill completely each and every one of your client's obligations under this Agreement, or engages in any criminal activity prior to sentencing, your client will have breached this Agreement. In the event of such a breach: (a) the Government will be free from its obligations under this Agreement; (b) your client will not have the right to withdraw the guilty plea; (c) your client will be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; and (d) the Government will be free to use against

A32

your client, directly and indirectly, in any criminal or civil proceeding, all statements made by your client and any of the information or materials provided by your client, including such statements, information and materials provided pursuant to this Agreement or during the course of any debriefings conducted in anticipation of, or after entry of, this Agreement, whether or not the debriefings were previously characterized as "off-the-record" debriefings, and including your client's statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

Your client understands and agrees that the Government shall be required to prove a breach of this Agreement only by a preponderance of the evidence, except where such breach is based on a violation of federal, state, or local criminal law, which the Government need prove only by probable cause in order to establish a breach of this Agreement.

Nothing in this Agreement shall be construed to permit your client to commit perjury, to make false statements or declarations, to obstruct justice, or to protect your client from prosecution for any crimes not included within this Agreement or committed by your client after the execution of this Agreement. Your client understands and agrees that the Government reserves the right to prosecute your client for any such offenses. Your client further understands that any perjury, false statements or declarations, or obstruction of justice relating to your client's obligations under this Agreement shall constitute a breach of this Agreement. In the event of such a breach, your client will not be allowed to withdraw your client's guilty plea.

### 17.   **Complete Agreement**

No agreements, promises, understandings, or representations have been made by the parties or their counsel other than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by your client, defense counsel, and an Assistant United States Attorney for the District of Columbia.

Your client further understands that this Agreement is binding only upon the Criminal and Superior Court Divisions of the United States Attorney's Office for the District of Columbia. This Agreement does not bind the Civil Division of these Offices or any other United States Attorney's Office not specifically named above, nor does it bind any other state, local, or federal prosecutor, other than the State's Attorney Office in Charles County. It also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against your client.

If the foregoing terms and conditions are satisfactory, your client may so indicate by signing this Agreement and the Statement of Offense, and returning both to me no later than May 30, 2022.

Sincerely yours,

Page **12** of **14**

A33

Matthew M. Graves
United States Attorney
District of Columbia

By:    Janani Iyengar

Janani J. Iyengar
Assistant United States Attorney

A34

## DEFENDANT'S ACCEPTANCE

I have read every page of this Agreement and have discussed it with my attorney, Jay Mykytiuk. I fully understand this Agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Agreement fully. I am pleading guilty because I am in fact guilty of the offense(s) identified in this Agreement.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Agreement. I am satisfied with the legal services provided by my attorney in connection with this Agreement and matters related to it.

Date: 4-7-22

Charles Clark
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read every page of this Agreement, reviewed this Agreement with my client, Charles Clark, and fully discussed the provisions of this Agreement with my client. These pages accurately and completely set forth the entire Agreement. I concur in my client's desire to plead guilty as set forth in this Agreement.

Date: 4/7/22

Jay Mykytiuk
Attorney for Defendant

A35

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

                CR Action
        Plaintiff,          No. 1:22-160

      vs.               Washington, DC
                       October 11, 2022
CHARLES CLARK,

        Defendant.        10:20 a.m.
_____/

TRANSCRIPT OF ARRAIGNMENT AND PLEA
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE

APPEARANCES:

**For the Plaintiff:**      **Janani Iyengar**
                      **Jocelyn Bond**
                      USAO - D.C.
                      600 D Street NW
                      Washington, DC  20530
                      202-445-8340

**For the Defendant:**     **Jay P. Mykytiuk**
                      MONUMENT LEGAL
                      1100 H Street NW, Suite 1010
                      Washington, DC 20005
                      202-657-1522

**Reported By:**          **Lorraine T. Herman, RPR, CRC**
                      Official Court Reporter
                      U.S. District & Bankruptcy Courts
                      333 Constitution Avenue, NW
                      Washington, DC 20001
                      Lorraine_Herman@dcd.uscourts.gov

**\*\*\*** Proceedings recorded by stenotype shorthand.
**\*\*\*** Transcript produced by computer-aided transcription.

A36

**P R O C E E D I N G S**

**DEPUTY CLERK:** Good morning, Your Honor.

This is criminal case year 2022-160, *United States of America versus Charles Clark*.

Counsel, please come forward and introduce yourselves for the record, beginning with the government.

**MS. IYENGAR:** Good morning, Your Honor.

Janani Iyengar for the United States. I am joined by Jocelyn Bond this morning. And I also just wanted to note for the Court that the minor victim and her mother are in the gallery.

**THE COURT:** Thank you for that. Good morning, Counsel.

**MR. MYKYTIUK:** Good morning, Your Honor. Jay Mykytiuk on behalf of Mr. Clark, who is present.

**THE COURT:** Good morning.

So my understanding is that the defendant has entered into a plea agreement that really has two parts. One of which is to plead guilty to one federal charge, which is what we are going to do here today. Assuming that happens, he will then enter a guilty plea to the Maryland charges. Do I have that right?

**MS. IYENGAR:** Yes, Your Honor.

**THE COURT:** Okay. Thank you.

So, Ms. Lesley, could you please swear the

defendant in?

**DEPUTY CLERK:** Yes, Your Honor.

Mr. Clark, please stand and raise your right hand.

Do you solemnly swear that you will well and truly answer all questions propounded to you, so help you God?

**THE DEFENDANT:** Yes, ma'am.

**DEPUTY CLERK:** Thank you. Please be seated.

**THE COURT:** Mr. Clark, the purpose of this hearing is to allow you to enter a plea of guilty to the charges against you. Because this is an important decision, it is vital you understand what rights you will be giving up by entering a guilty plea today.

I will, in a minute, ask you a series of questions to make sure that your plea is knowing and voluntary and with the advice of your counsel.

If you don't understand any of my questions, please tell me. I'll try to explain things more clearly or I will let you consult with your counsel. If you don't ask for clarification, I will assume you understand my questions.

You're under oath and you're obligated to answer all questions truthfully. If you are not truthful and the plea should fall apart for some reason, the government may be able to use some of your statements against you in a later proceeding or separate prosecution for perjury or

making a false statement.

Counsel, this is how I typically -- and I don't see any reason to depart from this -- do the plea. I'll do various questions, to include the Rule 11 colloquy. When we get to the Statement of Offense, obviously we have the document, but I typically ask counsel for the government to briefly summarize for the record what the government would be prepared to prove should this case have gone to trial.

When we get to the plea agreement, I'll ask some questions about the plea but I'll ask at that point, when I turn to defense counsel to note anything in particular from the Plea Agreement that you would like stated for the record. Obviously the plea itself is in the record and stands for itself. The government can add anything, of course, it would like to.

I'll then cover sentencing, in particular the statutory provisions and then the guidelines and how they work and how sentencing will work. And then assuming that everything is in order, we will take the plea. Okay?

So, Mr. Clark, why don't you come up to the podium, please.

And, Mr. Clark, you may remove your mask.

Right in front of that microphone.

You may remove your mask, Mr. Clark, if you would like.

(Mr. Mykytiuk and Mr. Clark approached.)

**THE DEFENDANT:** Yes, sir. Thank you.

**THE COURT:** It makes everything a little bit easier.

**MR. MYKYTIUK:** Your Honor, so Mr. Clark has been charged by information. I do not believe he's been arraigned on the Information, according to the government.

**THE COURT:** Let's do that, then. Thank you, for that.

Ms. Lesley, could you arraign Mr. Clark.

**DEPUTY CLERK:** Yes, Your Honor.

May the record reflect that defendant, Charles Clark, and counsel have received a copy of the Information. Do you wish to waive the formal reading of the one-count information and enter a plea?

**MR. MYKYTIUK:** Yes. We will waive formal reading and enter a plea of guilty to the Information.

**DEPUTY CLERK:** Well --

**THE COURT:** Typically I do a plea first, as to the Information only, for purposes of the arraignment, which I suppose could be guilty, but you could also plead not guilty, and then take the guilty plea.

**MR. MYKYTIUK:** Then we will enter a plea of not guilty at this time.

**THE COURT:** For the arraignment only. Thank you

for that.

MR. MYKYTIUK: Okay.

THE COURT: Thank you for that. Thank you for flagging that we needed to arraign Mr. Clark.

So as to the colloquy, Mr. Clark, what is your full name?

THE DEFENDANT: Charles Derek Clark.

THE COURT: How old are you, Mr. Clark?

THE DEFENDANT: Sixty-five and a half.

THE COURT: Were you born in the United States?

THE DEFENDANT: Yes, sir.

THE COURT: Are you sick or impaired in any way that could prevent you from understanding what is happening here today?

THE DEFENDANT: No, sir.

THE COURT: Counsel, do you have any reason to believe that your client will be unable to understand what we are going to discuss here today?

MR. MYKYTIUK: I do not, Your Honor.

THE COURT: Mr. Clark, have you had enough time to consult with your counsel about this case?

THE DEFENDANT: Yes, sir.

THE COURT: And have you received a copy of the Information against you, which is the written charge made against you in this case, which we just referenced?

A41

THE DEFENDANT: Yes, sir.

THE COURT: Have you had the opportunity to discuss with your counsel the charge against you and whether you should enter a plea in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with the services of your counsel in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Counsel, have you had enough time to review and investigate the law and facts in this matter?

MR. MYKYTIUK: Yes, I have.

THE COURT: Mr. Clark, before I accept your plea, I need to explain the rights you have in this matter and confirm that you understand them. Please listen closely. And, again, please let me know if you do not understand anything or need to speak with your counsel privately.

Mr. Clark, do you understand that for the charge of Coercion and Enticement of a Minor, you are waiving your right to prosecution by indictment and consent that the proceeding may be by information, rather than by indictment?

THE DEFENDANT: Yes, sir.

THE COURT: I'm going to hold up this document entitled Waiver of an Indictment, which I note has been signed by the defendant.

Mr. Clark, is this your signature on this document

waiving the right to prosecution by indictment?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Counsel, is there any reason that Mr. Clark should not waive prosecution by indictment and consent that the proceeding may be by information rather than by indictment?

**MR. MYKYTIUK:** No, Your Honor.

**THE COURT:** I find that the Waiver of Prosecution by Indictment is knowingly and voluntarily made and it is accepted. The signed waiver will be filed.

Ms. Lesley, I'll hand you this one. Ms. Lesley.

**DEPUTY CLERK:** Oh, I'm sorry.

**THE COURT:** Mr. Clark, I'll now discuss your right to a jury trial and an appeal. Do you understand that you have the right to plead not guilty to any offense charged against you?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you understand you have a right to challenge the government's case against you in a jury trial, where 12 citizens of the District of Columbia will sit as a jury and determine whether you are guilty based on evidence presented in this courtroom?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you understand that if you were to go to trial, you would have the right to be represented by

A43

your lawyer at that trial and at every stage of the proceeding?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you understand that if you were to exercise your right to a trial, you would have the right to confront and cross-examine any of the government's witnesses who testify against you?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you understand that if you were to exercise your right to a trial, you would have the right to present your own witnesses and the right to subpoena them to require them to testify in your defense?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you understand that at a trial, you would have the right to testify and present evidence on your behalf, but only if you wanted to. If you did not want to testify or present evidence, you would not have to do so? Do you understand that?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you understand that unless and until I accept your guilty plea, you are presumed innocent under the law and, thus, if you were to choose to go to trial, the government would have the burden of proving you were guilty beyond a reasonable doubt?

**THE DEFENDANT:** Yes, sir.

THE COURT: Do you understand that if you were to choose to go to trial and were convicted, you would have the right to appeal your conviction and to have a lawyer help prepare your appeal; but that by pleading guilty today, you would be giving up many of your rights to appeal your conviction and sentence with some limited exceptions?

THE DEFENDANT: Yes, sir.

THE COURT: I'm just going to briefly go through those, the appeal waiver and the like.

As to your conviction, you are waiving the right to appeal your conviction; that means, for example, you could not later try to appeal your conviction and argue that the statute to which you are pleading guilty is unconstitutional or that your conduct does not fall within the scope of the statute. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You are also waiving the right to appeal your sentence, at least generally. And I'll discuss in a moment the exceptions to that.

You cannot appeal your prison term, fine, forfeiture, award, restitution, term or condition of supervised release, my authority to set the conditions of release or how I determine your sentence, with some exceptions. Do you understand that?

THE DEFENDANT: Yes, sir.

A45

**THE COURT:** So, as to your sentence, you could appeal the sentence, if I were to sentence you above the statutory maximum --

**THE DEFENDANT:** Yes, sir.

**THE COURT:** -- or above the top of the advisory guidelines range. Do you understand that?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** You also have the right to appeal the conviction and sentence on the basis that your counsel was ineffective. But if you were to choose to appeal on that basis, you could not raise other issues to challenge your conviction or sentence. Do you understand that?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you also understand that you will be unable to challenge your conviction or sentence through what is known as a collateral attack, sometimes called habeas corpus or a motion under 28 U.S. Code, Section 2255. Do you understand that?

**THE DEFENDANT:** Yes, I do, sir.

**THE COURT:** The only exceptions to this waiver is if there is newly discovered evidence or you raise a claim of ineffective assistance of counsel. Do you understand all of that, Mr. Clark?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** So I'm referring now to another

document, Mr. Clark, entitled Waiver of Trial by Jury.  Is this your signature waiving the right to trial by jury, Mr. Clark?

**THE DEFENDANT:**  Yes, sir.

**THE COURT:**  Counsel, is there any reason that Mr. Clark should not waive a jury trial and his right against self-incrimination as to the charge to which a guilty plea is going to be made?

**MR. MYKYTIUK:**  No, Your Honor.

**THE COURT:**  I find that the Waiver of a Trial by Jury is knowingly and voluntarily made and is accepted.  The signed waiver will be filed.

Mr. Clark, you can have a seat for a moment.

**THE DEFENDANT:**  Okay.  Thank you.

**THE COURT:**  As I mentioned before, the government has provided the Court with a document entitled Statement of Offense.  I'll ask you a few questions about that in a moment, Mr. Clark.

As I said earlier, as implied at least, before I can accept your guilty plea, Mr. Clark, I must determine that there is a factual basis for your plea.

Ms. Iyengar, could you now, please, summarize -- you don't need to read the whole thing, but summarize the salient portions of the Statement of Offense for the record, and then I will ask Mr. Clark some questions

about the document?

MS. IYENGAR:  Yes, Your Honor.

Before I forget to do this, we are moving to seal the actual Statement of Offense so that it's not docketed on the public docket.

THE COURT:  Thank you for that.

MS. IYENGAR:  I discussed that with defense counsel and he has no objection.

THE COURT:  No objections from defense counsel?

MR. MYKYTIUK:  No objection.

THE COURT:  The Statement of Offense is sealed. Thank you.

MS. IYENGAR:  Thank you.

So just to summarize the Statement of Offense, the defendant was in a relationship with Minor Victim 1's mother between June of 2017 and December of 2019.  During that time -- or at the beginning of that time frame, Minor Victim 1 was 13 and the defendant was 61 years old.

During that timeframe, there were multiple incidents where the defendant vaginally penetrated Minor Victim 1 and had her place her mouth on his penis.  He used -- the defendant used his cell phone to text Minor Victim 1 to meet in Minor Victim 1's mother's bedroom, in order to have these sexual encounters with her.  There was similar conduct that also occurred at the defendant's

residence in Maryland.

The defendant also, during this timeframe, sent Minor Victim 1 Instagram direct messages asking for sexually explicit images of Minor Victim 1. And Minor Victim 1 responded on one occasion with a sexually explicit image.

Immediately before the defendant's arrest in this case, Detective Walsh, who is the case agent in this case, took over Minor Victim 1's Instagram account and exchanged direct messages with the defendant, pretending to be Minor Victim 1.

During the course of those direct messages, the defendant stated that he was glad that he and Minor Victim 1 were still together after five years, indicating that they had had a relationship; and that he was glad that Minor Victim 1 gave him the most precious thing a woman could give a man, which was her virginity.

**THE COURT:** Thank you, Counsel.

**MS. IYENGAR:** (Nodded head.)

**THE COURT:** Mr. Clark, if you could please come back up to the podium.

(Mr. Mykytiuk and Mr. Clark approached.)

**THE COURT:** Mr. Clark, Ms. Iyengar just summarized this document. I am going to ask you a couple questions about the document itself. I am referring to the sealed Statement of Offense. Have you read this document,

Statement of Offense, Mr. Clark, and have you had an opportunity it to discuss it with your counsel?

THE DEFENDANT: Yes, sir.

THE COURT: Is this your signature, Mr. Clark, on the last page, acknowledging that you have read the description of the criminal conduct and fully understand it?

THE DEFENDANT: Yes, sir.

THE COURT: Are there any corrections or changes you would make to the Statement of Offense?

THE DEFENDANT: No, sir.

THE COURT: Does the Statement of Offense truly and accurately describe what you did in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Thank you.

Turning to the Plea Agreement, the parties have submitted a written letter outlining the Plea Agreement in this case.

Ms. Iyengar, is this the most lenient or only, or I suppose both, plea offer that the government made in this matter?

MS. IYENGAR: Yes, Your Honor.

THE COURT: Thank you.

Mr. Clark, I am now referring to the document, it's a letter, dated April 5, 2022, on the first page. Have you had enough time to review the Plea Agreement, Mr. Clark,

and to discuss it with your counsel?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you understand its contents?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** I'm going to hold up the last page or refer you to the last page, which is Page 14 of 14. Is this your signature on the last page, Mr. Clark, accepting and agreeing to the terms of the Plea Agreement?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Counsel, if you could summarize, from the defendant's perspective at least, any portions of the Plea Agreement that you think are particularly salient, that you would like to state on the record.

**MR. MYKYTIUK:** Well, Your Honor, as the Court noted, this is a two-part agreement. Mr. Clark is facing charges based on the same conduct in Maryland. And one of the reasons that it has taken this long to get where we are today, is that we have been coordinating with Maryland to try to come to a global disposition. So we have done that.

Essentially, that agreement is that after Mr. Clark enters a guilty plea here, he will enter a guilty plea in Maryland. He will be sentenced in Maryland. And then the government has agreed that at sentencing in this court, they will ask the Court to sentence Mr. Clark concurrently to whatever sentence is received in Maryland.

So that is the more unusual part of this agreement.

Otherwise, I don't have any comment besides what's already in here.

**THE COURT:** Thank you.

Ms. Iyengar, anything you would like to state for the record?

**MS. IYENGAR:** No, Your Honor.

**THE COURT:** Okay. Thank you.

So, Mr. Clark,as I indicated earlier, I want to make sure you understand how sentencing will work in this matter, both the statutory provisions and then the sentencing itself.

Obviously, as your counsel just indicated, there is a relationship between this case and the Maryland case that will be relevant. But beyond that, if I accept your guilty plea in this case, the statutory penalties you face are as follows:

For the charge to which you would be pleading guilty, you face a mandatory minimum sentence of 10 years imprisonment, a maximum sentence of life imprisonment, a supervised release term of at least 5 years or life, forfeiture of the electronic devices seized on March 26, 2021, a mandatory award of restitution and a maximum fine of $250,000 or twice the pecuniary gain or loss of the offense, whichever is greater.

A52

You also face a special assessment of $100 for the felony charge, and you must also pay an additional special assessment of $5,000 under 18 U.S. Code Section 3014(a), unless I find you to be indigent at the time of sentencing.

You would also be required to register as a sex offender for a minimum period of 25 years.

Do you understand that what I just listed, the prison term, supervised release, fines, forfeiture, restitution, special assessments and sex offender registration are statutory penalties that apply in this case?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** I just need to make sure the court reporter can hear you.

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Thank you.

In deciding on a fair and appropriate sentence, I will have to consider certain statutory factors and the sentencing guidelines, which are detailed guidelines for judges to consider in determining a sentencing in a criminal case like this one. Those guidelines set ranges for specific offenses. And although I must consult the guidelines, they are only advisory, not mandatory.

While you and the government and your counsel may have an idea, based on the nature of this offense and your

A53

criminal history of what your sentencing range might be, nothing will be certain until the probation officer submits a presentence report that will come to me and to both parties. Your counsel will review it with you, and you will have a chance to make changes in it or object to portions of it.

At the time of sentencing, I will hear from both parties and I will have to determine what your sentencing guidelines range is. So the first point is, the guidelines range is not final until I decide what the guidelines range is.

Once I've heard from the parties and determine the range, however, I am still permitted to impose a sentence outside the range. This means I could sentence you above or below that range. As I noted earlier, however, I cannot sentence you to more than the maximum statutory penalty or period which, as I explained earlier, is life imprisonment.

When I determine your sentence, I must also consider, in addition to the guidelines, the following statutory factors, which include the nature and circumstances of the offense and your history and characteristics, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, both to

you and to others, to protect the public from further crimes by you and to provide you with any needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

I also have to consider the kinds of sentences available. I have to consider the sentencing guidelines, which we've already discussed. And I have to consider the need to avoid unnecessary sentence disparities among defendants who have similar records, who have been found guilty of similar conduct.

Having said all of that, Mr. Clark, do you understand that I will not be able to determine the guidelines range for your case, until I have received the presentence report from the Probation Office and until after you and your counsel and the government have had the opportunity to challenge the facts reported in it and to otherwise object to it? Do you understand that?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you also understand that after I decide what guideline range applies to you, I still have the authority in my discretion to impose a sentence that is more severe or less severe than the sentence called for by the guidelines?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Do you understand, as your counsel

indicated, the Circuit Court in Maryland will impose its own sentence for the state charges, that will be an independent decision by that court, and then we will return here to decide what the appropriate sentence is in this case, in part in light of what has happened in Maryland. Do you understand that?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Mr. Clark, as I mentioned earlier, before I can accept your plea, I need to make sure you are pleading guilty voluntarily. So I will ask you a few more questions to ensure you are doing so of your own freewill.

Mr. Clark, do you understand that the agreement reached in this case resulted from negotiations between your counsel and government's counsel and, frankly, it sounds like the prosecutors in Maryland as well?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Has anyone forced, threatened or coerced you in any way?

**THE DEFENDANT:** Just in the jail.

**THE COURT:** Let me ask a better question.

**THE DEFENDANT:** I'm sorry.

**THE COURT:** No, it's okay.

Has anyone forced, threatened or coerced you in any way with respect to your plea today?

**THE DEFENDANT:** No, sir.

THE COURT: Has anyone made you any promises as to what sentence I will impose in this case, if I accept your guilty plea?

THE DEFENDANT: No, sir.

THE COURT: Has anyone made you any other promises or representations, beyond the ones in the Plea Agreement or the ones discussed today in court, to induce you to give up your right to a trial?

THE DEFENDANT: No, sir.

THE COURT: Is that a No or a Yes?

THE DEFENDANT: No, sir.

THE COURT: Thank you.

And, Mr. Clark, are you entering this plea of guilty today voluntarily and of your own freewill?

THE DEFENDANT: Yes, sir.

THE COURT: Is there anything that you do not understand, Mr. Clark, about this proceeding, your plea or any of the rights that you are waiving?

THE DEFENDANT: No, sir.

THE COURT: Is there anything you would like to ask me or your counsel before you decide whether to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Are there any topics we should discuss from the defense perspective before we take the plea.

**MR. MYKYTIUK:** Not from the defense.

**THE COURT:** Ms. Iyengar, from the government's perspective?

**MS. IYENGAR:** No, Your Honor.

**THE COURT:** Ms. Lesley, could you please take the plea for Mr. Clark.

**DEPUTY CLERK:** Mr. Charles Clark, in criminal case No. 22-160, in which you are charged with Coercion or Enticement of a Female, Enticement of a Minor, in violation of 18 U.S.C. 2422(b), how do you wish to plea?

**THE DEFENDANT:** Guilty.

**DEPUTY CLERK:** Thank you.

**THE COURT:** I find in the case of *United States versus Clark* that the defendant, Charles Clark, is fully competent and capable of making a decision today; that he understands the nature of the charge and the consequences of his plea; that the plea of guilty is knowing and voluntary; that he is acting of his own freewill; and that there is an adequate factual basis containing each of the essential elements of the offense. I therefore accept the plea of guilty and Mr. Clark is now adjudged guilty of Coercion and Enticement of a Minor, in violation of 18 U.S. Code Section 2422(b).

Mr. Clark, you can have a seat.

I just wanted to now discuss timing. Obviously,

normally we would discuss the PSR and the sentencing hearing, but given that we have a two-step process, Ms. Iyengar, do you have thoughts about how quickly that will move in Maryland and how we should take all of that up?

**MS. IYENGAR:** So I reached out to the prosecutor in Maryland to get them to schedule this for a plea hearing, and I have not heard back about when they are planning on scheduling it.

I know it would, obviously, have to be a remote hearing, since we can't release him from the marshals' custody at this point. So I think that that may take some work to get that scheduled.

I think at this point it might be worth it to just do a status hearing, perhaps in a month or so, just to see where we are, and if there is any update in terms of scheduling, or we can just submit a status report to the Court, whichever the Court prefers.

**THE COURT:** I'm happy to do that either way. But let me just make sure I understand what should happen. Obviously the plea hearing needs to happen in Maryland. There then will be a sentencing hearing in Maryland.

**MS. IYENGAR:** Yeah.

**THE COURT:** A sentence will be imposed in Maryland. And all of that has to happen before we are back here for sentencing.

**MS. IYENGAR:** Yes, that's right.

**THE COURT:** Is your sense, recognizing you don't know when the plea hearing is going to get scheduled -- what is your sense for how long, for example, it takes in Maryland between plea and sentencing?

**MS. IYENGAR:** So, the prosecutors said it can be all over the place.

**THE COURT:** Okay.

**MS. IYENGAR:** It could be a month. It could be six months. It kind of just depends on, you know, what the Court's schedule is. But they weren't able to give me any further information. I'm not sure if defense counsel has a better sense.

**MR. MYKYTIUK:** (Shook head)

**MS. IYENGAR:** Okay.

**THE COURT:** A related question then is really whether it makes sense for probation, here, to begin preparing the PSR. A lot of that will be necessary, essentially, regardless of what happens in Maryland.

**MS. IYENGAR:** Sure.

I think that makes sense. I'm not sure if defense counsel has an objection to him being interviewed, I guess, prior to his entering the guilty plea in Maryland or we can have that be the last thing that happens before the report is completed.

**THE COURT:** Let's do this: So I suspect that the report writer will likely work back from the sentencing here. It sounds to me like we are not in a position to schedule the sentencing, because it could take a while for things in Maryland to work their way through.

Unless there is an objection from the defendant, let's schedule a -- I think probably the most efficient is just the submission of a quick status in a month.

**MS. IYENGAR:** Sure.

**THE COURT:** So let's say that on November 11th, one month from today. Oh, that's Veterans' Day. Apologies.

On November 14th, the government shall submit a status report, after conferring with defense counsel, just to inform me of where things stand in Maryland and, if it looks like there's enough clarity, perhaps propose a sentencing date. And then if we enter the sentencing date, then we can leave it to the Probation Office to figure out when they do the PSR.

**MS. IYENGAR:** Sure.

**THE COURT:** I'm not inclined to, essentially, schedule anything for probation right now. They are very busy. And if the sentencing here isn't going to be until March, for whatever reason in Maryland, they can figure that all out at that point.

**MS. IYENGAR:** Sure.

THE COURT: So, essentially, we are just going to hold the hearing -- I mean, the scheduling of the sentencing hearing in this matter, pending all of the things we discussed; submission of however-brief status on November 14th.

Are there any other topics from the government's perspective we should discuss today?

MS. IYENGAR: No, Your Honor.

THE COURT: From the defense perspective, anything we should discuss today, Counsel?

MR. MYKYTIUK: No, Your Honor.

But just to clarify. The government will submit a status report November 14th. We won't have a hearing. And at some point we will simply contact chambers about scheduling a sentencing, once we have more clarity.

THE COURT: Yes. And it may be that in the November 14th submission --

MR. MYKYTIUK: That's optimistic but...

THE COURT: Understood. We may know enough to schedule a sentencing for January or February. And if not, it may be that after I get that status, I'll just order another one a month or 45 days thereafter.

If we do get to the point where there's enough clarity that I can set a hearing, I think we can do that all through emails with Ms. Lesley. Okay?

MR. MYKYTIUK:  Okay.  Thank you.  Understood.

THE COURT:  Thank you, all.

(Proceedings concluded at 10:48 a.m.)

# <u>C E R T I F I C A T E</u>

I, **Lorraine T. Herman, Official Court Reporter,** certify that the foregoing is a true and correct transcript of the record of proceedings in the above-entitled matter.

     June 14, 2024         /s/ Lorraine T. Herman
         **DATE**             **Lorraine T. Herman**

A64

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      :
                              :      CRIMINAL NO. 22-CR-160-CJN
           v.                 :
                              :
CHARLES CLARK,                :
                              :
           Defendant.         :

### JOINT MOTION TO SCHEDULE SENTENCING DATE

The Defendant, Charles Clark, through his counsel, and the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully move the Court to schedule sentencing in this matter for April 3, 2024. In support of this motion, the parties state as follows:

On October 11, 2022, the defendant, Charles Clark, entered a plea of guilty. Pursuant to the terms of his plea agreement, sentencing before this Court was to take place after sentencing for a related case in Charles County, Maryland. After several delays, on December 7, 2023, Mr. Clark was sentenced in the Maryland matter.

The Presentence Report has been completed and the parties have had an opportunity to file any objections. In addition, the additional evaluation requested by the Probation Department [ECF No. 48] has also been completed and submitted to the parties.

For these reasons, the parties respectfully request that the Court schedule sentencing in this matter for April 3, 2024, or on a date convenient for the court.

                    Respectfully submitted,

                    JAY P. MYKYTIUK
                    ATTORNEY FOR CHARLES CLARK

1

A65

By:

_/s/ Jay P. Mykytiuk_____
JAY P. MYKYTIUK
D.C. Bar No. 976596
Counsel for the Defendant
Scrofano Law PC
600 F Street NW Suite 300
Washington, D.C. 20004
(202) 630-1522
jpm@scrofanolaw.com


_/s/   Jocelyn Bond_____
Jocelyn Bond
D.C. Bar Number 1008904
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 809-0793
Email: Jocelyn.Bond@usdoj.gov


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court, and provided to all parties of record via CM/ECF this 11th day of December 2023.

_____/s/_____
**Jay Paul Mykytiuk**

2

A66

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| **v.** | : | CASE. NO. 22-cr-160-CJN |
| | : | |
| | : | |
| CHARLES CLARK | : | |
| Defendant. | : | |

### UNITED STATES' SENTENCING MEMORANDUM

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in sentencing the defendant, Charles Clark, for sexually abusing a young girl entrusted to his care. The United States asks the Court to sentence the defendant to 260 months of incarceration, followed by a lifetime of supervised release, and to run the defendant's sentence concurrent to the sentence imposed in the related case in Charles County, Maryland. Such a sentence, which is in the middle of the defendant's Sentencing Guidelines' range, balances the factors outlined in 18 U.S.C. § 3553(a) and is "sufficient, but not greater than necessary to comply with the purposes of sentencing," and will provide long-term protection to the community from potential future crimes by the defendant. At sentencing, the United States may additionally request that the Court order the defendant to pay restitution to the minor victim in this case for the full amount of her losses.

### I. Background

In June of 2017, at the approximate age of 60, the defendant targeted the 13-year-old daughter of his girlfriend, Minor Victim 1 (MV1), subjecting her to repeated rape and sexual abuse over a period of approximately five years. Despite being a "father-figure" to this girl, and despite having helped raise her from early childhood, the defendant sexually abused MV1 between 170-

1

A67

200 times during those years:  vaginally penetrating her, even when she wanted him to stop, requiring her to put her mouth on his penis, and manipulating her into satisfying his sexual predilections by buying her gifts and promising freedom that she normally would not be allowed at home.

The defendant's abuse of MV1 began when she was 13 years old, during a time when the defendant was living with MV1 and her mother in Washington D.C.  The defendant, who was in a romantic relationship with MV1's mother, stayed in the family's home during the week and would return to his own home in Maryland on the weekends.  After multiple incidents in which the defendant touched MV1 on her buttocks, one day he asked her to meet him in her mother's bedroom while her mother was gone.  There, he vaginally penetrated MV1 with his penis for the first time in an incident in which MV1 described that the defendant "kinda forced himself on" her. Following that, the defendant would sexually abuse MV1 at her own home in Washington D.C. on almost a daily basis until the defendant and MV1's mother ended their relationship in 2019. After that, the defendant continued to sexually abuse MV1 on occasion at his home in Waldorf, Maryland.  The defendant, who was able to draw on the sympathies of MV1's mother after he received a significant health diagnosis at the age of 60, convinced MV1's mother to allow MV1 to come to his residence alone ostensibly to "help" around the house.  The abuse took place regularly between the time MV1 was 13, through age 17, at both homes.

During the duration of the abuse, the defendant would manipulate MV1 by buying her things, including clothes, shoes, and a cell phone.  These items, however, where not "free" to MV1, but came with the expectation that MV1 would continue to satisfy the defendant sexually in exchange and "keep her mouth shut."  For example, after the defendant purchased a cellphone for MV1, he later refused to pay the bill on the phone because he believed MV1 was using the phone

2

A68

to talk to boys her own age.  The defendant also purchased lingerie for MV1, even photographing her wearing it at his request.

While the abuse was ongoing, the defendant and MV1 would sometimes communicate via Instagram direct messaging and the internet.  Starting in 2020, the defendant demanded that MV1 send sexually explicit images of herself to him, which she did on at least two occasions.  On February 19, 2021, the defendant asked MV1 via Instagram "How soon before I get my pictures please take a picture of that pussy and that ass."  Again, on March 10, 2021, the defendant wrote, "I need a picture with your legs up titties and that pretty pussy showing in your face after 4 years you know you can trust me."  When MV1 initially refused, the defendant stepped up his efforts at manipulating her by saying "so evidently I'm not getting my picture so do I see this or what $1,000 phone in shoes you been wasting my money for quite a while and now owning up to your obligations as a GF."

Shortly thereafter, MV1 disclosed the ongoing abuse to her mother, who immediately reported to law enforcement.   Law enforcement, with MV1's permission, then took over MV1's Instagram account and began messaging with the defendant.  The defendant openly acknowledged that he and MV1 had been together for 5 years and that she "gave [him] the most precious thing a woman can give a man." When asked what that was, the defendant responded that MV1 gave him her "virginity." When asked if he was happy he was her "first" at the age of 13, the defendant responded responded, "Hell yeah I cherish that shit to my heart." He later sent her a photograph of his penis saying, "If this don't help you masturbate nothing will."

On October 11, 2022, the defendant entered a plea of guilty to one count of Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), in the instant case.  On March 30, 2023, he pled guilty in the related case in Charles County, Maryland, to one count of Sexual Abuse

3

A69

of a Minor/Continuing Conduct, and one count of Sexual Abuse of a Minor.  On December 7, 2023, the defendant was sentenced in Charles County, Maryland, to a total term of 45 years of incarceration.  Sentencing in the instant case is scheduled for April 3, 2024.

**II.    A Sentence at the Mid-Range of the Defendant's Sentencing Guidelines Appropriately Reflects the § 3553(a) Factors**

In determining a reasonable sentence, the Court must consider the factors listed in 18 U.S.C. § 3553(a).[1]  These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and
(3) the kinds of sentences available;
(4) the applicable sentencing guidelines range for the offense;
(5) pertinent policy statements issued by the U.S. Sentencing Commission;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a); *see also United States v. Pyles*, No. CR 14-00006 (RJL), 2020 WL 376787, at *2 (D.D.C. Jan. 23, 2020); *United States v. Mitchell*, No. CR 05-00110 (EGS), 2019 WL 2647571, at *7 (D.D.C. June 27, 2019).  A district court, however, "need not consider every § 3553(a) factor in every case." *In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008); *see also United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017).

---

[1] "Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005), the Guidelines serve only an advisory function. *Id.* at 245, 125 S. Ct. 738. Nevertheless, even in a post-*Booker* world in which the Guidelines are not binding, the sentencing court 'must calculate and consider the applicable Guidelines range" as its starting point.

A70

Here, the United States submits that a sentence of 260 months of incarceration and lifetime supervised release, to run concurrent with the defendant's Maryland sentence, reasonably accounts for the factors established in § 3553.

**A. The Nature and Circumstances of the Offense**

The defendant's profound betrayal of trust – raping and manipulating a young teen who had been entrusted to his care – warrants a very significant sentence. The defendant was a "father figure" who had lived with and helped to raise MV1 beginning in early childhood. As MV1's mother described in her Victim Impact Statement, "Charles was with us when she did not have two front teeth." *See*, Victim Impact Statement of J.G., filed under seal. Prior to abusing MV1, the defendant was an integral and beloved member of the family. As J.G. explained, "As time progressed, I trusted him with my children. I allowed them to go to his house and assist him with chores because he was too weak to do it alone. I trusted him to pick them up from school and watch them overnight when claimed he was sick and cold not drive back home." *Id.*

Instead of being a true "father-figure" and using his role protect MV1 he, instead, trampled on that trust and used MV1 for his own sexual satisfaction. Beginning with touching her buttocks – a tactic consistent with the grooming of children – the defendant then used his authority as a father-figure to summon MV1 to an empty bedroom at the age of 13, where he raped her for the first time. As if this were not betrayal enough, he raped the girl in the bedroom of her own mother, a woman that the defendant was supposedly in a romantic relationship with. From that time, the defendant regularly engaged in the sexual abuse of MV1 with the abuse occurring, at times, almost daily, and continuing until she was 17 years old. To ensure that he would not be found out, the defendant attempted to buy MV1's silence with clothes, shoes, and a cell phone. The defendant

5

A71

also sought to create divisions between MV1 and her mother, making it only more difficult for MV1 to seek out someone trustworthy who she could turn to.

Research on the effects of sexual abuse on a developing child suggest that early trauma, including sexual abuse, may interfere with brain development, and can produce various neuropsychiatric symptoms commonly associated with drug use. *See* Anderson, C. M., Teicher, M. H., Polcari, A., & Renshaw, P. F. (2002): Abnormal T2 relaxation time in the cerebellar vermis of adults sexually abused in childhood: Potential role of the vermis in stress-enhanced risk for drug abuse. *Psychoneuroendocrinology, 27*, 231-244; Baynard, V. L., Williams, L. M., & Siegel, J. A. (2001): The long-term mental health consequences of child sexual abuse: An exploratory study of the impact of multiple traumas in a sample of women. *Journal of Traumatic Stress, 14*(4), 697-715 (noting that child sexual abuse victims reported a lifetime history of more exposure to various traumas and higher levels of mental health symptoms). Other studies have found that individuals who suffer sexual abuse in their childhood years have a higher rate of anxiety, disruptive behaviors, substance abuse, and personality disorders compared to others who may have experienced other forms of abuse or neglect. *See* Cohen, P., Brown, J., & Smailes, E. (2001): Child abuse and neglect and the development of mental disorders in the general population. *Development and Psychopathology, 13*, 981-999; Dube, S. R., Anda, R. F., Felitti, V. J., Chapman, D. P., Williamson, D. F., & Giles, W.H.(2001): Childhood abuse, household dysfunction, and the risk of attempted suicide throughout the life span: Findings from the adverse childhood experiences study. *JAMA, 286*(24), 3089-3096 (noting that a powerful relationship exists between adverse childhood experiences and risk of attempted suicide through the life span); Merrill, L. L., Thomsen, C. J., Sinclair, B. B., Gold, S. R., & Milner, J. S. (2001): Predicting the impact of child sexual abuse on women: The role of abuse severity, parental support, and coping

A72

strategies. *Journal of Consulting and Clinical Psychology, 69*(6), 992-1006 (child sexual abuse is a significant predictor of long-term psychological difficulties ranging from depression and anxiety to sexual problems and dissociative symptomatology).   Research also indicates that sexually abused adolescents are at an increased arrest rate for sex crimes and prostitution and are at an increased risk for earlier pregnancy. *See* Putnam, F. W. (2003): Ten-year research update review: Child sexual abuse. *Journal of the American Academy of Child and Adolescent Psychiatry, 42*(3).

Additionally, survivors of childhood sexual abuse often experience intense feelings of guilt and shame that can affect their capacity to develop meaningful present and future relationships, and can result in more guarded and cautious interactions with peers and other adults. *See* Raymond E. Webster, Symptoms and Long-Term Outcomes for Children Who Have Been Sexually Assaulted, 38 Psych. in the Schools 533, 536–39 (2001). These children often develop symptoms associated with post-traumatic stress disorder (PTSD), including general agitation, behavior disorganization, and frightening nightmares. *Id.* at 537. Children who are particularly young or rely on the perpetrator for things like emotional support can suffer particularly severe trauma that intensifies their fears, causes emotional confusion, and impedes their ability to trust others. *See id.* at 538–39.  Although family support and parental understanding can mitigate some of these long-term issues, the trauma of abuse can also "overwhelm" even "an essentially healthy functioning child who resides in a reasonably well-functioning home because [it] can disrupt the primary protective factors (such as friends, caretakers, extended family, familiar neighborhood) that protected the child initially." Webster, Symptoms and Long-Term Outcomes, at 540.

The defendant's sexual abuse of MV1 shows a brazen disregard for the wellbeing of a child entrusted to his care for the singular purpose of satisfying his own sexual desires.  A sentence of

7

A73

260 months of incarceration, followed by a lifetime of supervised release, would reflect the gravity of the defendant's conduct and the long-term harm that he has caused to a child who trusted him.

**B. History and Characteristics of the Defendant**

The defendant's history – including his health, age, lack of criminal history, and long-term employment – supports a sentence at middle of his Sentencing Guidelines range.  By all accounts defendant Clark lived a law-abiding and productive life until the age of 60, when he began sexually abusing MV1.  Before that time, he was employed full time as a shipping supervisor with the Department of State, where he had a top-secret security clearance and earned an annual income of $130,000.  ECF No. 55, PSR ¶ 79.  While this speaks well of the defendant's work ethic, it does not mitigate his conduct here and should not be viewed as a basis for varying from the Sentencing Guidelines.

Additionally, there is nothing about the defendant's history or characteristics that suggests a departure from the Sentencing Guidelines is warranted.  The United States strongly opposes the suggestion made in the Presentence Report that the defendant's age and medical condition may form the basis for a downward departure pursuant to U.S.S.G. § 5H1.1 and § 5H1.4.  The Court should not depart downward from the Sentencing Guidelines here, where neither the defendant's age nor medical condition prevented him from perpetrating a serious crime over the course of years against a minor.  At the age of 60, the defendant was diagnosed with a significant health issue for which he will require lifelong care.  ECF No. 55, PSR ¶ 64.  Significantly, it was around that same time period that he began abusing MV1 and continued that abuse for almost 5 years.  During the course of that abuse, the defendant used his age and illness to prey on the sympathies of MV1's mother and to manipulate her into allowing MV1 to come to his Maryland residence – alone, where she had no protection – so that he could sexually abuse MV1.  Despite his age and illness, the

A74

defendant was still physically capable of engaging in the sexual abuse of MV1. Despite his age and illness, the defendant still manipulated her by dangling material things, like a phone and clothes, to buy her silence. Despite his age and illness, the defendant was still physically capable of demanding sexually explicit images from MV1 while sitting in front of a computer and using his own Instagram account. And, finally, despite his age and illness, he still managed to send obscene photos of his genitalia to MV1 in an effort to sexually arouse her. The Court should reject any effort by the defendant to now use his age and illness to shield him from the consequences of his actions.

A mid-range sentence of 260 months, concurrent with the defendant's Maryland sentence, appropriately balances the § 3553 factors by taking into account the defendant's history of sexually abusing a young teen for close to five years. A departure is not warranted here, particularly where the defendant committed the offense after reaching the age of 60, and even after he had been diagnosed with a significant medical condition.

**C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense**

This factor is known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime and the defendant is punished justly. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.*

A75

The sexual abuse of a minor is a serious offense that can have detrimental effects on the victim both in the long and short term. As MV1 wrote in her statement to the Court,

> I wouldn't wish any of this on my worst enemy. Imagine coming home from school everyday and have to be sexually assaulted. Imagine feeling like you have nobody by yourself. Imagine feeling like nobody will believe you. Imagine your mom's boyfriend taking your virginity at the age of 13. Imagine feeling like the person that's hurting you is the only one by your side. Imagine wanting to harm yourself because you feel like you deserve everything that's happened to you.

Victim Impact Statement of MV1, filed under seal. As this agonized statement makes clear, MV1 will be struggling with the aftermath of the defendant's abuse for many years to come. A sentence of 260 months incarceration and a lifetime of supervised release would reflect the seriousness of the offense and punishment for the long-term damage that the defendant has caused.

**D. The Need for the Sentence Imposed to Afford Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant**

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *See United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017) (the sentence would deter Fry and "others who may be inclined in doing similar kinds of things."). Here, a sentence of 260 months will deter the defendant from future crimes, as well as others who may be inclined to sexually abuse minors. This sentence, which is at the middle of the defendant's guidelines range, is appropriate given the defendant's long-term abuse of MV1. This was not a crime of opportunity or a one-time lapse in judgement. Rather, the defendant engaged in a years-long course of conduct to sexually abuse a young teen entrusted to his care.

Further, the defendant now appears to minimize his conduct and to shift the blame, suggesting that he may not be deterred from engaging in similar conduct in the future. As an adult with parental authority over MV1, he was in a position of power over MV1 which he abused in

A76

order to gratify his own sexual desires.  Instead of recognizing his full culpability, he attempts to point to the minor victim and her mother, claiming they somehow instigated the sexual abuse he engaged in.  As described in the evaluation conducted by Irene Guya-Allen, the defendant claimed that MV1 "was enticing me, feeding me and coming on to me by walking around the house nearly naked in a bra and underwear and telling me encouraging words when her mother was not.  I was also in a toxic relationship." *Evaluation*, Guya-Allen, at 8.  This attempted blame-shifting reflects a profound delusion on the part of the defendant and ignores the reality that a 60-year-old adult man is fully responsible for his own actions, despite what a 13-year-old girl might be wearing. The defendant's sentence should reflect this reality.

   **E. The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have been Found Guilty of Similar Conduct**

   Section 3553(a)(6) directs courts to consider avoiding *unwarranted* disparities among defendants "with similar records who have been found guilty of similar conduct." It "does not require the district court to avoid sentencing disparities between defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010).  When an offense is uniquely serious, courts will consider the need to impose "stiffer sentences" that "justif[y] the risk of potential disparities." *United States v. Jones*, 846 F.3d 366, 372 (D.C. Cir. 2017); *see also United States v. Accardi*, 669 F.3d 340, 346 (D.C. Cir. 2012) (concluding that a within-Guidelines sentence for a child-pornography offense did not produce an unwarranted disparity when the images distributed by the defendant "were much more aggressive and troubling than the images distributed by other offenders" who received lesser sentences).

   The United States is seeking a Guideline's compliant sentence in this case, which is warranted by the defendant's conduct and history.  The defendant's repeated and multi-year course

11

A77

of conduct abusing MV1 sets him apart from others. A sentence at the mid-range of his Guidelines is appropriate and does not subject him to unwarranted disparities.[2]

**F. MV1 is Entitled to Restitution for the Full Amount of Her Losses**

MV1 is entitled to restitution for the full amount of the losses she suffered at the hands of the defendant. Title 18, U.S.C. § 2429 directs that "Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter." This includes Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), the offense to which the defendant pled guilty. Under the statute, the restitution order "shall" direct the defendant to pay the "full amount of the victim's losses." § 2429(b)(1). In turn, the "full amount of the victim's losses" is defined as any costs incurred by the victim for:

(A) Medical services relating to physical, psychiatric, or psychological care;
(B) Physical and occupational therapy or rehabilitation;
(C) Necessary transportation, temporary housing, and child care expenses;
(D) Lost income;
(E) Attorneys' fees, as well as other costs incurred; and
(F) Any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3); *see also United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015).

Here, in consultation with MV1 and her mother, the United States may submit a restitution request at the time of sentencing to address the losses caused by the defendant's actions.

---

[2] Exhibit A includes comparative sentencing information from the Judiciary Sentencing Information (JSIN) platform for the Court's consideration.

A78

**III.    Conclusion**

The Government submits that a sentence of 260 months incarceration, at the middle of the defendant's Sentencing Guideline's range, and lifetime supervised release, to be run concurrent with the defendant's related sentence in Maryland, is reasonable in this case and is "sufficient, but not greater than necessary to comply with the purposes" of sentencing.  18 U.S.C. § 3553(a).


Dated:  March 27, 2024                    Respectfully submitted,


                                          MATTHEW M. GRAVES
                                          UNITED STATES ATTORNEY

                                          _/s/_ _Jocelyn Bond_____
                                          Assistant United States Attorney
                                          Jocelyn Bond
                                          DC Bar No. 1008904
                                          Assistant United States Attorney
                                          601 D Street, NW
                                          Washington, D.C. 20530

A79

# **<u>Exhibit A</u>**

A80

**<u>FEDERAL DEFENDANTS IN SELECTED CELL</u>**
During the last five fiscal years (FY2018-2022), there were 39 defendants whose primary guideline was §2G1.3, with a Final Offense Level of 38 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 38 defendants (97%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 200 month(s) and the median length of imprisonment imposed was 205 month(s).

The sentencing data provided does not reflect the Commission's recommendation regarding the appropriate sentence to be imposed or represent the Commission's official position on any issue or case. Nor does the information provided reflect the Commission's position regarding the weight to be given, if any, to the above sentencing information in a court's determination of the appropriate sentence to be imposed.

If the court does consider the above sentencing information as part of its consideration of the factors in 18 U.S.C. § 3553(a) in imposing sentence, it should do so only after considering the properly calculated guideline range and any applicable departures provided for in the Guidelines Manual.

A81

## Sentence Imposed Relative to the Guideline Range for Defendants in Selected Cell
Fiscal Year 2018-2022

■ Within Range  ■ Downward Departure or Variance  ■ Upward Departure or Variance  ■ §5K1.1 Substantial Assistance



**Note:** The figure includes the 44 defendants reported to the Commission whose primary guideline was §2G1.3, with a Final Offense Level of 38 and a Criminal History Category of I, including defendants who received a §5K1.1 substantial assistance departure. Cases missing information necessary to complete the analysis were excluded from this figure. Defendants who received a §5K1.1 substantial assistance departure are included in this analysis but are excluded from other analyses below. As such, the number of defendants included in this analysis may exceed the number of defendants in other analyses. Total percentages displayed in the figure may not sum to 100% due to rounding.

## Sentence Type for Defendants in Selected Cell (after excluding §5K1.1)
Fiscal Year 2018-2022

■ Defendants Receiving Imprisonment (In Whole or In Part)  ■ Defendants Receiving Probation or Fine Only



**Note:** The figure includes the 39 defendants reported to the Commission whose primary guideline was §2G1.3, with a Final Offense Level of 38 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. Cases missing information necessary to complete the analysis were excluded from this figure. Total percentages displayed in the figure may not sum to 100% due to rounding.

The *Defendants Receiving Imprisonment* category includes defendants sentenced to a term of imprisonment (in whole or in part) and who received a commitment to the Bureau of Prisons. This category includes (1) defendants sentenced to a term of imprisonment only, with no additional conditions of community confinement, home detention or intermittent confinement (Prison Only) and (2) defendants sentenced to imprisonment and conditions of alternative confinement as defined in USSG §5C1.1 (Prison and Alternatives). This category includes, but is not limited to, Zone A, Zone B, or Zone C cases receiving prison with additional conditions of a term of community confinement, home detention, or intermittent confinement.

The *Defendants Receiving Probation* category includes defendants sentenced to a term of probation with or without a condition of community confinement, intermittent confinement, or home detention (Probation Only and Probation and Alternatives). This category also includes defendants who received no prison, no probation, and no time of alternative confinement as defined in USSG §5C1.1, but instead who received a fine and/or a special assessment (Fine Only).

## Average and Median Length of Imprisonment for Defendants in Selected Cell Who Received a Sentence of Imprisonment (excluding §5K1.1)
Fiscal Year 2018-2022

■ Average Length of Imprisonment  ■ Median Length of Imprisonment



**Note:** The figure includes the 38 defendants reported to the Commission (1) whose primary guideline was §2G1.3, with a Final Offense Level of 38 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure; and (2) the defendant received a sentence of imprisonment in whole or in part. Cases missing information necessary to complete the analysis were excluded from this figure.

*Average and Median Length of Imprisonment* reports the average and median term of imprisonment imposed in months for cases in which a term of imprisonment was imposed. Probation sentences are excluded. Any portion of a sentence that is an alternative confinement as described in USSG §5C1.1 is also excluded. Cases in which a sentence is imposed, but where the length is indeterminable, are excluded. When sentences are expressed as "time served" on the J&C, Commission staff uses the dates in federal custody to determine the length of time served when an defendant has been in custody the entire time. If the defendant has been in and out of custody, or the start date is unclear/missing, then the Commission assigns a value of one day as a minimal time served amount for these cases. In cases where the court imposes a sentence of life imprisonment, sentences are reported as 470 months, a length consistent with the average life expectancy of federal criminal defendants given the average age of federal defendants. Sentences of greater than 470 months are also reported as 470 months.

A82

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**


| | |
|---|---|
| **UNITED STATES OF AMERICA** )<br>**Plaintiff,** )<br> )<br>**v.** )<br> )<br> )<br>**CHARLES CLARK** )<br>**Defendant.** )<br>_____) | **Case No.: 1:22-CR-00160** |


### DEFENDANT'S POSITION ON SENTENCING


Defendant Charles Clark, through counsel, respectfully submits the following Position on Sentencing. Mr. Clark has already been sentenced for the relevant conduct in this matter in Charles County, Maryland to a sentence that includes 45 years of incarceration. The circumstances of Mr. Clark's offense are unpleasant, but there are ample reasons, including Mr. Clark's age and physical health, for the Court to vary significantly below the bottom of the sentencing guidelines. Based on the factors set forth below, Mr. Clark respectfully requests that the Court impose the mandatory minimum sentence of 10 years, and run that sentence concurrent to that already imposed in Maryland. Such a sentence is "sufficient but not greater than necessary to comply with" the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2).

### BACKGROUND

Mr. Clark is a 67- year-old man in failing health who began a sexual relationship with a teenage girl. There is no legitimate excuse for his actions, and none will be offered here. While true that Mr. Clark was abusing marijuana and alcohol during the period of his crime—self-medicating his neurological condition—that condition in no way justifies his actions. Mr. Clark

1

A83

has entered into a plea agreement with the government, and adopted the Statement of Facts, which outlines his wrongdoing in great detail. Mr. Clark does not dispute nor defend his actions.  Mr. Clark will likely spend the remainder of his years behind bars regardless of what this Court does. Nevertheless, a concurrent sentence of 10 years—a significant downward variance—would represent an appropriate sentence here based on Mr. Clark's lack of criminal history, his age, and poor health. Imposing a concurrent sentence would be consistent with the Federal Sentencing Guidelines.[1]

<strong><u>DISCUSSION</u></strong>

## I.        THE POST-***BOOKER*** SENTENCING FRAMEWORK

Under Justice Breyer's majority opinion in *Booker*, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. *See* 18 U.S.C. § 3553(a)(4)." *United States v. Booker*, 125 S.Ct. 738 (2005).  While holding  that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in *Booker* held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a).  Pursuant to *Booker*, therefore, courts must treat the Guidelines as one, among several, sentencing factor.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a) – which were explicitly endorsed by the Supreme Court in *Booker* – sentencing courts should consider the need for the sentence imposed:

(A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)      to afford adequate deterrence to criminal conduct;

(C)      to protect the public from further crimes of the defendant; and

---

[1] Under §5G1.3(b), if a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction, the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

A84

(D)     to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.  Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

> Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the *Booker* majority:
> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of *Booker*, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence.    After *Booker*, courts need not justify sentences outside the guideline range by citing factors that take the case outside the "heartland."  Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may exercise their discretion in individual cases and impose sentences which are not within the proposed guideline range.

Since *Booker*, the Supreme Court reaffirmed that the Sentencing Guidelines are merely one

A85

factor to be considered by district courts when fashioning a reasonable sentence and that the Sentencing Guidelines are not to be weighed more heavily than other sentencing factors. *See Rita v. United States*, 127 S.Ct. 2456 (2007) and *Gall v. United States*, 128 S.Ct. 586 (2007). A sentencing court shall not simply presume that a sentence within the Guideline range is automatically reasonable or that a sentence within the Guideline range is more reasonable than a sentence outside of the Guideline range. *Id.* The sentencing court further shall not presume that a sentence outside of the Guidelines range is unreasonable. *Id.* By considering the Sentencing Guidelines along with all of the factors set forth 18 U.S.C. § 3553(a), "the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure." *Rita* at 2465. It is critical for sentencing courts to consider all sentencing factors and to not give undue weight to the Sentencing Guidelines because, as the Supreme Court recently reemphasized, '[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.' *Gall* at 598 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

**II.    Applying the Sentencing Guidelines Would Result in a Sentence that is Excessive and Inappropriate Considering the 3553 Factors.**

The statutory penalty for a conviction under 18 U.S.C § 2422(b) carries a maximum penalty of life imprisonment and a mandatory minimum of 10 years. The PSR calculates Mr. Clark's offense level as 38 with an advisory sentencing range of 235 months to 293 months. While Mr. Clark does not object to the accuracy of the calculation, he argues that given his almost zero chance of recidivism, a sentence within the guideline range would be only punitive in nature.

The sentencing guidelines are unable, by themselves, to account for the individual circumstances and peculiar characteristics of an offense—they are a blunt instrument, with

limited ability to incorporate nuance into a sentencing calculation.  While retribution is certainly a goal of criminal sentencing, the 3553 factors, as a whole, suggest that a mandatory minimum sentence is appropriate here. These same factors do not justify a sentence suggested by the advisory guidelines.

I.   **A SENTENCE OF TEN YEARS, CONCURRENT WITH MR. CLARK'S MARYLAND SENTENCE IS REASONABLE AND APPROPRIATE AND WARRANTED BY THE SECTION 3553 FACTORS.**

A.   The Nature and Circumstances of the Offense and the
     History and Characteristics of the Defendant.

In accordance with 18 U.S.C. 3553(a)(1), courts are to consider "the nature and circumstances of the offense and the history and characteristics of the defendant" when imposing sentence.  These factors indicate that a 10 year sentence is appropriate for Mr. Clark.

1.   *Mr. Clark's History, Background and Character*

Mr. Clark was 64 years old when arrested. He spent his 65th, 66th and 67th  birthdays behind bars. Based on the 45-year term of imprisonment he received for this same conduct in Charles County, Maryland, PSR ¶ 45 Mr. Clark will almost certainly spend the rest of his birthdays in prison. While his life has been filled with obstacles, he lived much of it the right way.

Mr. Clark has the support of his friends and family, who will help him readjust to society if ever released.  Many of them have written letters of support, in which they discuss Mr. Clark in glowing terms. His neighbor describes him as an "honorable individual and valuable member of [the] community" who "has always been there for [him]" (Ex 1A. Jeter letter). This is a common refrain, and from the letters emerge a portrait of a man generous of spirit, whose actions here are met with shock and disbelief.  Mr. Clark's colleague believes him to be "a person of high integrity and honesty" and writes that Mr. Clark was "a source of comfort and guidance during

A87

times of bereavement and crisis." (Ex. 1B Blackstone letter).  Another colleague calls Mr. Clark a "good human being." (Ex. 1C Fisher letter).  Others who have known Mr. Clark for many years describe Mr. Clark with words like, "solid," (Exhibit 1D W. Wye letter) "upstanding," "kind, polite and generous to others," "dependable, reliable, honest, courteous, and trustworthy." (Exhibit 1E Franklin letter).

Mr. Clark built positive relationships with friends and family and became a productive member of society despite a difficult upbringing. He was born into poverty to a teenage mother and partly raised by an alcoholic, abusive father. PSR ¶ 56.  It should not be lost on the court that Mr. Clark was also a victim of sexual abuse, having his first sexual experience with a 67-year old woman when he was a young teenage boy.[2] PAI 7-8.  Perhaps not surprisingly, there is a strong correlation between victims of sexual abuse and eventual perpetrators of sexual abuse. There is also evidence that a high percentage of male subjects abused in childhood by a female relative became perpetrators.[3] In addition, Mr. Clark was a child and present in the home while his mother was raped. PAI 5. While none of Mr. Clark's experiences justify his crimes, they perhaps provide some insight into why he has ended up before this Court.

Despite the positive relationships he has formed and the large part of his life spent following the law, Mr. Clark's legacy will be defined by his serious transgression. Mr. Clark is cognizant of this fact and accepts it. While he may never again be a member of the community, a mandatory minimum sentence from this Court may give him the opportunity to say good-bye to his friends and family. Despite his crime, Mr. Clark is worthy of that opportunity.

2.      *The Nature and Circumstances of Mr. Clark's Role in the Offense*

---

[2] While the PAI includes the alleged encounter in the "Sexual History" section, it is difficult to see how this would not meet the definition of sexual abuse.

[3] Glasser M, Kolvin I, Campbell D, Glasser A, Leitch I, Farrelly S. Cycle of child sexual abuse: links between being a victim and becoming a perpetrator. Br J Psychiatry. 2001 Dec;179:482-94; discussion 495-7. doi: 10.1192/bjp.179.6.482. PMID: 11731348.

A88

Mr. Clark has acknowledged guilt and accepted responsibility before this Court. His criminal conduct is concisely described in the statement of facts and in the Presentence Investigation Report. PSR ¶ 16-21, and Mr. Clark does not dispute these facts.

Mr. Clark continues to be embarrassed and ashamed of his criminal behavior. For someone who by all accounts is a honorable and conscientious person, contributing to the victimization of another is anathema. Moreover, Mr. Clark is keenly aware of how he has let down his family and friends, and permanently affected the victim. Nevertheless, the 45-year sentence Mr. Clark has already received for this offense is more than sufficient punishment.

B.  **The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant.**

To be blunt, Mr. Clark likely does not have much life still ahead of him, but that life will be far different from the retirement he had worked towards much of his adult life. If he is ever released from prison he will be a very old man and in poor health. He will also be a registered sex offender. There are significant collateral consequences to be faced by Mr. Clark, in addition to the incarceration he has already experienced and the future incarceration he still faces. The Court is tasked with fashioning a sentence that deters others from engaging in this type of misconduct and protects future potential victims from Mr. Clark. In this particular case, a sentence of 10 years accomplishes both goals.

*1. Deterrence*

Studies concerning deterrence do not support sentencing Mr. Clark to a period of incarceration greater than 10 years. Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, Purposes and Functions of

A89

Sentencing, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." Id.; see also Zvi D. Gabbay, Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. See Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. Id. at 1. It examined the effects of changes to both the certainty and severity of punishment. Id. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." Id. at 2. The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." Id. at 1.

Regardless of the studies, arrest and humiliation, more than a year of incarceration, sex offender registration, and an extended period of supervised release are sufficient to deter those who may follow the path of Mr. Clark. For these reasons, any sentence more than the mandatory minimum will be greater than necessary for purposes of achieving the goal of deterrence.

### 2. Protecting the Public

While no sentence would likely have a general deterrence effect on offenders, a sentence of 10 years would serve to protect the public from any future wrong-doing by Mr. Clark. Even assuming that Mr. Clark does not serve the entirety of his 45-year Maryland sentence, Mr. Clark's

A90

age and physical condition alone make it virtually impossible that he would reoffend. This offense, while deeply disturbing, was an isolated period, committed while Mr. Clark was abusing alcohol and struggling with the onset of his neurological disorder. (PSR 5). For reasons that Mr. Clark cannot even properly explain to himself, he dealt with his pain through the illicit relationship with the victim.

Based upon the forensic evaluation conducted by Dr. Irene Guya-Allen, the likelihood that Mr. Clark will reoffend is very low. PAI 15. His "low level of antisocial tendencies and lack of criminal history lowers his risk," as does his age. Id. Combined with his physical condition, which has worsened during his incarceration, and the conditions of supervised release Mr. Clark would be under, he would pose no future danger to the community.

A prison sentence of 10 years, to run concurrently with the 45-year Maryland sentence, will certainly serve as effective difference for Mr. Clark. 1) If Mr. Clark is required to serve his complete Maryland sentence, the reality is that Mr. Clark will never again be a free man. If he is released earlier than 45 years, it would likely be based on health conditions that would prevent him from having the physical ability to reoffend. The requested sentence, the term of supervised release, along with sexual offender registration will proactively address and alter recidivist behavior. In addition to sex offender treatment, which will require him to waive any right to confidentiality and submit to polygraph testing, Mr. Clark will be forced to register as a sex offender and report his residence and place of employment. He will be closely monitored to insure that he is not interacting with underage girls. Mr. Clark will be required to submit to random warrantless searches by law enforcement or probation upon reasonable suspicion that he is violating the law or the terms of his probation. All of these encumbrances will be part of his everyday life.  Essentially, his ability to reoffend, even if he so desired, will be almost

A91

completely eliminated by supervised release conditions. Quite frankly, there is virtually a zero percent chance that Mr. Clark will ever again be a threat to the community. Therefore, a concurrent sentence of 10 years is a sufficient sentence that is not "greater than necessary."

c.   The Need to Avoid Unwarranted Sentencing Disparities.

In fashioning an appropriate sentence, sentencing courts are to consider "the need to avoid unwarranted sentencing disparities among defendants of similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

According to the Judiciary Sentencing Information referenced in the PSR, the average sentence imposed for those with Mr. Clark's guidelines calculation is 195 months. Those numbers reflect offenders of all ages and health statuses. A sentence of 10 years would be a significant variance, but one anticipated by §5H1.4 in cases of serious health conditions. As such, sentencing Mr. Clark to 10 years would not truly constitute a sentencing disparity.

## CONCLUSION

For the reasons discussed above, a sentence of 10 years—the mandatory minimum—is, is reasonable and appropriate. Such a sentence, on its face, may not sufficiently address Mr. Clark's conduct. However, when considering his age, physical health, as well the other factors pursuant to 18 U.S.C. § 3553(a), a mandatory minimum sentence appears more appropriate. Based on Mr. Clark's age, health, law-abiding history, and his contributions to his family and community, more than 10 years of prison would constitute a sentence that is greater than necessary. Accordingly, Mr. Clark respectfully requests that the Court impose the mandatory minimum sentence to be followed by a period of supervised release the Court deems appropriate.

A92

Respectfully Submitted,


SCROFANO LAW PC

BY:

_____/s/_____
Jay P. Mykytiuk [Bar No: 976596]
*Counsel for Charles Clark*
600 F Street NW Suite 300
Washington, DC 20004
jpm@scrofanolaw.com
Ph: 202-630-1522

11

A93

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of March 2024, I filed the foregoing with the Clerk of the United States District Court for the District of Columbia by using the CM/ECF system, which system I understand has provided electronic notice counsel of record.

*/s/ Jay P. Mykytiuk*
Jay P. Mykytiuk

12

A94

EXHIBIT

1A

To:         Justice + Members of the Jury
From:       Ty Jeter, Waldorf, MD (Neighbor)
Subject:    Charles Clark
Date:       August 13, 2021

Dear Your Honor,

I am writing this letter as a character reference on behalf of Charles Clark. I have learned of the seriousness of the case and voluntarily wish to provide this information.

I have known Charles for nearly 5 years and know him to be a good man who is distressed by his current circumstances.

The Charles Clark I know, is a good man, and this I know to be evident based on his actions since becoming neighbors. In our friendship, he has always been there for me if I needed anything.

It is my sincere hope the court takes this letter into consideration. I believe Charles to be an

A95

honorable individual and a
valuable member of my community,
and a good human being.

Sincerely,

Ty Jeter

A96

Gordon Blackstone

9510 Everette Drive

Spotsylvania, Virginia



September 4, 2021

I, Gordon Blackstone am writing to provide a character reference for Mr. Charles Clark who I have known as a friend and colleague for over 14 years.

I was both troubled and dismayed to hear about the recent charges as I have always known him to be a solid person. As Mr. Clark's direct supervisor I can attest that he was well-regarded among all staff at our government agency as a person of high integrity and honesty. In our work environment Mr. Clark was often sought as a source of comfort and guidance during times of bereavement and crisis. As a supervisor himself, Mr. Clark has never had a negative accusation lodged against him during the time I have known him.

It is my sincere hope that the court will take this letter into consideration. Despite the current accusations against him I have no reason or knowledge of anything that would lead me to believe that Mr. Clark is anything other than an honorable man, a valuable member of the community and a good human being.

Sincerely,

Gordon Blackstone

A97

EXHIBIT

**1C**

David L. Fisher Sr.

17200 Four Seasons Drive

Dumfries, Va. 22025

September 2, 2021

Re: Charles D. Clark

To: Presiding Judge

I have known Charles Clark as a co-worker and friend for 18 years. I was very troubled and surprised to hear about his recent case as he has always been a very solid person. It is for this reason I am very happy to write a letter of reference for Mr. Charles Clark regarding this matter. I understand the seriousness of this matter, however I hope the court will show some leniency.

Charles Clark has always been an upright character in the community. In our friendship he guided me through the home buying process for my first home, helping me to understand the entire process. It was his friendship that made it easy for me to share my personal business with him, not feeling like he would divulge my personal information. Because of this we became closer and had many in-depth conversations about our secular careers, family and religion. As one of Jehovah's Witnesses we discussed the value of living by Bible principles on many occasions. And these were conversations we both thoroughly enjoyed.

It is my sincere hope that the court takes this brief letter into consideration at the time of sentencing. Despite the current case, I still believe Charles Clark to be an honorable individual, a valuable member of the community and a good human being.

Sincerely,

David L. Fisher

A98

EXHIBIT

**1D**

Wallace L. Wye
4495 Strauss Avenue
Indian Head, Maryland 20640

September 1, 2021

To:    The Honorable Judge presiding over this matter

I have known Charles Clark as a good friend since I was 15 years old. I was both troubled and surprised to hear about his recent case as he has always been a rather solid person. It is for this reason I am happy to write a letter of reference for Mr. Clark regarding this matter. I understand the seriousness of this matter, however, hope the court will show some leniency.

Charles Clark has always been an upright character in the community. In our friendship, he has really been there for me, especially when the company I worked for closed. He made it a point to be there and show a significant amount of support during a sudden and arduous job search. It was Charles Clark that was a source of camaraderie for both me and my family. He has truly been a good friend over the years.

Mr. Clark comes from a loving family and has many friends. He has two daughters, four sons and a host of grandchildren. He has been an employee for the U.S. Department of State for more than 20 years. Also, Mr. Clark has never been arrested or charged with any crime throughout his life. This case is definitely a surprise and totally out of his character; the matter of which he is accused does not match his mentality.

In addition to our friendship, he is an upstanding member of his neighborhood. It is unfortunate that he has made a bad decision, thus resulting in this case. While I was surprised to hear of the misconduct, it comes as no surprise that he is ready to accept responsibility for his actions. I believe that as we move forward, he will emerge a better person. In short, I am confident that Mr. Clark has expressed a deep sense of remorse in making such a decision, if it was a decision he made.

It is my sincere hope the court takes this letter into consideration at the time of sentencing. Despite the current case, I still believe Charles Clerk to be an honorable individual, a valuable member of my community, and a good human being.

Sincerely,

Wallace L. Wye

A99

**EXHIBIT**

**1E**

Jeffrey Franklin
5303 Zeppelin Court
Clinton, Maryland

September 13, 2021

Two whom It May Concern,

I, Jeffrey Franklin, am writing this letter to provide you a character reference for Mr. Charles Clark. I have known Charles for over 16 years, he is not only a good friend, but we have formed a brotherly relationship. Charles has always been kind, polite and generous to others and would never hesitate to assist others in need. I have witness Charles take great care of his entirely family, particularly his children and grandchildren for many years. I have always looked up to Charles as a big brother and learned a lot from him by observing how he handle different situations. Charles is a hard working upstanding individual who has always shown good character and morals around me and my family. Over the years, I know Charles to be dependable, reliable, honest, courteous, and trustworthy. Again, Charles has been nothing but a great friend to me and my family.

Sincerely,

*Jeffrey Franklin*

Jeffrey Franklin

A100

EXHIBIT

**1F**

9-1-21
RE: Charles Clark

My name is Ramon Wye and I have known Mr. Clark since childhood, we basically grew up together from kids to adults with his family and my family. My mom-and-pop loved family as well. His brother Ray and my brother Wallace we are very close like brothers, as well as his sisters and my sisters, we are all family. We all kept jobs growing up and we had many, we were never the type of brothers to get into any type of trouble, plus our parent would kill us if we did get into any type of trouble, Charles has a heart of gold, and would never harm, hurt or was never the type to fight or start trouble with anyone, we built cars as we got our driver license, we always concentrated on work to help our family in need. We all had a great brother hood type of friendship. We built things like club houses, skateboards, wagons, soap box derby cars, bikes, lawn mowers ect. you name it we built it; we always did productive thing growing up. As we got older and started having kids, we and he always took great care of our kids and was always there for them. He is a great man and has always been an outstanding productive member of society.
Charles is a very smart man and would help anyone that needed his help. I can add a lot more, but I think you got the logistics on the type of man he is. I hope this letter explains to you what a true gentleman Mr. Charles Clark is. If you need any other info, I would be happy to present it to whom It my concern.

Thank you, Ramon Wye,
Vetteman10247@verizon.net

A101

**Done**  **Clark Support Letter 1.p...**

1 of 1

EXHIBIT
2

September 3, 2021

Re: Mr. Charles D. Clark

To Whom it May Concern:

I have been asked to write a letter concerning my knowledge of Charles Clark who was my next-door neighbor for about five years. I and our neighbors were very surprised to learn of the charges that Charles is facing and we know that he is extremely distressed over these matters.

During the time that Charles Clark lived next door to me, I found him to be a fairly quiet person who really enjoyed working in his yard and making improvements to his house. I rarely saw other people at his house and those that I did see were family members, members of his car club, or workmen hired to make improvements to his property. He was a car person who took great pride in his vehicle collection, one of which was a show-quality Corvette which he kept in his renovated and carpeted home garage. During this time, I knew that he was employed by the federal government in a very responsible position and was looking forward to his retirement after many years of dedicated service.

The neighborhood is very quiet with neighbors who look out for each other and have friendly conversations when they see each other outside. Charles was friendly to me and nearby neighbors. He took pleasure in doing unexpected acts of kindness for others such as bringing my trash cans up to my garage on trash days or sometimes asking if I needed anything from the store if he was venturing out, especially during COVID.

Over the years that he lived next door and in our many driveway and over-the-fence conversations, we became more like friends. He would not hesitate to help me carry something heavy or assist in putting something together if I asked for help. He would offer to keep an eye on my property when I let him know that I would be away for a period of time. If he noticed that my car had not moved in a few days and he had not seen me outside, he would call or text to make sure that I was ok and I would do the same since I was aware that he had some health issues.

I wish Charles the best. During the time he lived next door, I never saw children at the residence or any activities that would result in these charges. What I knew of him as my next-door neighbor seems at odds with the charges that have been brought against him.

Sincerely,

Sharan D. Marshall

A102

EXHIBIT

3
_____

June 19, 2023

The Honorable Judge Carl J. Nichols
U.S. District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

Joanna Clark
P.O. Box 31338
Capitol Heights, MD. 20731

**RE: CHARLES DERRICK CLARK**

Dear Judge Nichols:

I'm writing to urge mercy on behalf of my oldest brother, Charles Clark, who is awaiting to be sentenced.

I appreciate your fairness in advance.

I'd want to point out that, despite the fact that he entered into a plea agreement, that this is extremely unusual behavior for him. I know my brother, Charles to be a hard worker and kind-hearted person. He values his job and his family. He was married and has successfully raised five children to adulthood. He would visit with his mother on a weekly basis to ensure she had groceries, medications, or transportation to her doctor's appointments. He worked his way up in leadership in the Federal Government. He was on time and went to work every day. In his spare time, Charles enjoyed housework including deep cleaning, yardwork, cooking, decorating his home and working on cars.

Charles is battling a disease called Neurosarcodosis. His spine is affected which causes weakness of his upper and lower extremities, frequent urinary tract infections, bleeding in his urine and constipation. He takes steroids daily as treatment. He must be under doctor's care to ensure the disease does not advance to debilitation.

A103

Since his arrest, he verbalizes his faults. He has developed a relationship with God.  He follows the rules set forth in D.C. jail to the fullest.  He signed up to perform daily detail work.  He has not gotten into any disagreements with staff or with inmates.  He has a great rapport with the inmates. He encourages other inmates to do good. This experience has been a huge eye opening for him. I can ensure you that this will never happen again!

He expresses deep regret for his conduct and swears to never do it again. I believe him since I know him well, and I respectfully seek a lenient sentence because his family will be deeply hurt if he is imprisoned. We promise to be in constant contact with him to ensure there is no room for any human errors.

Thank you for taking the time to read my letter. If you have any questions, please contact me at (301) 675- 6290.

Sincerely,

Joanna Clark

Joanna Clark

A104

EXHIBIT

4

(1.)

Dear your Honor

I am a citizen of good faith and character, my name is Ray Clark, the defendant Charles Clark is my brother. We as a family are asking you to use your powers to give this, first and last time offender a 2nd chance. He is very Remoreseful for his Action, and has already PAID A heavy price. Has been incarcerated for over 2 years Also has caught cov 19 twice. He has a precondition Transverse myelitis thus far has not been treated properly in Jail the food is not fit for his medical condition. We ask for time serve or halfway house program

A105

②.

or a Reduction sentence. Thank you for

your consideration.

6/12/2023

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
District of Columbia    ▼

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>Charles Clark | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number: CR 22-160 (CJN)<br><br>USM Number: 37901-509<br><br>Jay Mykytiuk<br>Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    Count 1 of the Information filed 5/9/2022

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☐ was found guilty on count(s) _____
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 § 2242(b) | COERCION OR ENTICEMENT OF FEMALE; Enticement of<br><br>a minor | 12/31/2019 | 1 |

       The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____  ☐ is  ☐ are dismissed on the motion of the United States.

       It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

4/3/2024
Date of Imposition of Judgment

_____
Signature of Judge

Carl J. Nichols    U.S. District Judge
Name and Title of Judge

4/4/2024
Date

A107

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __2__ of __7__

DEFENDANT:   Charles Clark
CASE NUMBER:   CR 22-160 (CJN)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

LIFE to run concurrently with Defendant's Maryland charge

☑ The court makes the following recommendations to the Bureau of Prisons:

Cumberland FCI
14601 Burbridge Road, SE
Cumberland, MD 21502

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at _____ ☐ a.m.   ☐ p.m.   on _____ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on _____ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

A108

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 3 — Supervised Release
─────────────────────────────────────────────────────────────────
                                                    Judgment—Page ___3___ of ___7___

**DEFENDANT:**    Charles Clark
**CASE NUMBER:**  CR 22-160 (CJN)

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:
 LIFE

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.  ☑ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.  ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☑ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

A109

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 3A — Supervised Release

Judgment—Page  4  of  7

DEFENDANT:  Charles Clark
CASE NUMBER:  CR 22-160 (CJN)

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision.  These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.   You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.   After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.   You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.   You must answer truthfully the questions asked by your probation officer.
5.   You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.   You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.   You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.   You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.   If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10.  You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11.  You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12.  If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.
13.  You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature  _____    Date  _____

A110

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3D — Supervised Release

Judgment—Page  5  of  7

DEFENDANT: Charles Clark
CASE NUMBER: CR 22-160 (CJN)

## SPECIAL CONDITIONS OF SUPERVISION

Sex Offense Assessment     You must participate in a sex offense-specific assessment. You must pay a percentage of the costs of the assessment, as determined by the Probation Office.

Sex Offender Treatment - You must participate in a sex offense-specific treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program. You must pay a percentage of the costs of the program, as determined by the Probation Office.

Sex Offense Testing [Polygraph] - You must submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure that you are in compliance with the requirements of your supervision or treatment program.

Contact Restriction [Sex Offender] - You must not have direct contact with any child you know or reasonably should know to be under the age of 18, without the permission of the probation officer. If you do have any direct contact with any child you know or reasonably should know to be under the age of 18, without the permission of the probation officer, you must report this contact to the probation officer within 24 hours. Direct contact includes written communication, in-person communication, or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places.

Computer Monitoring - You must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) you use.

Computer Search - You must submit your computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media, to a search. You must warn any other people who use these computers or devices capable of accessing the Internet that the devices may be subject to searches pursuant to this condition. A probation officer may conduct a search pursuant to this condition only when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of this violation.
Any search will be conducted at a reasonable time and in a reasonable manner.

Substance Abuse Testing - You must submit to substance abuse testing to determine if you have used a prohibited substance. You must not attempt to obstruct or tamper with the testing methods.

Re-entry Progress Hearing - Within sixty days of release from incarceration or placement on supervision, you will appear before the Court for a re-entry progress hearing. Prior to the hearing, the probation officer will submit a report summarizing your status and compliance with release conditions. If you are supervised by a district outside of the Washington DC metropolitan area, the United States Probation Office in that district will submit a progress report to the court within 60 days of the commencement of supervision; upon receipt of the progress report, the Court will determine if your appearance is required.

Financial Information Disclosure - You must provide the probation officer access to any requested financial information and authorize the release of any financial information. The probation office may share financial information with the United States Attorney's Office.

Financial Restrictions - You must not incur new credit charges, or open additional lines of credit without the approval of the probation officer.

A111

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page ___6___ of ___7___

**DEFENDANT:** Charles Clark
**CASE NUMBER:** CR 22-160 (CJN)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Restitution** | **Fine** | **AVAA Assessment\*** | **JVTA Assessment\*\*** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 39,000.00 | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*\*\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| Victim | | $39,000.00 | |

| | | | |
|---|---|---|---|
| **TOTALS** | $ 0.00 | $ 39,000.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☑ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

  ☐ the interest requirement is waived for the    ☐ fine    ☐ restitution.

  ☐ the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A112

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

DEFENDANT:  Charles Clark
CASE NUMBER:  CR 22-160 (CJN)

Judgment — Page ___7___ of ___7___

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $ __39,100.00__  due immediately, balance due

    ☐  not later than _____ , or
    ☐  in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☑ F below; or

B  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

C  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☑  Special instructions regarding the payment of criminal monetary penalties:

    The financial obligations are immediately payable to the Clerk of the Court for the U.S. District Court, 333 Constitution Ave NW, Washington, DC 20001. Within 30 days of any change of address, you shall notify the Clerk of the Court of the change until such time as the financial obligation is paid in full.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

A113

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

          Plaintiff,

      vs.

CHARLES CLARK,

          Defendant.

_____/

Criminal Action
No. 1:22-160

Washington, DC
April 3, 2024

12:43 p.m

TRANSCRIPT OF SENTENCING
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE

APPEARANCES:

**For the Plaintiff:**      **Jocelyn Bond**
                USAO - D.C.
                600 D Street NW
                Washington, DC  20530
                202-445-8340

**For the Defendant:**     **Jay P. Mykytiuk**
                MONUMENT LEGAL
                1100 H Street NW, Suite 1010
                Washington, DC 20005
                202-657-1522

**For the U.S. Probation:**  Jessica Reichler

**Reported By:**          **LORRAINE T. HERMAN, RPR, CRC**
                Official Court Reporter
                U.S. District & Bankruptcy Courts
                333 Constitution Avenue NW
                Washington, DC 20001
                Lorraine_Herman@dcd.uscourts.gov

**\*\*\*** Proceedings recorded by stenotype shorthand.
**\*\*\*** Transcript produced by computer-aided transcription.

A114

**P R O C E E D I N G S**

**DEPUTY CLERK:** Good afternoon, Your Honor. This is criminal case year 2022-160, *United States of America versus Charles Clark.*

Probation officer is Jessica Reichler.

Counsel, please come forward and introduce yourselves for the record, beginning with the government.

**MS. BOND:** Good afternoon, Your Honor. Joselyn Bond on behalf of the United States.

**THE COURT:** Ms. Bond, good afternoon.

**MR. MYKYTIUK:** And good afternoon, Your Honor. Jay Mykytiuk for Mr. Clark.

**THE COURT:** Good afternoon, Counsel and Mr. Clark.

We are here to sentence the defendant on one count of enticement of a minor, in violation of 18 U.S. Code Section 2422(b). Are both parties ready to proceed?

**THE COURT:** Yes, Your Honor.

**MR. MYKYTIUK:** Yes, Your Honor.

**THE COURT:** I typically take sentencings in four steps, which I intend to do today but I wanted to just flag a couple questions that may warrant a slight deviation from that plan.

Typically, I consider whether there are any objections to the PSR and make my findings with respect to it. It seems to me that we can do that without any problem.

Second, I make my guidelines calculation. And it seems to me that that presents two questions, from my perspective. One of which I had indicated by Minute Order is whether and to what extent the cross-reference at 2G1.3(c) applies. And we'll hear from the parties on that question.

Let me just say, in terms of the process I typically follow, whatever happens on the guidelines discussion, I would make my guidelines findings. Then step three would be to hear from counsel and the defendant or anyone else who might wish to say something at that time. And then I would very likely take a recess and then come back and do step four, which is to pronounce the sentence.

The reason I flag this is because I want to better understand or I want to hear, really, from defense counsel and perhaps Mr. Clark on why the reduction for acceptance of responsibility applies here, in light of his statements to the psychosexual evaluator, which in my view, at least, place or purport to place some blame on the victim and the victim's mother.

It may be that Mr. Clark does fully accept responsibility; and that's why it may be that while Mr. Clark would have normally wanted to say something at step three, after the parties have argued about their appropriate sentence, he may want to say something during

the guidelines discussion or, maybe, just rely on counsel on acceptance of responsibility. So that's how I intend to proceed.

When we get to the guidelines issue, I will want to hear from both parties and probation on the 2G1.3 issue, and on the acceptance of responsibility question. And, again, if Mr. Clark would like to speak at that point, he is free to do so; and that can be without prejudice to him speaking later, should he so wish.

So taking step one, which I think is an easy one -- well, let me just also state for the record, in addition to the process that I typically follow, I want to just make everyone aware of what I've read.

I've read the Presentence Investigation Report, recommendation from probation; the sentencing memoranda from both parties; the letters that Mr. Clark included as part of his sentencing memorandum; and the victim impact statements, I've reviewed those; and I've also reviewed the psychosexual evaluation that I mentioned before, parts of which are quoted in other papers, but I decided it was appropriate for me to review it in its entirety, which I've done.

So just with respect to the record or the written record, are there any other written materials I should be aware of that I haven't mentioned from the government's perspective, Ms. Bond?

**MS. BOND:** No, Your Honor.

**THE COURT:** From the defendant's perspective?

**MR. MYKYTIUK:** No, Your Honor.

**THE COURT:** Okay.

Turning now to step one, it appears to me that there are no outstanding factual objections to the PSR; is that correct from government's perspective?

**MS. BOND:** Yes, Your Honor.

**THE COURT:** The defense perspective?

**MR. MYKYTIUK:** Yes, Your Honor.

**THE COURT:** I need to confirm, Mr. Clark, that you've had an opportunity to review the Presentence Report; that's this document written by the Probation Office. Have you had a chance, Mr. Clark, to review the Presentence Investigation Report and to discuss it with counsel?

**THE DEFENDANT:** No, sir.

(Discussion off the record.)

**THE DEFENDANT:** Oh, yeah, yeah, yeah. Yes, I did.

**THE COURT:** Okay. So you've reviewed that document.

**MR. MYKYTIUK:** I think the problem is, Your Honor, this was many months ago.

**THE COURT:** Fair enough. Yes. There was a draft prepared last year and then a revised version.

**THE DEFENDANT:** Yes.

**THE COURT:** Looking at that document now, you've had a chance review it and discuss it with counsel?

**THE DEFENDANT:** Yes.

**THE COURT:** You remember it?

**THE DEFENDANT:** Yes.

**THE COURT:** Did you have enough time, Mr. Clark, to talk to your counsel about the report and briefs that have been filed here?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Are you satisfied with your counsel's services, Mr. Clark?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Pursuant to Rule 32, I accept the factual findings contained in the Presentence Investigation Report regarding the circumstances of the offense, and I adopt those facts for the purpose of imposing a sentence.

Turning now to the guidelines question. Ms. Bond, do you want to come up to the podium and tell me the government's view? Let's start with the 2G1.3(c) question.

**MS. BOND:** Yes, Your Honor.

Our position is, the guidelines as calculated in the plea paperwork and calculated by probation are correct. We do not believe that the cross-reference applies. And here is why. It's a little bit convoluted.

So cross-reference -- it's going to be (c)(1), is

A119

the most likely to be applicable here.  And it comes down to the way that sexually explicit conduct is defined.  So I think there is no question that Mr. Clark encouraged the minor victim to send images of herself, which she did.

Sexually explicit conduct is then defined in 18 U.S. Code Section 2256(2)(a).  It has a very specific definition involving sexual intercourse, beastiality, masturbation, sadistic or masochistic abuse or lascivious exhibition of the anus, genitals or pubic area of any person.

So, really, it's Part 5 of that definition we are looking at.  However, Part 5 of that definition is modified by *United States vs. Hillie*, which is a D.C. Circuit opinion.  It is 39 F.4th 674.

The way they define "lascivious exhibition" or "sexually explicit conduct", when you are looking at lascivious exhibition is, it has to be an image of a minor engaging in sexually explicit conduct -- meaning that the minor displayed his or her anus, genitalia or pubic area in a manner connoting that the minor or any person or thing appearing with the minor in the image exhibits sexual desire or an inclination to engage in any type of sexual activity.

So given that definition coming out of *Hillie*, our position on the images that were actually sent, that are just focused on the genitalia, we did not think that it met

the definition required by *Hillie*.  So that's why we think it applies.

THE COURT:  So, perhaps, just to reverse it a little bit from my perspective and make sure I have it, I have to ask whether under 2256(2)(a) there is sexually explicit conduct; (2)(a)(5) is the relevant provision.  The D.C. Circuit has interpreted that provision to require the types of display that you have just articulated.

MS. BOND:  Yes.

THE COURT:  And in the government's view, the particular media here do not meet the D.C. Circuit's definition.

MS. BOND:  Yes, that's our argument.

THE COURT:  And can you read me the D.C. Circuit sentence or paragraph again?

MS. BOND:  Yes.

So, "Sexually explicit conduct means that the minor displayed his or her anus, genitalia or pubic area in a manner connoting that the minor or any person or thing appearing with the minor in the image exhibits sexual desire or an inclination to engage in any type of sexual activity."

THE COURT:  Okay.  So that relates to the actual images.

MS. BOND:  Yes.

THE COURT:  There are also facts about his

offering or seeking media of other kinds. And I don't really want to state them for the record, but there is a phrase where he says, I need a picture with your -- dot, dot, dot.

**MS. BOND:** Yes.

**THE COURT:** Why would that not satisfy the "offering a minor to engage in"?

**MS. BOND:** I'm just looking --

**THE COURT:** You remember the phrase.

**MS. BOND:** I recall the phrase and I'm trying to look at how it's specifically worded.

**THE COURT:** Just to be very clear for the record, I am referring to the March 10, 2021 statement, through Instagram direct messaging, reflected at Page 20 of the PSR.

**MS. BOND:** It is a difficult question. I think there is certainly some gray there.

I see the Court's point in why it could apply. But the messages themselves are asking for just images of genitalia and body parts. And the fact that he is not asking for her to masturbate on camera or anything along those lines, I think cuts in the direction of not applying this cross-reference.

I see the Court's point. But I still think, given that the images that were actually sent and the way the phrases are directed to the child, it's not enough. It

would certainly be a very difficult case to prove.

**THE COURT:** So you have, as to pictures that were sent, maybe you don't satisfy *Hillie*. Then, perhaps, a way to articulate it from the government's perspective is, with respect to this message at least, not express enough about the kind of image or video being requested, to make clear that the offer or request is seeking material that would satisfy the *Hillie definition*.

**MS. BOND:** I think that is a good way to articulate it. And it's a very difficult call and I can see in other cases having a slightly different phrasing or a slightly different outcome in the image that was sent, we might have a different argument about intent or something along those lines, but that is still where we fall.

**THE COURT:** Okay. Let's turn to acceptance of responsibility.

Obviously Mr. Clark pled guilty. And definitely some statements in the psychosexual evaluation and other places where he acknowledges that his conduct was wrong but, as reflected in the PSR and in particular in the psychosexual evaluation, there are other places where, as you know, he seems to blame the victim, at least in part, and the mother of the victim at least in part.

Does that, in the government's view, constitute acceptance of responsibility?

**MS. BOND:** We are not contesting acceptance of responsibility or him getting the three-point discount for that. So we have no quarrel with that. We are concerned about those statements. And my argument is that ultimately goes to deterrence. Does this guy really get why what he did was wrong?

He has accepted blame. He has accepted criminal legal responsibility. My question is more whether in his heart of hearts he gets why he is fully culpable and a 13-year-old girl really is not.

**THE COURT:** So, again, to perhaps put it my way, the government's position is he has established his entitlement to the three-level reduction --

**MS. BOND:** Yes.

**THE COURT:** -- from an acceptance of responsibility, as the phrase is used in the guidelines sense -- but it doesn't mean, from the government's perspective, he is completely straight on who is to blame and/or perhaps that's a relevant question in thinking about an appropriate sentence to impose here.

**MS. BOND:** Yes, that's the government's position.

**THE COURT:** Okay. Thank you.

**MS. BOND:** Thank you, Your Honor.

**THE COURT:** Defense counsel.

I assume you agree with the government's view

about the cross-reference.

**MR. MYKYTIUK:** One hundred percent, Your Honor.

**THE COURT:** Okay.

**MR. MYKYTIUK:** I did reach out to the government after I received your order yesterday to have a discussion. So I was aware of what their position was.

**THE COURT:** Yeah.

As to acceptance of responsibility, I mean, you heard me ask the question of Ms. Bond, What is your view about why, notwithstanding the statements reflected in the psychosexual evaluation, Mr. Clark has, in fact, demonstrated acceptance of responsibility?

**MR. MYKYTIUK:** Yes, Your Honor.

And the Court indicated in the beginning that he did plead guilty. He went through the statement of facts with me at the jail. And then he stood here, in front of a court of law and said, Yes, I did these things. I take responsibility for these things. So that's where he started.

With the PSR itself, there were no statements that would have given the Court pause. Then when it comes to the psychosexual evaluation, what I would say about that is that those statements are not inconsistent with taking responsibility for what he did.

Now, when faced with having to talk to somebody in

excruciating detail about every aspect of your life and about your sexual proclivities, is it natural, even if unfortunate, to try to offer some mitigating circumstances? I think it is. Do I think that offering something in mitigation is the same thing as not accepting responsibility? I don't.

I think that once you've said you did something, and you've admitted that it's a crime, and you've never then taken that statement back and said, No, I didn't do this, then you have taken responsibility.

Would I have liked to have seen no statements at all indicating that he believed there was some type of enticement? Yes, I would have liked to. But do I think that those statements go so far as to negate all of the other acceptance of responsibility he's demonstrated so far? I don't. And I would ask the Court not to find that.

**THE COURT:** Also, I focused on what I'm characterizing as sort of blaming the victim, but there's also a minimizing in that report of the period of time at issue. What's your response to whether that, together with the blaming of the victim, negates the acceptance of responsibility here?

**MR. MYKYTIUK:** Well, Your Honor -- and, again, I can only take the report. Obviously I wasn't there.

When I have spoken with Mr. Clark, we talked about

the period of time. Again, that was in the documents that he had plead guilty to. I don't know if, again, he's trying to mitigate or if in his mind this is a smaller period of time, by the time he's talking to this evaluator.

All I can tell you is that I've never had a conversation with Mr. Clark where he indicated that there was anything different that happened than what was in the Statement of Facts; and that is all I can tell the Court.

**THE COURT:** Let me ask you this question, which is more of a procedural question, I suppose. As I said, normally I would do the guidelines calculation and then I would say to counsel, What is the best argument for why the sentence you've proposed is the sentence, and would the defendant like to say anything?

Do you know whether Mr. Clark would like to say something later?

**MR. MYKYTIUK:** I believe that he will say something.

**THE COURT:** Would he like to say something now on the question of whether he accepts responsibility for his actions? He could say something later as well.

**MR. MYKYTIUK:** And that is really what his words would be limited to, that was what he intends to say. If the Court feels that it can better assess this question by hearing from Mr. Clark prior to that guideline calculation,

then I am happy --

**THE COURT:** Yes. Let's do this: Mr. Clark, if you were going to speak later, I am happy to hear from you now. And I will take it for purposes of both the guideline calculation and as if it were made later. Okay?

**MR. MYKYTIUK:** I have no objection to that.

**THE COURT:** Great.

**MR. MYKYTIUK:** May he --

**THE COURT:** He may remain seated. Just, Mr. Clark, speak directly into the microphone. We just need to make sure the microphone is on.

**THE DEFENDANT:** Yes, Your Honor.

Before I knew of any evidence, I wrote Ms. Graham apologizing, telling her and taking responsibility for what I had done and praying -- and praying for her and her family. I never tried to evade this in any type of way.

Like I say, I take full responsibility of everything, you know. I did it, you know. I take responsibility for it and I think I should be punished, but I don't think I should die for it, you know? But I definitely should be punished for it.

**THE COURT:** Do you understand my concerns about some of the statements you made to the psychosexual evaluator about actions by the victim, actions by the mother, the amount of time that was involved?

A128

THE DEFENDANT: I can't remember everything that was said. I was going through so much at that jail. Your Honor, that jail is -- my health. I mean, I almost died a month ago. I was just going through so much. I don't know what I was saying. I was just checking boxes and just speaking. But, no, sir. I take full responsibility. No matter what they say, I say it. No, sir.

THE COURT: Okay.

THE DEFENDANT: I did it, you know. And I'm sorry. And I wish anything I can do to turn this around. If I had one wish to be a billionaire or to turn this around, I would turn this around. I just so sorry that this happened. They are good people. I mean, she loved me like a father. [Indiscernible] She loved me. They both did. They took care of me.

THE COURT: I didn't hear that last part. I'm sorry.

THE DEFENDANT: They took care of me.

THE COURT: Okay. Thank you, Mr. Clark.

I'm just going to confer for a second.

THE DEFENDANT: Thank you.

(Discussion off the record.)

THE COURT: Okay. As to the guidelines calculation, they are, of course, only advisory but I must calculate them correctly and then consider them.

The relevant guideline provision everyone agrees with is 2G1.3. As we've discussed, and as I asked the parties about, (c)(1) of that provision, 2G1.3, states that if the offense involved causing, transporting, permitting or offering or seeking by notice or advertisement a minor to engage in sexually explicitly conduct for the purpose of producing a visual depiction of such conduct, I must apply a different provision, 2G2.1, if the resulting offense level under 2G2.1 is higher than the offense level under 2G1.3.

I think it's a very close question about whether 2G1.3(c)(1) and its cross-reference applies, for the reasons that I discussed with the government counsel.

It seems to me, given the course of conduct here, given the requests that were being made by Mr. Clark of the victim, that there's a strong argument or at least a reasonable argument that he was persuading, inducing, enticing, offering and the like, sexually explicit conduct. And while it is the case that under *Hillie* some of the images might not qualify as sexually explicit conduct, the question is whether the defendant was causing, transporting, permitting or offering or seeking such sexually explicit conduct. So even if he didn't necessarily receive it in return, there is at least a decent argument that he was seeking or offering.

But because the parties all agree that

A130

cross-reference doesn't apply, because it's a close question, because the D.C. Circuit has adopted a narrowing interpretation of sexually explicit conduct, I am holding in the limited circumstances or very specific facts of this case, that the cross-reference is inapplicable.

It does seem to me that the possibility that it might apply is something I will think about when it comes to the relevant sentence here. But I still have to calculate the guidelines range even without the cross reference.

So on this, I think everyone is in agreement that 2G1.3 imposes a base offense level of 28. Then everyone agrees that 2G1.3(b)(1)'s specific offense characteristic applies because the minor was otherwise in the custody, care, supervise or control of Mr. Clark; that means a two-level increase.

Everyone also agrees that the (b)(2) specific offense characteristic applies because Mr. Clark unduly influenced a minor to engage in prohibited sexual conduct; and that's the result of application note 2's rebuttal, a presumption of undue influence when a participant is at least 10 years older than the minor; that results in a two-level increase.

Then 2G1.3(b)(3)'s specific offense characteristic applies as well, because Clark used a computer or an interactive computer service to persuade, induce, entice

and/or coerce the minor victim to engage in prohibited sexual conduct. He both used Instagram to pressure her to send sexual material and texted her to get her to meet him for sex; that means a two-level increase.

And I'll agree that 2G1.3(b)(4)(A)'s special offense characteristic applies, because the offense involved the commission of a sex act; that means a two-level increase. That means we are at an offense level of 36 for 2G1.3.

Then everyone agrees that a five-level enhancement applies under 4B1.5(b)(1), because Clark engaged in a pattern of activity involving prohibited sexual conduct by raping the victim more than 100 times, on top of other prohibited sexual conduct, over multiple years.

Mr. Clark is not a career offender, and he did not commit the instant offense of conviction subsequent to sustaining another sex offense conviction. That five-level enhancement added to the 36-level offense level, brings the offense level to 41.

Turning to acceptance of responsibility. Obviously I raised a number of questions about that here. It seems to me that beginning with his acceptance of the statement of offense, beginning with his guilty plea, that largely established his acceptance of responsibility.

I, however, as my questions made clear, was

concerned about statements he had made to the psychosexual evaluator. But Mr. Clark's statements there are explainable, perhaps, to an extent, as articulated by defense counsel. Much more important is his statements today, which I think reflect acceptance of responsibility within the meaning of the relevant guidelines definition.

As a result, the offense level is at 38. Although everyone agrees Mr. Clark is a zero-point offender, the 4 C1.1(a) adjustment does not apply, because this offense is a sex offense, therefore, the total offense level is 38.

Mr. Clark is estimated to have zero criminal history points, or has zero criminal history points, therefore falls within Criminal History Category I. And as a result, as reflected in all of the materials, the relevant guidelines range is 235 to 293 months, with the fine range and supervised release provision or term as reflected in the PSR.

And then, of course, there is an applicable mandatory special assessment of $100.

Does either party have an objection to my guidelines calculation?

**MS. BOND:** No, Your Honor.

**MR. MYKYTIUK:** No, Your Honor.

**THE COURT:** Okay.

I would now like to hear from the parties about

why they believe the sentencing recommendations they've made are the correct ones.

So, Ms. Bond, we will start with you.

**MS. BOND:** Thank you, Your Honor.

The United States is asking for a sentence of incarceration of 260 months, followed by a lifetime of supervised release. And we are recommending that that sentence be run concurrent to Mr. Clark's very significant sentence in Maryland. And we do believe that that recommendation is consistent with the sentencing guidelines, because it involves the same conduct or the same course of conduct and the same victim.

Looking at all of the sentencing factors, I think, coming to the nature and circumstances of the offense, that really weighs in favor of a guidelines-compliant sentence and a mid-range sentence. And we've targeted the mid-range, one, because Mr. Clark did accept responsibility. We don't think it would be fair to ask for a high-end sentence where he has accepted. But the conduct here was particularly egregious.

There was such a profound betrayal of trust of the daughter, of course, the minor victim, but of that whole family who loved and trusted him. I think that was brought home by the tears from the gallery as Mr. Clark was speaking.

Mr. Clark was a father figure to this girl. He knew her from a very young age. I think the fact the mother wrote from the time she was missing her front teeth, is really very moving; that he had seen her grow up from a prepubescent child into this young woman, and targeted her at the time she is just entering her teenage years.

There was a lot of manipulation involved in this, of the daughter, in that he is buying her clothes, buying her shoes, all of the things that are very enticing to teenagers are why the power dynamic of a 60-year-old man offering these things to a young girl is so controlling.

And I think that's what Mr. Clark misses, in trying to blame this on her, that he holds the power here. He, as an adult, who can think through these things. He knew that buying shoes, buying clothes, buying a cell phone, was going to manipulate and silence a child.

There is also manipulation on the part of the mother. Mr. Clark got this mother to trust him. Got her to trust him to have this girl come over to his home in Maryland, to leave the child alone with him, because of the relationship that he had built with them. So the manipulation and betrayal here make this particularly egregious.

**THE COURT:** If 45 years is an appropriate sentence in Maryland, why is 260 months appropriate here?

A135

**MS. BOND:** That is a difficult question. It's a different statute. I don't know the elements of those particular statutes. And every jurisdiction is a little bit different. I think nobody would make the argument that things that are sentenced in the Ninth Circuit in California are going to be similar to what is sentenced here in Washington, D.C.

I also do not know the details of how much of that 45-year sentence Mr. Clark will actually serve. In U.S. District Court when he is sentenced, he is going to serve almost all of that sentence. I really don't know how the particularities of the Maryland system work out and whether he will serve most or all of that 45-year sentence.

The other factor of the nature and circumstances here is the long-term abuse that was happening. It happened between the time she was 13 and 17. This was not a one-off. This was not something that even ended when his relationship with the mother ended. It continued even after that relationship ended and carried over. So we think the nature and circumstances certainly supports our request for a mid-range sentence here.

With respect to history and characteristics, you know, it certainly is relevant that Mr. Clark has never had any run-ins with the law but that is not a basis for a variance or a departure of any sort. That fact, the fact he

has no criminal history, is already built into the sentencing guidelines. So it shouldn't result in a reduction.

I think our bigger concern is probation's, sort of, suggestion that his age or his medical condition is a basis for a departure, and we strongly oppose that. And that is because this whole crime was carried out over the age of 60, while he had already been diagnosed with this medical condition.

So even though he was already over 60, even though he had this very serious medical condition, he was still raping this girl regularly, drawing on the sympathies of the family to, you know, get help to have this girl come over to his home in Maryland, ostensibly to help him because of his medical condition. So he should not now be allowed to use that same medical condition, the same age-related issues, to get leniency in this case.

Defense counsel wrote in their sentencing memo that Mr. Clark will probably spend the remainder of his birthdays incarcerated; and that is an absolutely profound tragedy. But it is a tragedy of Mr. Clark's making. It is something that he chose to engage in and knew the possibility when he continually raped this girl over all of those years. So we think that those factors also support a mid-range sentence here.

When it comes to deterrence, what I was saying earlier about whether Mr. Clark understands, in his heart of hearts, who is to blame, that's where we think a sentence -- a very significant sentence, middle range, is appropriate, because it sounds like he just doesn't get it. He is accepting responsibility in the legal sense, but perhaps this is just human nature to try to make your crime less bad.

He's talking about a 13-year-old wearing suggestive clothing or a mother parading this child in front of him. All of that is absolute nonsense. What that says is Mr. Clark needs something else to show him that this kind of conduct is unacceptable in the future. So that speaks to a mid-range sentence as well.

We have included the JSIN information for sentencing disparities. And I recognize that our ask is a little bit higher than the national average. Of course we have differences in sentencings all over the country. We do think sticking with that midrange is appropriate here because of the long-term nature of Mr. Clark's conduct, and also because we are asking for it to overlap with that Maryland sentence. So we think that takes it out of, you know, what the standard for the JSIN statistics are.

So for all of those reasons, Your Honor, we are asking for a sentence of 260 months of incarceration.

I don't know when the Court intends to do this, but I would like a moment before the Court rules, to find out from the victim and her mother whether they intend to speak today. I didn't get an opportunity to do that before court started today.

**THE COURT:** I would like you to do that right now.

**MS. BOND:** Thank you, Your Honor.

**THE COURT:** And then, I guess relatedly but it's a different question, I think, but whether there is a restitution request.

**MS. BOND:** Thank you. It is on my list and I completely overlooked it.

We are asking for restitution. And we are asking for restitution in the amount of $39,000. And here is how we got to that number. I spoke with Ms. Graham, the mother of the minor victim. She is interested in having her daughter pursue therapy services at some time. My understanding is that has not happened yet.

She was able to look into what therapy would actually cost, and she found some prices for people that they were interested in going to. She found three different ones. She found one for $250 an hour. One at $175 an hour. And one at $125 an hour. So what we did is we looked at the highest cost, that $250 an hour, multiplied it by one weekly session for 52 weeks out of the year, and then multiplied it

by three years.  In the hope that the minor victim could get three years' worth of weekly therapy with a therapist of her choice.

We believe that that's a reasonable request, particularly in light of the statute and the requirement that restitution for those full losses shall be ordered. And also looking at Mr. Clark's economic situation.  He certainly had a well-paying job before he was arrested.  He sold property in 2021.  I believe he sold his residence for $470,000.  The Presentence Report notes he had a TSP savings plan that has a balance of $118,000.  And the minor victim certainly should be made whole in those circumstances.

**THE COURT:**  Thank you, Counsel.  Why don't you explore whether anyone would like to speak.

(Brief pause.)

**MS. BOND:**  No.  Neither the mother nor the minor victim wish to speak today.  They are present in the gallery.  They want to rely on their victim impact statements.

**THE COURT:**  Which I have read, as I said.  Thank you, Ms. Bond.

Counsel.

**MR. MYKYTIUK:**  Your Honor, I'm not going to stand here and defend any of the actions of Mr. Clark.  I've submitted a memo.  As the Court's probably aware, I didn't

go into a lot of the facts there, because they are indefensible and it wouldn't be helpful for the Court or Mr. Clark to talk about them.

So what we are really talking about is, well, What's fair? Also, as I referenced, there are different goals of sentencing. The most popular one, the one that tends to be what makes the public interested is retribution, is punishment and that's understandable. And that certainly should be a goal of sentencing. But it shouldn't be the only goal.

An offense like this, it is easy to forget about all of the other things that the Court should consider. Most people who would read about this wouldn't care about those other factors, but we have a system that is based on considering other things besides what Mr. Clark did.

And as I said in my memo, Mr. Clark, regardless of what this court does today, has a very good chance of never being free. The Maryland sentence of 45 years -- I am not a Maryland practitioner. I have done some research -- it appears that the first time that Mr. Clark would be eligible for parole is halfway through the sentence. So in about 22 and a half years. It's complicated. But if I've done everything correctly, that would be my guess. The first time he would be eligible, he would be about 85 years old before he could get out, regardless of what the Court does.

So then the question is, Well, what role does this Court have? Obviously, there are guidelines here even though these are the same facts. Our system allows Mr. Clark to be punished twice for them. And so that's what is going to happen here.

But the reason I've asked for the mandatory minimum only of 10 years, which I fully recognize is a dramatic variance from the guidelines, is simply that the only reason to give Mr. Clark a longer sentence than that, is to make sure that he never gets out. And the reason to do that is to punish him.

But based on the PSR, based on his psychosocial evaluation, based on his health, Mr. Clark is almost a zero percent chance to re-offend by the time he gets out of prison. Even if for some reason the Maryland case went away, he would be in his mid-70s. And I will tell you, Your Honor, that when I met Mr. Clark three years ago, he had these medical conditions. And the government correctly pointed out that he had the medical condition and was already early 60s when this offense began. But during the time that I've known him, I have watched Mr. Clark deteriorate. I've watched his health deteriorate. Several times I've tried to reach him at the jail to find out only that he's in the hospital.

So there's no reason to believe, with this

condition -- and I'm hot obviously not a doctor, but this condition is serious. As he gets older, it will progress. And so the idea that if he were even to be released in his mid-70s, the condition that he is going to be in, by itself, would be very preventative for him reoffending.

I will also point out that, yes, his criminal history is worked into the guidelines. But the fact, more importantly, that he doesn't have a criminal history, shows that he is not a serial offender.

I have pointed to some possible factors in my memorandum about what may have led him to this. I did talk about his upbringing. There is some pretty harrowing events there. But rarely do I stand up here and try to place the blame on someone's history, but I think it is worth noting that these things did happen. I'm sure they played a contributing factor to us standing here today.

So back to why -- the Court asked the government why a sentence even of, you know, 200-something months, after Maryland gave a 45-year sentence, would be appropriate? First of all, I would say I'm not advocating the Maryland sentence of 45 years is appropriate. I think even by any standard that was a very high sentence. His counsel believed so. It was very unexpected for a lot of people.

But I also would surmise that if the Court is

aware that parole exists in Maryland and this happens, where there is parole, a longer sentence is given to guarantee that, at least, an amount they have in their mind to be served will be met. So I can't tell you what the judge was thinking, but a 45-year sentence essentially guarantees, at least, he will serve at least 22 and a half years.

I don't know that there is much value in this Court giving a sentence that anywhere approaches that. I think there is value in recognizing that 10 years -- a 10-year sentence here, even forgetting the Maryland sentence, would mean that Mr. Clark will serve most of the rest of his life in prison.

I believe that is an appropriate punishment. To go beyond that means we are not thinking about deterrence for Mr. Clark and even deterrence for the general public, because Mr. Clark obviously is in a different situation than many of the people that are sentenced who are much younger, who do not have the same physical ailments and, quite frankly, also have not been sentenced for the same crime already.

So that is what we are asking the Court to do. And I wish for the Court to consider all of the factors before sentencing.

**THE COURT:** Of course. Thank you.

And obviously Mr. Clark spoke earlier, but if he

would like to add anything now, he is free to.

**THE DEFENDANT:** Yes, I would like to talk to the Graham family.

**THE COURT:** Please.

**MR. MYKYTIUK:** Just to be clear, the Court is giving Mr. Clark permission to address the Graham family.

**THE COURT:** Why don't you address me through the microphone.

**THE DEFENDANT:** Yes, sir.

**THE COURT:** But to the extent that that includes an apology or something like that it can.

**THE DEFENDANT:** Oh, yes, sir. I would like to apologize to the Court and my family for this tragic thing that I have done. And I'm just so sorry. I wish I could just make this go away.

**THE COURT:** Okay. Anything else you would like to say?

**THE DEFENDANT:** I would just like to apologize to the Graham family. Can I do that now?

**THE COURT:** You may but through me.

**THE DEFENDANT:** Oh, yes, sir. Yes, sir. The Graham family, I apologize, once again. And I'm so sorry that this happened. I pray for your healing and that you guys will forgive me.

That's it, Your Honor.

THE COURT: Okay. Thank you, Mr. Clark.

THE DEFENDANT: Yes, sir.

THE COURT: Now is when I would take a recess to collect my thoughts and come back and pronounce a sentence, unless either party or probation would like to say anything extra.

Ms. Bond.

MS. BOND: No, Your Honor.

THE COURT: Counsel.

MR. MYKYTIUK: Nothing from the defense.

THE COURT: Okay. Thank you.

Let's go into a brief recess, and I will come back and pronounce the sentence.

(Recess from 1:32 p.m. to 1:53 p.m.)

DEPUTY CLERK: Your Honor, we are now back on the record.

THE COURT: Thank you, Ms. Moore.

Before I pronounce the sentence, I'd like to summarize, as I often do, the positions of the parties.

The government requests 260 months of incarceration, which is a period of incarceration in the middle of the guidelines' range, restitution to the minor victim in the amount of $37,000 reflecting the therapy-related calculation the government walked through before, supervised release of Mr. Clark's life time and does

not suggest a fine.

Mr. Clark argues for the mandatory minimum of 10 years of incarceration, does not specify a term of supervised release and does not argue about fines or restitution.

As for probation, probation recommends a downward variance, a sentence of 204 months incarceration, followed by 120 months of supervised release, no fine, and I don't think disagrees with restitution but we didn't have the restitution request until today.

So, as to the Section 3553(a) factors that I have to consider: First, I must consider the sentencing guidelines range, which I've already calculated. I am not going to go through that calculation. I am going to note my view that the question of whether that cross-reference I mentioned is applicable. It was a very close one. I apologize. I misspoke. The restitution request is $39,000. I had it written down correctly. I misspoke. I apologize.

Considering the guidelines range, as I said, I think there was a pretty good argument that the cross-reference should have been applicable or should apply here. And to some extent and to the extent it does not, it's because Mr. Clark, in a sense, got lucky. Because I think he was seeking, from the victim, images or videos that would have qualified and they just happened not to, or at

least there's an argument they happened not to.

So in a way, in my view, the guidelines range could understate the seriousness of the offense here. But that's, of course, just one factor.

Another factor I must consider is the nature and seriousness of the offense. This is easily among the most serious offenses I have seen as a judge. I'm not going to repeat the horrifying details, but as we all know, Mr. Clark raped a girl in his care, a girl who says she trusted Mr. Clark as a father, more than 100 times. And he pressured her into sending him explicit picture. He also, as we discussed, took a number of actions to hide his conduct, to cultivate the relationship, and the like.

The bare facts in the Statement of the Offense are horrific, but the Victim's Impact Statement makes the consequences of the actions here even more tangible. As the victim wrote, "Imagine coming home from school every day and having to be sexually assaulted. Imagine feeling like nobody will believe you. Imagine your mom's boyfriend taking your viraginity at the age of 13. Imagine feeling like the person that is hurting you is the only one by your side. Imagine wanting to harm yourself because you feel like you deserve everything that's happened to you." As the victim's mother says in her impact statement, "Clark's actions have caused her daughter to go through therapy and

different stages of healing, when she should be focusing on being a teen."

To put it lightly, the seriousness, repetitiveness and intentionality of Clark's actions weigh heavily in favor of a very serious sentence.

That's not the only factor, of course, I have to consider. I have to consider the history and characteristics of the defendant. Clark is a first-time offender in his mid-60s, with serious health issues. He also had a rough childhood and was the victim of abuse as a child.

Mr. Clark, of course, argues that those factors, that is to say, his personal characteristics, justify a substantially below-guidelines-range sentence. I agree that those characteristics could weigh in Mr. Clark's favor in the abstract, but I don't agree that they have any significant mitigating factor or impact in this case.

Mr. Clark's lack of a criminal history matters less here, because we are not faced with a spur-of-the-moment or one-time offense. Again, not to repeat myself, but over the period of years, Mr. Clark committed a heinous crime, not once, not 10 times, not 30 times, not 50 times, but some 170 times. It's hard to see how his history of law-abiding behavior, which the guidelines already account for, can seriously mitigate that

here.

His age and health also did not prevent him from abusing his victim for years. If anything, he relied on his health and age to facilitate the abuse. I also note some irony in the argument that Mr. Clark should receive credit for his age, when he is being sentenced for sexually abusing someone who was a minor.

Ultimately, neither his age nor his health in any way reduce his culpability for the crime he committed, but I will take in account his age and health in thinking about his ability to reoffend and the impact a prison sentence is likely to have on him.

The next factor I have to consider is protecting the public, respect for law and deterrence. I have to ensure that the sentence I impose promotes respect for the law. I have to ensure that the sentence I impose is properly calibrated to deter both Mr. Clark and others from engaging in such conduct.

I think Mr. Clark's risk of recidivism is mitigated by his age and already-pending, 45-year Maryland sentence. After all, if Mr. Clark is ever released after the completion of that sentence, he will very likely be a very old man and perhaps unable to commit any crimes or certainly some aspects of this particular crime.

But as the government points out, part of his

criminal conduct also involved soliciting and sending sexually explicit content and emails over the internet. But low risk also doesn't mean no risk. It is not impossible that he might, as we discussed earlier, get released substantially early from the Maryland period of incarceration or something else might happen there. And even if the likelihood of recidivism is low, the impact of any recidivism would be high. But, this factor of course, requires me to consider not just deterrence as to Mr. Clark but as to deterrence to others.

So think about this: How do we sufficiently deter other people from repeatedly raping a minor child, who is close to in their care, over 170 times, over a several-year period? Seems to me the deterrent effect of a sentence to prevent that kind of horrific behavior has to be very significant. So the need for deterrence, in my view, weighs in favor of a serious sentence.

I must also have to consider how to avoid unwarranted sentence disparities. The guidelines themselves, of course, are a tool to avoid sentence disparities, which weighs in favor of an in-guidelines-range sentence. But as I have noted, the sentencing guidelines range here could easily have been 360 months to life. Of course, the cross-reference in my view, is a close question.

Also, it seems to me that the five-level

enhancement that was applicable under 4B1.5(b)(1), relating to a pattern of conduct, would be applicable whether someone engaged in conduct of this kind 20 times, 50 times, a hundred times or the number we have here, some 170 times.

So, to some extent at least, it's possible that that five-level enhancement understates the severity of the crime. I also have to consider, of course, the need to provide restitution to any victims of the offense.

Government has now made a request for restitution in the amount of $39,000, calculated for therapy that the minor victim would like to engage in. That calculation, to me -- first of all, the victim isn't statutorily entitled to restitution. The losses must include costs reasonably projected to be incurred in the future by the victim as a proximate result of the offenses involving the victim. Future therapy sessions for the victim to deal with the offenses committed against her, seem quite reasonably projected to be incurred. And as a proximate result of Mr. Clark's conduct, I will order that amount of restitution.

At some level, unfortunately, the guidelines are only so much help. The factors are only so much help. How much prison time should someone serve for raping a minor 170 times over a period of several years, causing her to lose her virginity, causing her all of the kinds of trauma that

we can all imagine she's gone through, as her mom has as well? I think the guidelines range here significantly understates the punishment that should be given. I will, therefore, vary upward from the guidelines range.

The only question in my mind is whether Mr. Clark should be ordered to a period of incarceration above the guidelines range but to a particular period or should serve a life sentence for these horrific crimes.

It maybe is a practical matter, given his age and health, that those end up being the same. But I have to think about consistency, in a sense. I realize that recidivism and deterrent questions would be different if I was faced with a 25-year-old defendant. But I would still want to be asking myself, what's an appropriate sentence for a 25-year-old defendant who repeatedly raped a minor child essentially in his care? I think it's a very difficult question.

I think a variance is clearly warranted for all the reasons I've given and based on the entire record here. For the aforementioned reasons, taking into account all of these thoughts, the entire record in this case, Mr. Clark, I am committing you to the custody of the Bureau of Prisons for a term of imprisonment of life.

**THE DEFENDANT:** Please, sir.

**THE COURT:** You also serve supervised release for

life, in the event you are released. You are ordered to pay a special assessment of $100 and the restitution amount, that I already mentioned, of $39,000.

The Probation Office shall release the PSR to all appropriate agencies in order to execute this sentence. You have a right to appeal this sentence. If you choose to appeal, you may file any appeal within 14 days after the entry of judgment.

Under 28 U.S. Code 2255, you also have a right to challenge your conviction or the sentence, if new and currently unavailable information becomes available to you or you have a claim that you received ineffective assistance of counsel.

With respect to supervision, while on supervision, you are required to abide by several mandatory conditions. Those stated in guidelines 5D1.3(a), which are imposed to establish the basic expectations for your conduct while on supervision.

You must not commit another federal, state or local crime. You must not unlawfully possess a controlled substance. You must refrain from any unlawful use of a controlled substance. You must submit to drug testing. You must register under the Sex Offender Registration and Notification Act and comply with the requirements of that Act.

You must pay restitution, as I've mentioned, and notify the Court of any material change in your economic circumstances that might impact your ability to make any obligated payments. And you must cooperate in the collection of DNA, as directed by the probation officer. You shall also comply with the recommended standard conditions of release found in Guideline 5D1.3(c).

Ms. Reichler, anything that I need to address, either with respect to the conditions of supervised release or otherwise from probation's perspective?

**PROBATION:** Nothing additional at this time, Your Honor. Thank you.

**THE COURT:** Thank you.

Anything the government would like to note?

**MS. BOND:** May I submit to the Court a preposed restitution order so it can be directed to the right place?

**THE COURT:** You may.

**MS. BOND:** Thank you.

**THE COURT:** Thank you.

Defense counsel, anything you would like to state? Obviously your positions on the appropriate sentence are, of course, stated for the record.

**MR. MYKYTIUK:** Yes. I'm not sure if it's still relevant, but is the Court opposing this concurrent to the Maryland sentence or consecutive to?

**THE COURT:** Concurrent. I apologize. Yes.

I should have said that. Thank you for noting that. It seems to me that this has been assumed by everyone that it would be concurrent and it is, in fact, concurrent.

**MR. MYKYTIUK:** Thank you, Your Honor.

**THE COURT:** Would you like me to make any recommendations about location?

**MR. MYKYTIUK:** I would suggest FCI Cumberland but, quite frankly, I believe that he will have to serve the Maryland sentence, the first sentence first. So...

**THE COURT:** Concurrently but at the location from Maryland because it was imposed first?

**MR. MYKYTIUK:** I believe. But in case I am wrong --

**THE COURT:** We will put that a suggestion in the judgment.

**MR. MYKYTIUK:** Thank you, Your Honor.

**THE COURT:** Thank you.

Let me just say one last thing. I am, of course, extremely sorry to the victim and the victim's family for what happened here. I can't do much other than what I've done to remedy that, but I want you to know how important I thought this case was and how much I felt it. I hope you can put this behind you, to an extent, and that the therapy is helpful. Okay?

Thank you, all.

(Discussion off the record.)

**THE COURT:** Apologies. We are just making sure that I state on the record any special conditions of supervised release that I need to state.

I don't know, Ms. Reichler. I think there were some. Right? I don't know that I went through all of them.

**PROBATION:** No, you didn't go through all of them. Would you like me to...

(Discussion off the record.)

**THE COURT:** I apologize.

While on supervision, Mr. Clark, you must comply with the following special conditions, these are listed at Pages 3 to 5 of the probation recommendation, which is ECF-56.

You must participate in a sex-offense-specific assessment. You must participate in a sex-offense-specific treatment program. You must submit to periodic polygraph testing. You must not have direct contact with any child you know or reasonably should know to be under the age of 18, without the permission of the probation officer. You must allow the probation officer to install computer monitoring software on any computer. You must submit your computers or other electronic communications or data storage devices or media to a search. You must submit to substance

abuse testing, to determine if you have used a prohibitive substance.

Within 60 days of release from incarceration or placement on supervision, you will appear before the Court for a re-entry progress hearing. You must provide the probation officer access to any requested financial information and authorize the release of any financial information. And you must not incur new credit charges or open additional lines of credit without the approval of the probation officer.

Those are all special conditions of supervised release, to follow your period of incarceration.

Thank you, Ms. Moore.

Anything else from the government's perspective?

**MS. BOND:** No, Your Honor.

**THE COURT:** From the defense perspective?

**MR. MYKYTIUK:** No, Your Honor.

**THE COURT:** From probation's perspective?

**PROBATION:** Nothing additional, Your Honor.

**THE COURT:** Okay. Thank, all.

(Proceedings concluded at 2:14 p.m.)

# C E R T I F I C A T E

I, **Lorraine T. Herman, Official Court Reporter,** certify that the foregoing is a true and correct transcript of the record of proceedings in the above-entitled matter.

    June 14, 2024         /s/ Lorraine T. Herman
       **DATE**          **Lorraine T. Herman**

A159

# United States District Court for the District of Columbia

UNITED STATES OF AMERICA )
)
vs. )          Criminal No. 22-cr-160
)
CHARLES CLARK )

## NOTICE OF APPEAL

Name and address of appellant:          Charles Clark

Name and address of appellant's attorney:   Jay Mykytiuk
600 F Street, NW Suite 300
Washington, D.C. 20004

Offense:

Concise statement of judgment or order, giving date, and any sentence:

Sentence under 18 USC 2242(b) to life imprisonment, on April 3, 2024.

Name and institution where now confined, if not on bail:   DC Central Detention Center

I, the above named appellant, hereby appeal to the United States Court of Appeals for the District of Columbia Circuit from the above-stated judgment.

4/10/2024                          _____ for Charles Clark
DATE                               APPELLANT

                                   _____
                                   ATTORNEY FOR APPELLANT

GOVT. APPEAL, NO FEE   ☐
CJA, NO FEE            ☑
PAID USDC FEE          ☐
PAID USCA FEE          ☐

Does counsel wish to appear on appeal?                YES ☐   NO ☑
Has counsel ordered transcripts?                      YES ☐   NO ☑
Is this appeal pursuant to the 1984 Sentencing Reform Act?  YES ☑   NO ☐

A160